UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------- x
SARA RIVERS,                                                 :
                                                             :     No. 25 Civ. 1726 (JSR)
                          Plaintiff,                         :
                                                             :
            - against -                                      :
                                                             :
SEAN COMBS, *et al.*,                                        :
                                                             :
                          Defendants.                        :
----------------------------------------------------------- x


## PRODUCTION DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS



DAVIS WRIGHT TREMAINE LLP
Geoffrey S. Brounell
Francesca Reifer
1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
Phone: (212) 489-8230
geoffreybrounell@dwt.com
francescareifer@dwt.com

*Attorneys for Defendants*
*Bunim-Murray Productions, Paramount Global,*
*Viacom, and MTV Productions*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................... 1

BACKGROUND ............................................................................................................... 2

ARGUMENT .................................................................................................................... 3

    A.    Plaintiff Fails To State A Claim Under The GMVA. ............................................. 4

    B.    Plaintiff's Remaining Claims Are All Barred By The Applicable Statutes Of Limitations ................................................................................................. 7

        1.    The statutes of limitations has passed on all of Plaintiff's claims. ............ 7

        2.    The GMVA does not toll any of Plaintiff's other claims. ......................... 9

        3.    Equitable estoppel does not apply to the claims asserted against Defendants. .............................................................................................. 10

    C.    In The Alternative, Plaintiff Fails To State A Claim For The Remaining Causes of Action ......................................................................................... 13

        1.    Plaintiff fails to state a claim under RICO. ............................................ 14

            a.    Plaintiff fails to allege a violation of the RICO statute ................ 14

            b.    Plaintiff fails to allege an injury to business or property. ............. 16

        2.    Plaintiff fails to state a claim for forced labor under the TVPRA. ........... 16

        3.    Plaintiff fails to state a claim for battery/sexual battery and IIED because Defendants are not vicariously liable for Combs's torts. ............ 18

        4.    Plaintiff fails to state a claim for violation of the right of publicity. ........ 20

        5.    Plaintiff fails to state a claim for copyright infringement........................ 21

        6.    Plaintiff fails to state a claim for breach of the implied covenant of good faith and fair dealing. ...................................................................... 22

        7.    Plaintiff fails to state a claim for fraud/intentional misrepresentation/false promise.............................................................. 22

        8.    Plaintiff fails to state a claim for negligent hiring, training, supervision, or retention. ............................................................................................. 23

        9.    Plaintiff fails to state a claim for negligence. .......................................... 24

        10.    Plaintiff fails to state a NIED claim........................................................ 24

11.   Both the NIED and IIED claims must also be dismissed because they
      are duplicative of Plaintiff's other tort claims. ........................................ 25

CONCLUSION.................................................................................................................... 25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Acklin v. Eichner*,
    2021 WL 4442819, at *5 (S.D.N.Y. Sept. 27, 2021) ............................................................. 14

*Alfano v. NGHT, Inc.*,
    623 F. Supp. 2d 355, 359 (E.D.N.Y. 2009) ...................................................................... 21

*Aronov v. Mersini*,
    2015 WL 1780164, at *3 (S.D.N.Y. Apr. 20, 2015) ......................................................... 14

*Ashcroft v. Iqbal*,
    556 U.S. 662, 678 (2009) ........................................................................................ 4, 17

*Atuahene v. Hartford*,
    10 F. App'x 33, 34 (2d Cir. 2001) .................................................................................. 11

*Babb v. Capitalsource, Inc.*,
    588 F. App'x 66, 68 (2d Cir. 2015) ............................................................................... 15

*Bell Atl. v. Twombly*,
    550 U.S. 544, 555, 570 (2007) ........................................................................................ 4

*Bensky v. Indyke*,
    743 F. Supp. 3d 586, 600 (S.D.N.Y. 2024) ................................................................... 5, 7

*Berman v. Morgan.*,
    455 F. App'x 92, 95 (2d Cir. 2012),
    *aff'd*, 2023 WL 2317173 (2d Cir. Mar. 2, 2023) ............................................................ 15

*Black v. Ganieva*,
    619 F. Supp. 3d 309, 329 (S.D.N.Y. 2022) ...................................................................... 15

*Busher v. Barry*,
    2021 WL 5071871, at *2 (2d Cir. Nov. 2, 2021) .............................................................. 13

*C.M. v. Archibald*,
    2022 WL 1030123, at *4 (S.D.N.Y. Apr. 6, 2022) ........................................................... 19

*Chau v. Donovan*,
    357 F. Supp. 3d 276, 292 (S.D.N.Y. 2019) ...................................................................... 19

*Choi v. Beautri Realty Corp.*,
    135 A.D.3d 451, 452 (1st Dep't 2016) ............................................................................ 13

*D.J.C.V. v. United States*,
    605 F. Supp. 3d 571, 600 (S.D.N.Y. 2022)..............................................................24

*De Gregorio v. CBS, Inc.*,
    123 Misc. 2d 491, 493 (Sup. Ct. N.Y. Cnty. 1984) ................................................20

*Digilytic Int'l FZE v. Alchemy Fin., Inc.*,
    2022 WL 912965, at *5 (S.D.N.Y. Mar. 29, 2022) ................................................13

*Dixon v. Reid*,
    744 F. Supp. 3d 323, 327 n.4  (S.D.N.Y. 2024)......................................................10

*Doe 1 v. Deutsche Bank Aktiengesellschaft*,
    671 F. Supp. 3d 387, 414 (S.D.N.Y. 2023)............................................................24

*Doe v. Combs*,
    2024 WL 4987044, at *1-4 (S.D.N.Y. Dec. 5, 2024) ......................................5, 6, 7

*Doe v. Daddy's House Recordings Inc.*,
    2025 WL 1425732, at *1 (S.D.N.Y. May 16, 2025)..................................................5

*Doe v. Rohan*,
    17 A.D.3d 509, 512 (2d Dep't 2005) ......................................................................19

*Doe v. Solebury Sch.*,
    2022 WL 1488173, at *4 (S.D.N.Y. May 11, 2022)................................................19

*Doe v. Uber*,
    551 F. Supp. 3d 341, 364 (S.D.N.Y. 2021)............................................................25

*Edmondson v. Raniere*,
    751 F. Supp. 3d 136, 189 (E.D.N.Y. 2024) ...........................................................17

*Ehrens v. Lutheran Church*,
    385 F.3d 232, 235 (2d Cir. 2004)............................................................................23

*Finger v. Omni*,
    77 N.Y.2d 138, 144 (1990) .....................................................................................20

*Flexborrow v. TD*,
    255 F. Supp. 3d 406, 423 (E.D.N.Y. 2017) ...........................................................15

*Foster v. Svenson*,
    128 A.D.3d 150, 156–157 (1st Dep't 2015) ...........................................................21

*Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*,
    586 U.S. 296, 301 (2019).........................................................................................21

*Franco v. Diaz*,
    51 F. Supp. 3d 235, 246 (S.D.N.Y. 2014) ............................................................17

*Gilmore v. Combs*,
    2025 WL 1425326, at *3 (S.D.N.Y. May 16, 2025),
    *appeal filed*, No. 25-1301 (2d Cir. May 21, 2025) ..............................................12

*Gross v. Waywell*,
    628 F. Supp. 2d 475, 485, 494 (S.D.N.Y. 2009)....................................................15

*H.J. v. Nw. Bell*,
    492 U.S. 229, 239 (1989), ....................................................................................15

*Hartmann v. Popcornflix.com LLC*,
    690 F. Supp. 3d 309, 319 (S.D.N.Y. 2023)............................................................21

*Hesse v. Godiva Chocolatier, Inc.*,
    463 F. Supp. 3d 453, 472 (S.D.N.Y. 2020)............................................................22

*Hongxia Wang v. Enlander*,
    2018 WL 1276854, at *4 (S.D.N.Y. Mar. 6, 2018) ..................................................8

*In re Gleason*,
    96 N.Y.2d 117, 122 (2001) ......................................................................................6

*J.G.-T v. Jehovah's Witnesses Watch Tower Bible & Tract Soc. of Pa.*,
    2025 WL 1557172, at *3 (Sup. Ct. Kings Cnty. May 29, 2025) ..........................5, 7

*Judith M. v. Sisters of Charity Hosp.*,
    93 N.Y.2d 932, 933 (1999) ....................................................................................20

*Kane v. Mount Pleasant Cent. Sch. Dist.*,
    80 F.4th 101, 111 (2d Cir. 2023) ...........................................................................13

*Kerik v. Tacopina*,
    64 F. Supp. 3d 542, 557 (S.D.N.Y. Dec. 3, 2014) ..................................................8

*Khatskevich v. Shapiro*,
    2025 WL 833872, at *12 (S.D.N.Y. Mar. 17, 2025) ................................................8

*Koch v. Christie's Int'l PLC*,
    699 F.3d 141, 148 (2d Cir. 2012)............................................................................8

*L.C. v. Archdiocese*,
    2022 WL 5188051, at *1 (Sup. Ct. N.Y. Cnty. Sept. 30, 2022) ............................19

*Lemerond v. Fox*,
    2008 WL 918579, at *3 (S.D.N.Y. Mar. 31, 2008) ................................................21

*Letren v. Big Fish*,
   2021 WL 2028584, at *2 (Sup. Ct. N.Y. Cnty. May 21, 2021) ............................................23

*Lohan v. Take-Two*,
   31 N.Y.3d 111, 120 (2018) ...................................................................................................20

*Long Island Anesthesiologists PLLC v. United Healthcare Ins. Co. of N.Y.*,
   2025 WL 1031093, at *3 (E.D.N.Y. Apr. 7, 2025),
   *appeal filed*, No. 25-1167 (2d Cir. May 6, 2025) ................................................................14

*Lynch v. Amoruso*,
   232 F. Supp. 3d 460, 465 (S.D.N.Y. 2017)...........................................................................14

*Majewski v. Broadalbin-Perth Cent. Sch. Dist.*,
   91 N.Y.2d 577, 584 (1998) .....................................................................................................6

*Manuel v. Paramount Pictures*,
   2001 WL 1135917, at *1 (S.D.N.Y. Sept. 26, 2001).............................................................8

*MarketShare Corp. v. Transactis, Inc.*,
   2021 WL 1948283, at *5 (S.D.N.Y. May 12, 2021)...............................................................9

*Medina v. Bauer*,
   2004 WL 136636, at *6 (S.D.N.Y. Jan. 27, 2004)................................................................11

*Messenger v. Gruner*,
   94 N.Y.2d 436, 441–42 (2000) .............................................................................................20

*MPI Tech A/S v. Int'l Bus. Machs. Corp.*,
   2017 WL 481444, at *5 (S.D.N.Y. Feb. 6, 2017)...................................................................8

*Nat'l Union v. Xerox.*,
   25 A.D.3d 309, 310 (1st Dep't 2006) ....................................................................................22

*Neitzke v. Williams*,
   490 U.S. 319, 326-27 (1989) ..................................................................................................3

*Nwosuocha v. Glover*,
   2024 WL 2105473, at *1 (2d Cir. May 10, 2024) ................................................................21

*Park v. Optumrx, Inc.*,
   152 F. Supp. 3d 127, 138 (S.D.N.Y. 2016)...........................................................................10

*Pinto v. Tenenbaum*,
   105 A.D.3d 930, 931 (2d Dep't 2013) ...................................................................................18

*Poppel v. Archibald*,
   2020 WL 2749719, at *5 (S.D.N.Y. May 27, 2020)..............................................................18

*Porco v. Lifetime*,
  150 N.Y.S.3d 380, 384 .......................................................................................21

*Putter v. N. Shore Univ. Hosp.*,
  7 N.Y.3d 548, 552 (2006) ................................................................................10

*R. v. R.*,
  37 A.D.3d 577, 578 (2d Dep't 2007) ...............................................................19

*Roldan v. Lewis*,
  2025 WL 676090, at *12-13 (E.D.N.Y. Mar. 3, 2025) .................................5, 7

*Rouviere v. Howmedica Osteonics Corp.*,
  645 F. Supp. 3d 157, 177-78 (S.D.N.Y. 2022), *aff'd*, 2024 WL 1478577
  (2d Cir. Apr. 5, 2024), *cert. denied*, 145 S. Ct. 995 (2024) ...........................12

*Rowe v. Great Atl. & Pac. Tea Co.*,
  46 N.Y.2d 62, 69 (1978) ..................................................................................22

*S.S. v. Rockefeller Univ. Hosp.*,
  2025 WL 1559583, at *2 (1st Dep't June 3, 2025) .....................................5, 7, 9

*Santana v. Adler*,
  2018 WL 2172699, at *5 (S.D.N.Y. Mar. 26, 2018) .......................................15

*Secure Source v. Miller*,
  2024 WL 1342804, at *3 (S.D.N.Y. Mar. 29, 2024) .......................................14

*Sejin Precision Indus. Co. v. Citibank*,
  2017 WL 4350323, at *3, 6 (S.D.N.Y. June 28, 2017),
  *aff'd*, 726 F. App'x 27 (2d Cir. 2018) .....................................................8, 10, 11

*Sejin Precision Indus. v. Citibank*,
  235 F. Supp. 3d 542, 553 (S.D.N.Y. 2016) .....................................................13

*Souza v. Exotic Island Enters.*,
  68 F.4th 99, 121–22 (2d Cir. 2023) ....................................................................9

*Swarna v. Al-Awadi*,
  622 F.3d 123, 144–45 (2d Cir. 2010) ...............................................................19

*Taylor v. UPS*,
  72 A.D.3d 573, 573 (1st Dep't 2010) ...............................................................19

*Terio v. Michaud*,
  2010 WL 6032586, at *7 (S.D.N.Y. Dec. 3, 2010),
  *R&R adopted*, 2011 WL 868661 (S.D.N.Y. Mar. 10, 2011) ..........................24

*Torrey v. Portville,*
  66 Misc. 3d 1225(A) (Sup. Ct. Cattaraugus Cty. Feb. 21, 2020) ...........................................19

*Truman v. Brown,*
  434 F. Supp. 3d 100, 117–18 (S.D.N.Y. 2020)........................................................................8

*Tsesarskaya v. City of N.Y.,*
  843 F. Supp. 2d 446, 463–64 (S.D.N.Y. 2012)......................................................................23

*Twersky v. Yeshiva Univ.,*
  993 F. Supp, 2d 429, 446-47 (S.D.N.Y. 2014), *aff'd,* 579 F. App'x 7 (2d Cir. 2014).............12

*Universitas Educ., LLC v. Bank,*
  2015 WL 9304551, at *3 (S.D.N.Y. Dec. 21, 2015) .................................................................9

*Velez v. Sanchez,*
  693 F.3d 308, 324–25 (2d Cir. 2012).....................................................................................16

*VFP v. Foot Locker,*
  49 Misc. 3d 1210(A), at *2-3 (Sup. Ct. N.Y. Cnty. Oct. 22, 2015),
  *aff'd,* 147 A.D.3d 491 (1st Dep't 2017).................................................................................18

*Viva Logistics Inc. v. MSC Mediterranean Shipping Co.,*
  2022 WL 18027623, at *2 (S.D.N.Y. Dec. 30, 2022) ...........................................................13

*Walter v. NBC,*
  27 A.D.3d 1069, 1070–71 (4th Dep't 2006) ..........................................................................21

*Westchester v. Astorino,*
  137 F. Supp. 3d 586, 612–13 (S.D.N.Y. 2015).......................................................................16

*Wolkstein v. Morgenstern,*
  275 A.D.2d 635, 637 (1st Dep't 2000) ...................................................................................25

*Zumpano v. Quinn,*
  6 N.Y.3d 666, 674 (2006) .......................................................................................................11

**Statutes**

17 U.S.C.
  § 106.......................................................................................................................................21
  § 411(a) ..................................................................................................................................21
  § 507(b)....................................................................................................................................9

18 U.S.C.
  § 1589....................................................................................................................................17
  § 1589(a) ...............................................................................................................................17
  § 1595(c) .................................................................................................................................8

New York Civil Rights Law § 51 ........................................................................20, 21

Trafficking Victims Protection Reauthorization Act ..........................................3, 8, 10

**Rules and Regulations**

Federal Rules of Civil Procedure
    Rule 8 ........................................................................................... *passim*
    Rule 8(a) ....................................................................................................11
    Rule 9(b) ..............................................................................................14, 22
    Rule 12(b)(6) ................................................................................. *passim*

N.Y.C. Admin. Code
    § 10-1104 (2000) ...................................................................................4, 5
    § 10-1105 (2022) .......................................................................................9

N.Y.C.P.L.R.
    § 203(a) ......................................................................................................7
    § 213(2) ......................................................................................................9
    § 213(8) ......................................................................................................9

**Constitutional Provisions**

United States Constitution
    First Amendment ....................................................................................20

Defendants Bunim-Murray ("BM"), Paramount Global ("Paramount"), MTV Productions ("MTV"), and Viacom (collectively, "Production Defendants" or "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss with prejudice the claims asserted against them in the Complaint filed by Plaintiff Sara Rivers ("Plaintiff") pursuant to Rule 8 and Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]

## PRELIMINARY STATEMENT

In this lawsuit, Plaintiff seeks relief for claims that arose over two decades ago while she was a participant on the television show Making the Band 2. The Complaint is scattershot. While Plaintiff primarily complains about the conduct of Sean Combs during filming, the pleading names more than 30 defendants (including deceased individuals and defunct companies), asserts more than 20 purported claims, and contains more than 1,000 paragraphs. The role of Production Defendants was limited to the production of a television show almost twenty-five years ago. The allegations, however, often refer to "Defendants"—plural—without further identifying information. The length, chaos, and ambiguity of the pleading cannot mask the meritless nature of the claims asserted against Production Defendants. Each should be dismissed with prejudice.

As an initial matter, Plaintiff's Gender-Motivated Violence Act claim fails because there is no retroactive liability for "enabling" conduct, which is the sole basis of the claim as it relates to Production Defendants. Because Plaintiff is attempting to hold Production Defendants responsible for alleged conduct that occurred no later than 2004—and there can be no enabling liability under the statute for conduct that occurred before 2022—that claim must be dismissed with prejudice. The remaining claims against Production Defendants must similarly be dismissed

---

[1] Viacom and MTV are incorrectly named as defendants, as neither is currently a separate legal entity. Regardless, they should be dismissed from this lawsuit for all of the reasons stated. All of the Production Defendants respectfully adopt the arguments set forth in co-defendants' briefs, to the extent the Court deems them applicable.

with prejudice because the applicable statutes of limitations have plainly passed. Plaintiff's attempt to invoke equitable estoppel to save a handful of her claims is contradicted by the pleading itself; rather than alleging that Production Defendants took any action to prevent her from filing this lawsuit, she pleads that she has had no contact with them whatsoever since early 2004 at the latest. There can be no equitable estoppel on these facts. Finally, and in the alternative, each of the claims should also be dismissed for failing to state a claim upon which relief can be granted. Plaintiff's "shotgun" pleading not only fails as a matter of black-letter law under Rule 8 but also under a more traditional Rule 12(b)(6) analysis, if the Court is inclined to attempt to piece together what, precisely, Plaintiff is alleging—and against whom. Each claim asserted against the Production Defendants must be dismissed with prejudice.

## BACKGROUND

Plaintiff asserts a variety of claims related to her participation with the show Making the Band 2 ("MTB2"). *See generally* Compl. (ECF No. 1). MTB2 aired from October 19, 2002 to April 20, 2004. Compl. at 26. According to Plaintiff, she was pursuing a music career when she decided to audition for MTB2 for "a chance at music stardom." *Id.* ¶¶ 80, 82. The majority of the Complaint details various episodes of the three seasons of MTB2 and ultimately alleges that Defendant Sean Combs's actions made the show a hostile work environment and constituted inhumane treatment. *See id.* ¶¶ 84-519, 604-30 (hostile work environment), 631-79 (inhumane treatment). Plaintiff further alleges that while filming MTB2, Combs "ran his left hand across her breasts." *See id.* ¶ 717. Plaintiff contends that after MTB2 ceased filming, Combs prevented her from having a career in the music industry. *See id.* ¶¶ 692-702

As to BM and MTV, Plaintiff alleges that they produced MTB2 and "financially benefited from, condoned and enabled Defendant Diddy's misconduct." *Id.* ¶¶ 66 (MTV), 69 (BM). According to Plaintiff, BM and MTV would film Combs making physical threats to the

participants on MTB2 and "encouraged fighting and hostility to manufacture drama for the MTB television show." *Id.* ¶¶ 604, 613. Plaintiff further alleges that BM and MTV "allowed Defendant [Combs] to choose [] unreasonable accommodations for the exclusive purpose of manufacturing drama," and that BM "subjected Plaintiff and other participants to hectic work conditions and forced physical labor." *Id.* ¶¶ 644, 653. Plaintiff asserts that she attempted to redress with BM grievances related to her working conditions but that she was "ignored." *Id.* ¶¶ 680-91.

There are only a handful of allegations in the Complaint specifically related to Paramount or Viacom. Plaintiff alleges that "Paramount and subsidiaries, like Defendant MTV, financially benefited from, condoned and enabled Defendant Combs'[s] misconduct." *Id.* ¶¶ 64, 65 (same allegation related to Viacom). Plaintiff alleges that she signed contracts with Paramount and Viacom, *id.* ¶ 105, and that upon information and belief Paramount, Viacom, and other defendants made approximately $30 million from MTB2, *id.* ¶ 577.

On these allegations, Plaintiff asserts twelve claims against Production Defendants: (1) a claim pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"); (2) forced labor under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), (3) battery/sexual battery, (4) violation of the right of publicity under New York Civil Rights law, (5) copyright infringement, (6) breach of the implied covenant of good faith and fair dealing, (7) fraud/intentional misrepresentation/false promise, (8) negligent hiring, training, supervision, and retention, (9) negligence, (10) a claim under the New York City Victims of Gender-Motivated Violence Protection Act ("GMVA"), (11) negligent infliction of emotional distress ("NIED"), and (12) intentional infliction of emotional distress ("IIED").

## ARGUMENT

One of the primary purposes of Rule 12(b)(6) of the Federal Rules of Civil Procedure is to permit the Court to terminate lawsuits that are fatally flawed in their legal premises and, thus, to

spare the litigants the burdens of unnecessary pretrial and trial activity. *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989). A claim should be dismissed either (i) because it asserts a theory that is not cognizable as a matter of law, or (ii) because it does not contain sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. v. Twombly*, 550 U.S. 544, 555, 570 (2007). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In other words, plaintiffs must "nudge[] their claims across the line from conceivable to plausible" to survive a motion to dismiss. *Twombly*, 550 U.S. at 570. "Where a complaint pleads facts that are merely consistent with a defendant's liability," it cannot survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted).

### A. Plaintiff Fails To State A Claim Under The GMVA.

Plaintiff fails to state a claim under the GMVA because the Act does not impose retroactive liability on corporate entities such as Production Defendants, who allegedly only "enabled" the underlying conduct. *See* Compl. ¶¶ 915, 925-27, 930 (alleging that Defendants "enabled" Combs's crimes). As New York courts have unanimously held, Production Defendants cannot be held liable for "enabling" under the GMVA for alleged conduct that occurred prior to its amendment in 2022. And because Production Defendants' alleged conduct all occurred in 2004 or earlier, Plaintiff cannot sustain a GMVA claim as a matter of law.

When the GMVA was first enacted in 2000, it provided a standalone claim that "any person claiming to be injured by an individual who commits a crime of violence motivated by gender . . . [has] a cause of action against such individual in any court of competent jurisdiction[.]" N.Y.C. Admin. Code § 10-1104 (2000) (*previously codified* at § 8-904) (the "2000 GMVA"). The 2000

GMVA "provided for a cause of action against individual defendants, but not against their employers or supervisory entities." *J.G.-T v. Jehovah's Witnesses Watch Tower Bible & Tract Soc. of Pa.*, 2025 WL 1557172, at *3 (Sup. Ct. Kings Cnty. May 29, 2025).

In 2022, the GMVA "was amended to permit victims of gender-motivated violence to pursue a cause of action against not only the perpetrator but also any party who 'directs, enables, participates in, or conspires in the commission of a crime of violence motivated by gender'" (the "Abettor Provision").[2] *S.S. v. Rockefeller Univ. Hosp.*, 2025 WL 1559583, at *2 (1st Dep't June 3, 2025) (quoting Admin. Code § 10-1104). But as New York courts have unanimously—and unequivocally—held, the Abettor Provision does not apply retroactively against corporate entities and thus only applies to conduct occurring after the 2022 amendment. *See, e.g.*, *S.S.*, 2025 WL 1559583 at *2 ("[N]either the original [GMVA] nor the 2022 amendment apply retroactively[.]"); *J.G.-T*, 2025 WL 1557172, at *3 ("[T]he 2022 amendments to the [GMVA] are not retroactive."); *Roldan v. Lewis*, 2025 WL 676090, at *12–13 (E.D.N.Y. Mar. 3, 2025) (holding that the 2022 GMVA's "new strand of liability does not reach back to retroactively make such conduct illegal"); *Doe v. Combs*, 2024 WL 4987044, at *4 (S.D.N.Y. Dec. 5, 2024) ("[T]he Court has concluded the 2022 [GMVA] is not retroactive."); *Bensky v. Indyke*, 743 F. Supp. 3d 586, 600 (S.D.N.Y. 2024) (dismissing claim under 2022 GMVA based on holding that the amendment is not retroactive).

On this point, *Doe v. Combs* is instructive. In *Combs*, the plaintiff filed a claim under the 2022 GMVA against Sean Combs and several corporate defendants. 2024 WL 4987044, at *1. In addressing whether the 2022 GMVA applied retroactively, the Court determined that the 2022

---

[2] The question of whether the GMVA is preempted by the New York Child Victims Act ("CVA") and Adult Survivor's Act ("ASA") is currently pending before the Second Circuit. *See Doe v. Daddy's House Recordings Inc.*, 2025 WL 1425732, at *1 (S.D.N.Y. May 16, 2025) (noting that the Second Circuit is expected to address whether the CVA and ASA preempt the GMVA). This would provide another potential basis for dismissing the GMVA claim.

GMVA "created a substantive change by expanding the scope of liability" and would require retroactive application in order to be viable in plaintiff's case. *Id.* at *3. The court acknowledged New York's "'deeply rooted presumption against retroactivity'" based on fairness considerations. *Id.* (citation omitted). The court then reiterated the two axioms of statutory interpretation that courts use to determine whether a statute has retroactive effect, namely that "'[a]mendments are presumed to have prospective application unless the legislature's preference for retroactivity is explicitly stated or clearly indicated . . . [and] remedial legislation should be given retroactive effect in order to effectuate its beneficial purpose.'" *Id.* (alterations in original) (citation omitted).

The court held that the first axiom, legislative intent, did not favor retroactive application as "[t]he language of the 2022 [GMVA] does not mention or otherwise discuss retroactivity." *Id.* Regarding the second axiom, the court observed that "[c]lassifying a statute as remedial does not automatically overcome the strong presumption of prospectivity since the term may broadly encompass any attempt to supply some defect or abridge some superfluity in the former law." *Id.* (alterations in original) (quoting *Majewski v. Broadalbin-Perth Cent. Sch. Dist.*, 91 N.Y.2d 577, 584 (1998)). The court then listed the factors to consider when addressing this axiom, namely "'whether the Legislature has made a specific pronouncement about retroactive effect or conveyed a sense of urgency; whether the statute was designed to rewrite an unintended judicial interpretation; and whether the enactment itself reaffirms a legislative judgment about what the law in question should be,'" and concluded that none of these factors was met. *Id.* at *3–4 (quoting *In re Gleason*, 96 N.Y.2d 117, 122 (2001)). Specifically, the court determined that: 1) there were no pronouncements in the legislative history regarding retroactive effect or sense of urgency, 2) there were no references as to whether the 2022 GMVA was designed to rewrite an unintended judicial interpretation, and 3) a press release from New York's City Council did not indicate the

2022 GMVA was intended to reaffirm a legislative judgment about what the law in question should be.  *Id.* at *4.  The Court ultimately "[found] nothing in the text or legislative history that overcomes the presumption against retroactivity" and "concluded the 2022 [GMVA] is not retroactive."  *Id.*  Courts in New York have unanimously adopted this reasoning in holding that the amended GMVA's Abettor Provision does not impose retroactive liability.  *See*, *e.g.*, *S.S.*, 2025 WL 1559583, at *2; *J.G.-T*, 2025 WL 1557172, at *3; *Roldan*, 2025 WL 676090, at *12–13; *Bensky*, 743 F. Supp. 3d at 600.

Just as in *Combs*, Plaintiff's claim against Production Defendants depends entirely on the Abettor Provision of the 2022 GMVA, as Production Defendants are corporate entities and Plaintiff does not (and could not) allege any violence committed by either entity.  Indeed, Plaintiff specifically cites the Abettor Provision in her Complaint and repeatedly alleges that Production Defendants are liable under the GMVA because they "enabled" Combs.  *See* Compl. ¶¶ 64-66, 69 (first instance), 915, 925-27, 930.  But because the alleged "enabling" conduct underlying Plaintiff's claims, *see* Compl. ¶¶ 64-66, 69 (first instance), 915, 925-27, 930, occurred no later than 2004, *id.* ¶¶ 22, 679, Plaintiff cannot sustain a 2022 GMVA claim as a matter of law.

Accordingly—and as both federal and state courts in New York have unanimously held—any GMVA claim asserted against Production Defendants must be dismissed with prejudice because the Abettor Provision does not apply retroactively.

### B.    Plaintiff's Remaining Claims Are All Barred By The Applicable Statutes Of Limitations

#### 1.    The statutes of limitations has passed on all of Plaintiff's claims.

All Plaintiff's remaining claims against the Production Defendants—which allegedly originated over 20 years ago—are time-barred and should be dismissed.  The statute of limitations for filing a claim "shall be computed from the time the cause of action accrued."  N.Y.C.P.L.R.

§ 203(a).  Plaintiff's claims accrued either when (1) she had a complete cause of action,[3] or (2) when she learned of her injury.[4]  Accordingly, Plaintiff had a complete cause of action for all her claims against Production Defendants no later than 2004 as all of the conduct alleged related to Production Defendants occurred during the filming of MTB2, the last episode of which aired on April 20, 2004.  *See* Compl. at 26.  Plaintiff explicitly alleges that she has not heard from Production Defendants since shortly after filming season 3 of MTB2, *see id.* ¶ 679, which must have occurred in early 2004 at the latest.

Unsurprisingly, none of Plaintiff's claims permit her to file an action over twenty years after her claim accrued:

- Plaintiff's RICO claim is barred by the applicable four-year statute of limitations. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 148 (2d Cir. 2012) ("RICO claims are subject to a four-year statute of limitations.").

- Plaintiff's claim for forced labor under the TVPRA is barred by its own ten-year statute of limitations.[5]  *See* 18 U.S.C. § 1595(c) (setting forth a ten-year statute of limitations for claims brought under the TVPRA).

- Plaintiff's claims for battery, intentional infliction of emotional distress, and violation of the right of publicity are barred by the one-year statute of limitations. N.Y.C.P.L.R. § 215(3) (one-year statute of limitations for battery claims); *Truman*

---

[3] *See Sejin Precision Indus. Co. v. Citibank*, 2017 WL 4350323, at *3 (S.D.N.Y. June 28, 2017) ("A tort claim accrues as soon as the claim becomes enforceable, i.e., when all elements of the tort can be truthfully alleged in a complaint.") (internal quotation marks and citations omitted), *aff'd*, 726 F. App'x 27 (2d Cir. 2018); *Khatskevich v. Shapiro*, 2025 WL 833872, at *12 (S.D.N.Y. Mar. 17, 2025) ("Under the TVPRA, a claim accrues when the plaintiff has a complete and present cause of action.") (cleaned up); *MPI Tech A/S v. Int'l Bus. Machs. Corp.*, 2017 WL 481444, at *5 (S.D.N.Y. Feb. 6, 2017) ("A breach of contract claim accrues at the time of the breach.").

[4] *See Kerik v. Tacopina*, 64 F. Supp. 3d 542, 557 (S.D.N.Y. Dec. 3, 2014) ("Federal courts . . . generally apply a discovery accrual rule when a statute is silent on the issue, as civil RICO is here.") (internal quotations and citation omitted); *Manuel v. Paramount Pictures*, 2001 WL 1135917, at *1 (S.D.N.Y. Sept. 26, 2001) (stating that a copyright claim accrues "when a plaintiff knows or has reason to know of the injury upon which the claim is premised") (internal quotation marks and citation omitted).

[5] Additionally, any claim for forced labor pursuant to the TVPRA is "limited to conduct that occurred on or after December 19, 2003, when a private cause of action for this claim was first recognized." *Hongxia Wang v. Enlander*, 2018 WL 1276854, at *4 (S.D.N.Y. Mar. 6, 2018).

*v. Brown*, 434 F. Supp. 3d 100, 117–18 (S.D.N.Y. 2020) (one year statute of limitations for IIED claims (citing N.Y.C.P.L.R. § 215(3))); *Souza v. Exotic Island Enters.*, 68 F.4th 99, 121–22 (2d Cir. 2023) (holding that the one-year statute of limitations from § 215(3) applies to claims for violation of right of publicity).

- Plaintiff's claim for copyright infringement is barred by the three-year statute of limitations.  17 U.S.C. § 507(b).

- Plaintiff's claims for breach of the implied covenant of good faith and fair dealing and fraud/intentional misrepresentation/false promise are barred by the six-year statute of limitations.  *MarketShare Corp. v. Transactis, Inc.*, 2021 WL 1948283, at *5 (S.D.N.Y. May 12, 2021) (six-year statute of limitations applies to claims for breach of covenant of good faith and fair dealing) (citing N.Y.C.P.L.R. § 213(2)); N.Y.C.P.L.R. § 213(8) (six-year statute of limitations for "an action based upon fraud").

- Plaintiff's negligence claims, namely, negligent hiring, negligent training, negligent supervision, negligent retention, negligence, and negligent infliction of emotional distress, are all barred by the three-year statute of limitations that applies to all negligence claims.  *Universitas Educ., LLC v. Bank*, 2015 WL 9304551, at *3 (S.D.N.Y. Dec. 21, 2015) ("New York applies a three-year statute of limitations to all negligence claims.").

## 2.    The GMVA does not toll any of Plaintiff's other claims.

Plaintiff wrongly alleges in her Complaint that the 2022 GMVA "revives any claims" against a party who abets a crime of violence motivated by gender.  Compl. ¶¶ 18, 915.  This is simply incorrect as a matter of law—the GMVA only revives the stand-alone claim under that statute; it does not purport to revive any other claims.  *See* N.Y.C. Admin. Code § 10-1105 (2022) ("Notwithstanding any provision of law that imposes a period of limitation to the contrary, any civil claim or cause of action *brought under this chapter* that is time barred because the applicable period of limitation is hereby revived . . ." (emphasis added)).  Courts have unanimously interpreted the GMVA according to its plain text on this point.  For example, in *S.S. v. Rockefeller University Hospital*, the plaintiff brought claims under the 2022 GMVA and common law negligence and negligent hiring, retention, and supervision claims for alleged conduct that had happened over forty years prior.  2025 WL 1559583, at *2.  The Court held that the 2022 GMVA's

Abettor provision did not apply retroactively and, further, that the GMVA's revival provision did not revive the GMVA claim or the state law claims and therefore affirmed dismissal of the action. *Id.*; *see also Dixon v. Reid*, 744 F. Supp. 3d 323, 327 n.4 (S.D.N.Y. 2024) ("The GMVA . . . was amended in 2022 to re-open the statute of limitations *for GMVA claims*[.]") (emphasis added). Accordingly, the GMVA does not resuscitate any of Plaintiff's other untimely claims.

### 3.    Equitable estoppel does not apply to the claims asserted against Defendants.

Plaintiff also attempts to invoke the doctrine of "equitable estoppel" for five of her claims: (1) forced labor under the TVPRA, (2) battery/sexual battery, (3) violation of the right of publicity, (4) breach of the implied covenant of good faith and fair dealing, and (5) fraud/intentional misrepresentation/false promise.[6]  For each of these claims, she essentially repeats the allegation that "Defendants' continuous threats, coercion and interference with Plaintiff's music career prevented Plaintiff from asserting her rights within the statutorily proscribed period.  Defendants should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff."  Compl. ¶¶ 804, 816, 848, 878, 892.

The doctrine of equitable estoppel "is to be invoked sparingly and only under exceptional circumstances."  *Park v. Optumrx, Inc.*, 152 F. Supp. 3d 127, 138 (S.D.N.Y. 2016) (internal quotation marks and citation omitted).  "Under New York law, 'equitable estoppel is appropriate where the plaintiff is prevented from filing an action within the applicable statute of limitations due to his or her reasonable reliance on deception, fraud or misrepresentations by the defendant.'"  *Sejin Precision Indus.*, 2017 WL 4350323, at *6 (quoting *Putter v. N. Shore Univ. Hosp.*, 7 N.Y.3d

---

[6] Plaintiff does not raise equitable estoppel in relation to her claims for:  (1) a RICO violation, (2) copyright infringement, (3) negligent hiring, training, supervision, and retention, (4) negligence, (5) NIED, or (6) IIED and, thus, has no explanation for ignoring the statute of limitations for these claims.  Accordingly, those claims should be dismissed as time-barred for all of the reasons stated above.

548, 552 (2006)).  "This doctrine is based on the principle that a wrongdoer 'cannot take affirmative steps to prevent a plaintiff from bringing a claim and then assert the statute of limitations as a defense,' and 'it is therefore fundamental to the application of equitable estoppel for plaintiffs to establish that subsequent and specific actions by the defendants somehow kept them from timely bringing suit.'"  *Id.* (quoting *Zumpano v. Quinn*, 6 N.Y.3d 666, 674 (2006)).

Plaintiff does not come close to satisfying the standard.  The conclusory allegation that "Defendants' continuous threats, coercion and interference with Plaintiff's music career prevented Plaintiff from asserting her rights within the statutorily proscribed period" does not allege any deception, fraud, or misrepresentation by any *specific defendant* that would have prevented her from filing her claims—let alone any such action by Production Defendants.  Compl. ¶¶ 804, 816, 848, 878, 892.  The Complaint likewise does not allege any *specific conduct* by Defendants that prevented Plaintiff from filing her claims for more than twenty years.  *See Medina v. Bauer*, 2004 WL 136636, at *6 (S.D.N.Y. Jan. 27, 2004) ("By lumping all the defendants together and failing to distinguish their conduct, plaintiff's amended complaint fails to satisfy the requirements of Rule 8."); *Atuahene v. Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (Rule 8(a) does not permit a plaintiff to merely "lump[ ] all the defendants together in each claim and provid[e] no factual basis to distinguish their conduct").  In fact, Plaintiff alleges the opposite.  MTB2 aired between October 19, 2002, and April 20, 2004.  Compl. at 26.  Shortly after the end of filming the final season, Plaintiff alleges that she came back to New York City for a meeting with Defendant Combs where he stated that he was "dismantling the group."  *Id.* ¶¶ 676-77.  Plaintiff then explicitly alleges that she "never heard from Defendants BM, MTV or BBE after that day."  *Id.* ¶ 679.  As Plaintiff concedes that she has not heard from Production Defendants since early 2004 at the latest, she

pleads herself out of establishing that they took actions keeping her from bringing suit as a matter of law—and common sense.

For example, in *Gilmore v. Combs*, the court ruled that all the plaintiff's claims were time-barred despite plaintiff's argument that Combs's pattern of violent retaliation in the entertainment industry created an environment of fear that discouraged victims from speaking out. *Gilmore v. Combs*, 2025 WL 1425326, at *3 (S.D.N.Y. May 16, 2025), *appeal filed*, No. 25-1301 (2d Cir. May 21, 2025). The court held that plaintiff's arguments "at most suggest that Combs's actions chilled the 'entertainment industry's' willingness to sue [d]efendants, not that Combs prevented [plaintiff] specifically from filing this suit." *Id.* The court further held that equitable estoppel did not apply because plaintiff admitted that the defendants did not actively conceal information giving rise to his claim and plaintiff further "d[id] not identify any communication with either [d]efendant after the 1996 incident." *Id.*

Here, the facts are even less susceptible to an estoppel argument than the one rejected in *Gilmore*. Production Defendants did not engage in any alleged activity that prevented Plaintiff from asserting these claims. To the contrary, they had no contact with Plaintiff whatsoever since early 2004. *See* Compl. ¶ 679. Equitable estoppel simply does not apply on these facts. *See also, e.g.*, *Rouviere v. Howmedica Osteonics Corp.*, 645 F. Supp. 3d 157, 177–78 (S.D.N.Y. 2022) (holding equitable estoppel did not apply where "[p]laintiffs d[id] not allege that any of these statements or concealments were specifically directed at [p]laintiffs or, even more specifically, directed at preventing [p]laintiffs from timely filing suit."), *aff'd*, 2024 WL 1478577 (2d Cir. Apr. 5, 2024), *cert. denied*, 145 S. Ct. 995 (2024); *Twersky v. Yeshiva Univ.*, 993 F. Supp, 2d 429, 446–47 (S.D.N.Y. 2014) (no equitable estoppel as a matter of law where plaintiffs "fail[ed] to specify the content of the misrepresentations that were made, the timing of the misrepresentations, how

the plaintiffs reasonably relied on the misrepresentations, and how the plaintiffs exercised due diligence in bringing the current Complaint."), *aff'd*, 579 F. App'x 7 (2d Cir. 2014).[7]

Accordingly, all of Plaintiff's claims are time-barred and must be dismissed pursuant to Rule 12(b)(6) with prejudice. *See Viva Logistics Inc. v. MSC Mediterranean Shipping Co.*, 2022 WL 18027623, at *2 (S.D.N.Y. Dec. 30, 2022) ("Since the statute of limitations bars [plaintiff's] claim, amendment of [plaintiff's] Complaint would be futile. The Complaint is hereby dismissed with prejudice."); *see also, e.g.*, *Kane v. Mount Pleasant Cent. Sch. Dist.*, 80 F.4th 101, 111 (2d Cir. 2023) (upholding denial of leave to amend where "amendment would not cure the fact that [plaintiff's] claims are time barred").

## C.    In The Alternative, Plaintiff Fails To State A Claim For The Remaining Causes of Action

Even if Plaintiff's claims were not time barred (which they plainly are), they should still be dismissed with prejudice for failing to state a claim. The majority of the Complaint constitutes impermissible "shotgun" pleading, merely reciting the elements of the claim and leaving it to Defendants—and the Court—to determine which of the over 1,000 paragraphs of allegations apply to each claim. *See Digilytic Int'l FZE v. Alchemy Fin., Inc.*, 2022 WL 912965, at *5 (S.D.N.Y. Mar. 29, 2022) ("Shotgun pleadings are those which incorporate by reference the previous paragraphs of allegations and merely recite the elements of each claim, leaving defendants and the

---

[7] Although not mentioned by Plaintiff, the separate doctrine of equitable tolling likewise does not apply. Equitable tolling "permits a plaintiff to avoid the effect of a statute of limitations 'if despite all due diligence [s]he is unable to obtain vital information bearing on the existence of h[er] claim.'" *Sejin Precision Indus. v. Citibank*, 235 F. Supp. 3d 542, 553 (S.D.N.Y. 2016) (citation omitted). Here, Plaintiff does not allege that she was unaware of the alleged wrongful conduct underlying her claims at the time they occurred—and so equitable tolling does not apply. Furthermore, as this Court has held, "'the doctrine of equitable tolling is not available in state causes of action in New York'"—and all but a few of Plaintiff's claims against Production Defendants are state claims. *Id.* (quoting *Choi v. Beautri Realty Corp.*, 135 A.D.3d 451, 452 (1st Dep't 2016)); *see also Busher v. Barry*, 2021 WL 5071871, at *2 (2d Cir. Nov. 2, 2021) (same).

court to parse out which facts apply to which claim."). The Complaint should be dismissed for failure to comply with Rule 8 on this basis alone. *See Long Island Anesthesiologists PLLC v. United Healthcare Ins. Co. of N.Y.*, 2025 WL 1031093, at *3 (E.D.N.Y. Apr. 7, 2025) ("[S]hotgun pleading that is neither clear nor concise goes against the fundamental principles of Rule 8."), *appeal filed*, No. 25-1167 (2d Cir. May 6, 2025). Each claim also fails for the additional reasons stated below.

### 1.    Plaintiff fails to state a claim under RICO.

A civil RICO claim requires three elements: (1) a violation of the RICO statute; (2) an injury to business or property, and (3) causation. *See Lynch v. Amoruso*, 232 F. Supp. 3d 460, 465 (S.D.N.Y. 2017). "Because civil RICO actions carry 'the carrot of treble recovery and the availability of a federal forum,' courts carefully scrutinize RICO claims at the motion to dismiss stage." *Secure Source v. Miller*, 2024 WL 1342804, at *3 (S.D.N.Y. Mar. 29, 2024) (quoting *Acklin v. Eichner*, 2021 WL 4442819, at *5 (S.D.N.Y. Sept. 27, 2021)). Plaintiff's RICO claim fails because she does not plead facts sufficient to satisfy the first and second elements.

### a.    Plaintiff fails to allege a violation of the RICO statute.

Plaintiff fails to allege a violation of the RICO statute for two separate reasons: (1) Plaintiff does not plead her mail or wire fraud claims with specificity as required by Rule 9(b) or allege facts sufficient to give rise to an inference of fraudulent intent, and (2) she cannot plead a pattern of racketeering activity because she cannot meet the continuity requirement.

First, because Plaintiff alleges predicate RICO acts sounding in fraud, *see* Compl. ¶¶ 774-78 (mail fraud), 779-86 (wire fraud), the "pleading of those acts must satisfy the particularity requirements of Rule 9(b)." *Aronov v. Mersini*, 2015 WL 1780164, at *3 (S.D.N.Y. Apr. 20, 2015). Rule 9(b) imposes a heightened pleading standard for claims alleging fraud that requires the claim "state with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b), and

14

"'allege facts that give rise to a strong inference of fraudulent intent.'"  *Black v. Ganieva*, 619 F. Supp. 3d 309, 329 (S.D.N.Y. 2022) (quoting *Berman v. Morgan.*, 455 F. App'x 92, 95 (2d Cir. 2012)), *aff'd*, 2023 WL 2317173 (2d Cir. Mar. 2, 2023).  Plaintiff does neither here.  She does not "'specify the statements [she] claims were false and misleading, give particulars as to the respect in which [she] contend[s] the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements.'"  *Id.* at 342 (quoting *Babb v. Capitalsource, Inc.*, 588 F. App'x 66, 68 (2d Cir. 2015)).  She separately fails to allege facts that give rise to a strong inference of fraudulent intent.  Rather, Plaintiff makes only conclusory allegations that Production Defendants "financially benefited through their partnership with Defendant Diddy" and "unlawfully increased their profits."  Compl. ¶¶ 729, 738.  It is black-letter law, however, that a generalized accusation of profit motive fails to give rise to a strong inference of fraudulent intent.  *See*, *e.g.*, *Flexborrow v. TD*, 255 F. Supp. 3d 406, 423 (E.D.N.Y. 2017).

Second, Plaintiff does not allege a pattern of racketeering, as required.  "To meet the 'pattern of racketeering activity' element, a plaintiff must allege that the predicate acts have 'continuity plus relationship which combines to produce a pattern.'"  *Santana v. Adler*, 2018 WL 2172699, at *5 (S.D.N.Y. Mar. 26, 2018) (quoting *H.J. v. Nw. Bell*, 492 U.S. 229, 239 (1989)), *report & recommendation adopted by* 2018 WL 2170299 (S.D.N.Y. May 10, 2018).  For an alleged RICO violation based on mail or wire fraud, like the one Plaintiff is attempting to assert, a plaintiff must allege an "open-ended" pattern of continuing criminal conduct—a "close-ended" one will not suffice.  *See*, *e.g.*, *Gross v. Waywell*, 628 F. Supp. 2d 475, 485, 494 (S.D.N.Y. 2009).  The only allegations of mail and wire fraud relate to "marketing materials" and "contest instructions" to recruit people to participate in MTB2.  Compl. ¶¶ 776, 782-83.  Plaintiff alleges MTB2 aired between 2002 and 2004, *id.* ¶ 740, and besides a generalized and conclusory allegation that

Defendants' acts "continue[] possibly to this day," *id.* ¶ 765, she has not alleged any activity since 2004—which fails to satisfy the continuity requirement, as there is no alleged continuing behavior.

**b.    Plaintiff fails to allege an injury to business or property.**

Entirely separately, the RICO claim fails because Plaintiff does not adequately plead an injury to business or property. "RICO only protects injury to the plaintiff's business or property, meaning that many injuries are insufficient to establish RICO standing. Personal damages, emotional damages, and physical damages, for example, are insufficient." *Westchester v. Astorino*, 137 F. Supp. 3d 586, 612–13 (S.D.N.Y. 2015) (citing cases). Plaintiff alleges that Defendants' alleged RICO violations "forced her to endure harassment and sexual harassment from Defendant Diddy," Compl. ¶ 746, and "lead [sic] to assault, battery or overall danger to Plaintiff," *id.* ¶ 762. This is insufficient to allege an injury under RICO as a matter of law.

**2.    Plaintiff fails to state a claim for forced labor under the TVPRA.**

Plaintiff fails to state a claim under the TVPRA because she: (1) does not allege conduct actionable under the TVPRA's civil amendment, which does not apply retroactively, and (2) does not adequately allege the elements of a forced labor claim.

As an initial matter, it does not appear that Plaintiff alleges any actionable conduct under the TVPRA, as the December 2003 amendment to the TVPRA creating its civil cause of action does not apply retroactively. *See Velez v. Sanchez*, 693 F.3d 308, 324–25 (2d Cir. 2012). Although the vast majority of the conduct alleged in the Complaint is undated, Plaintiff alleges that: (1) "Plaintiff and the group released their first studio album on September 30, 2003," Compl. ¶ 331; (2) season three of MTB2 documented the album release and tour and filmed for one month, *id.* at 58 ("**MTB2 Season 3 Episode 1 – ALBUM RELEASE AND TOUR**") (emphasis in original), ¶ 667, and (3) episode one of season three aired on March 4, 2004, *id.* at 58 n.4. Based

on this timeline, most, if not all, of the conduct Plaintiff alleges while participating in MTB2 occurred before December 2003 and therefore is not actionable under the TVPRA.

In any event, Plaintiff fails to allege the necessary elements of a TVPRA forced labor claim. The TVPRA, in relevant part, provides for civil liability of any person who "provides or obtains the labor or services of a person . . . (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person; (2) by means of serious harm or threats of serious harm to that person or another person."  18 U.S.C. § 1589(a).  "For purposes of a TVPRA claim, 'serious harm includes threats of any consequences, whether physical or non-physical, that are sufficient under all of the surrounding circumstances to compel or coerce a reasonable person in the same situation to provide or to continue providing labor or services.'" *Franco v. Diaz*, 51 F. Supp. 3d 235, 246 (S.D.N.Y. 2014) (internal quotation marks and citation omitted).  Plaintiff's allegations related to her forced labor claim merely allege that "Defendants knowingly obtained labor from Plaintiff through threats of serious harm, physical restraint, and other means of coercion, in violation of 18 U.S.C. § 1589."  Compl. ¶ 798.  But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft*, 556 U.S. at 678.  Indeed, while Plaintiff generally alleges hostile working conditions, she does not allege any threats that were made to force her to continue participating MTB2.  *See generally* Compl.  And certainly Plaintiff does not allege any conduct by the Production Defendants—here, BM, Paramount, MTV, and Viacom—that secured her labor in a manner that violates the TVPRA.  While Plaintiff alleges that Defendants "knowingly benefited from the forced labor and the trafficking activities conducted by Defendant Diddy," Compl. ¶ 799, this conclusory allegation is insufficient to establish any actual or constructive knowledge.  *See Edmondson v. Raniere*, 751 F. Supp. 3d 136, 189 (E.D.N.Y. 2024) (dismissing TVPRA claims

where plaintiff did not allege defendant "had actual or constructive knowledge that [plaintiff] was a victim of forced labor and human trafficking offenses").

### 3. Plaintiff fails to state a claim for battery/sexual battery and IIED because Defendants are not vicariously liable for Combs's torts.

Plaintiff alleges that Production Defendants "financially and otherwise benefited from" the alleged sexual battery committed by Combs. Compl. ¶¶ 808-11. Plaintiff alleges that her IIED claim is based on the alleged sexual battery by Combs but does not allege a specific theory for holding Defendants responsible for Defendant Combs's actions. *Id.* ¶¶ 939-40. As an initial matter, these claims must be dismissed because, Plaintiff does not—and could not—allege the requisite employer-employee relationship. And, in any event, the only theory pursuant to which Production Defendants could be held liable on these facts would not apply as a matter of law.

Under the common law doctrine of *respondeat superior*, employers may be held liable for torts committed by an employee if that employee is acting (i) within the scope of their employment, and (ii) in furtherance of the employer's business interests. *See VFP v. Foot Locker,* 49 Misc. 3d 1210(A), at *2–3 (Sup. Ct. N.Y. Cnty. Oct. 22, 2015), *aff'd*, 147 A.D.3d 491 (1st Dep't 2017). Accordingly, to survive a motion to dismiss, "'a plaintiff must plead facts showing, among other things, that the tortious conduct causing the injury was undertaken within the scope of the employee's duties to the employer and was thus in furtherance of the employer's interests.'" *Poppel v. Archibald*, 2020 WL 2749719, at *5 (S.D.N.Y. May 27, 2020) (citation omitted). "An employee's actions fall within the scope of employment where the purpose in performing such actions is to further the employer's interest, or to carry out duties incumbent upon the employee in furthering the employer's business." *Pinto v. Tenenbaum,* 105 A.D.3d 930, 931 (2d Dep't 2013) (quotation marks and citations omitted). By contrast, where an employee's acts are "committed for purely personal motives and were an obvious departure from [that employee's] normal duties[,]

[then the employer] cannot be held vicariously liable . . . as a matter of law." *R. v. R.,* 37 A.D.3d 577, 578 (2d Dep't 2007) (reversing denial of pre-answer motion to dismiss claims premised on vicarious liability and holding "[s]ince the defendant's acts were committed for purely personal motives . . . the appellants cannot be held vicariously liable for the defendant's acts").

The intentional tort claims against the Production Defendants must be dismissed because "[i]t is well-settled that a sexual assault is not in furtherance of a defendant's business and cannot be considered as being within the scope of employment." *L.C. v. Archdiocese*, 2022 WL 5188051, at *1 (Sup. Ct. N.Y. Cnty. Sept. 30, 2022); *see also, e.g.*, *Taylor v. UPS*, 72 A.D.3d 573, 573 (1st Dep't 2010) (dismissing claim of vicarious liability for injuries sustained by plaintiff due to sexual assault by UPS employee when he was making a delivery to her apartment); *Doe v. Rohan,* 17 A.D.3d 509, 512 (2d Dep't 2005) (incidents of sexual abuse generally fall outside the scope of an employee's duties as such acts are "committed solely for personal reasons, and unrelated to the furtherance of [the] employer's business"). Indeed, "New York courts consistently have held that sexual misconduct and related tortious behavior arise from personal motives and do not further an employer's business, *even when committed within the employment context." Swarna v. Al-Awadi,* 622 F.3d 123, 144–45 (2d Cir. 2010) (emphasis added) (internal quotations and citation omitted) (collecting cases); *see also, e.g.*, *C.M. v. Archibald*, 2022 WL 1030123, at *4 (S.D.N.Y. Apr. 6, 2022) ("No decision in New York has been cited to date in which the doctrine of respondeat superior was held to apply to sexual assault.") (quotation marks and citations omitted); *Doe v. Solebury Sch.*, 2022 WL 1488173, at *4 (S.D.N.Y. May 11, 2022) (relying on language quoted in *C.M. v. Archibald* and dismissing sexual assault claims against school); *Chau v. Donovan*, 357 F. Supp. 3d 276, 292 (S.D.N.Y. 2019) (same); *Torrey v. Portville*, 66 Misc. 3d 1225(A) (Sup. Ct. Cattaraugus Cty. Feb. 21, 2020) (not vicariously liable for alleged sexual abuse by former teacher).

19

As the Complaint acknowledges, there was no legitimate or business reason for Combs's alleged unlawful and offensive misconduct. *See* Compl. ¶ 806. To the contrary, Plaintiff explicitly alleges that Combs's actions constitute "forcible touching" and "sexual abuse," *Id.* ¶ 921, both of which require "sexual contact" defined as touching of "the sexual or other intimate body parts of a person . . . *for the purpose of gratifying the actor's sexual desire."* Because Combs allegedly "departed from his duties for solely personal motives unrelated to the furtherance of the [employer's] business," *Judith M. v. Sisters of Charity Hosp.,* 93 N.Y.2d 932, 933 (1999), Defendants cannot be held vicariously liable for Combs's alleged misconduct as a matter of law.

### 4.    Plaintiff fails to state a claim for violation of the right of publicity.

Plaintiff's claim for violation of the right of publicity is barred by the significant constitutional protection for speech on matters of public concern under New York and federal constitutional law. Because "freedom of speech and the press . . . transcends the right to privacy," New York courts "have cabined [Civil Rights Law] section 51 'to avoid any conflict with the free dissemination of thoughts, ideas, newsworthy events, and matters of public interest' guaranteed by the First Amendment." *Lohan v. Take-Two*, 31 N.Y.3d 111, 120 (2018) (citations omitted).

"Newsworthiness" and "public interest" are "broadly construed," *Messenger v. Gruner*, 94 N.Y.2d 436, 441–42 (2000), and include "all types of factual, educational and historical data, or even entertainment and amusement, concerning interesting phases of human activity in general." *De Gregorio v. CBS, Inc.*, 123 Misc. 2d 491, 493 (Sup. Ct. N.Y. Cnty. 1984) (internal quotation marks and citation omitted). Courts have also been cautioned that the question of what is "newsworth[y]" is properly "left to reasonable editorial judgment and discretion" of publishers. *See Finger v. Omni*, 77 N.Y.2d 138, 144 (1990). "It is therefore clear that many types of artistic expressions, including literature, movies and theater whether intended as entertainment or not, can be newsworthy and can further the 'strong societal interest in facilitating access to information that

20

enables people to discuss and understand contemporary issues.'" *Porco v. Lifetime*, 150 N.Y.S.3d 380, 384 (3d Dep't) (quoting *Foster v. Svenson*, 128 A.D.3d 150, 156–157 (1st Dep't 2015)).  As an expressive work for entertainment television, MTB2 clearly falls within the "newsworthy" and "public interest" exceptions to Section 51 as expressive works of fiction.  *See e.g.*, *Lemerond v. Fox*, 2008 WL 918579, at *3 (S.D.N.Y. Mar. 31, 2008) (finding that mockumentary was a matter of public interest); *Walter v. NBC*, 27 A.D.3d 1069, 1070–71 (4th Dep't 2006) ("A performance involving comedy and satire may fall within the ambit of the newsworthiness exception even if the performance is not related to a 'legitimate' news broadcast [or event].") (alteration in original) (citation omitted).  Additionally, any alleged uses of Plaintiff's likeness to promote MTB2 would also fall within the newsworthiness exception.  *See Alfano v. NGHT, Inc.*, 623 F. Supp. 2d 355, 359 (E.D.N.Y. 2009) ("[A] media publication with newsworthy content may use an individual's image in an advertisement that reproduces that content . . . without violating Section 51.").

### 5.    Plaintiff fails to state a claim for copyright infringement.

Plaintiff alleges a claim for copyright infringement pursuant to 17 U.S.C. § 106.  Compl. ¶¶ 849-62.  "Before pursuing an infringement claim in court, however, a copyright claimant generally must comply with § 411(a)'s requirement that 'registration of the copyright has been made.'" *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 301 (2019) (quoting 17 U.S.C. § 411(a)).  Plaintiff does not allege that she has a registered copyright; in fact, she acknowledges that she does *not* own a certificate of registration in the works.  *See* Compl. ¶ 851.  For this reason, the Court must dismiss her claim for copyright infringement.  *See Hartmann v. Popcornflix.com LLC*, 690 F. Supp. 3d 309, 319 (S.D.N.Y. 2023) (dismissing claims for copyright infringement for works where plaintiff did not allege a certificate of registration); *Nwosuocha v. Glover*, 2024 WL 2105473, at *1 (2d Cir. May 10, 2024) (same).

### 6. Plaintiff fails to state a claim for breach of the implied covenant of good faith and fair dealing.

Plaintiff's claim for breach of the implied covenant of good faith and fair dealing fails because she does not provide *any* details regarding the underlying contract. While every contract contains an implied covenant of good faith and fair dealing, it is impossible to assess whether Plaintiff meets her "heavy burden" in sustaining this claim, *Rowe v. Great Atl. & Pac. Tea Co.,* 46 N.Y.2d 62, 69 (1978), because without even summary details of the underlying contract, it is impossible to determine whether any "implied covenant" therein has been violated. The Court cannot determine, for example, whether Plaintiff's allegations related to this claim are imposing obligations beyond what the terms of the contract provide, whether they nullify other express terms of the contract, or whether they create independent contractual rights. *Nat'l Union v. Xerox.,* 25 A.D.3d 309, 310 (1st Dep't 2006).

### 7. Plaintiff fails to state a claim for fraud/intentional misrepresentation/false promise.[8]

As with Plaintiff's claims for mail and wire fraud, the allegations related to fraud/intentional misrepresentation, and false promise all must be dismissed for failing to meet the pleading standards of Rule 9(b). *See supra* at 14-15. Without specifying any individual statement or speaker or alleging when or where the statements were made, Plaintiff merely alleges that "Defendants represented to Plaintiff that certain facts relative to payments to Plaintiff were true" and that "Defendants made multiple promises in verbally [sic] to Plaintiff." Compl. ¶ 881. These generalized allegations fall woefully short of what Rule 9(b) requires.

---

[8] Production Defendants understand "fraud" and "intentional misrepresentation" to be different names for the same cause of action. *See Hesse v. Godiva Chocolatier, Inc.,* 463 F. Supp. 3d 453, 472 (S.D.N.Y. 2020) ("To prevail on a claim for fraud or intentional misrepresentation [listing elements]."). Additionally, Defendants do not understand "false promise" to be an independent cause of action in New York but, rather, a method of establishing a claim for fraud.

**8.    Plaintiff fails to state a claim for negligent hiring, training, supervision, or retention.**

Plaintiff fails to adequately allege negligent hiring, training, supervision, or retention. "Under New York law, to state a claim for negligent hiring, training, supervision or retention, 'in addition to the standard elements of negligence, a plaintiff must show: (1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels.'" *Tsesarskaya v. City of N.Y.*, 843 F. Supp. 2d 446, 463–64 (S.D.N.Y. 2012) (quoting *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004)).

Plaintiff's allegations fall short.  First, Plaintiff does not allege an employer-employee relationship between Production Defendants and Combs (nor could she), let alone what position Combs was employed in, the dates of employment, or who specifically employed him.  Second, Plaintiff does not allege that Defendants knew or had reason to know of any propensity that Combs had for committing sexual battery.  Finally, Plaintiff does not allege that any torts were committed on the Production Defendants' "premises" or with their "chattels"; rather, Plaintiff alleges that the assault occurred at "Defendant Daddy's House."  Compl. ¶ 709.  Courts routinely dismiss negligent hiring, training, supervision, and retention claims when plaintiffs fail to allege *any* of the necessary elements.  *See, e.g.*, *Letren v. Big Fish*, 2021 WL 2028584, at *2 (Sup. Ct. N.Y. Cnty. May 21, 2021) (dismissing claims and holding that no elements were properly pleaded because alleged tortfeasor was "not alleged anywhere in the complaint to be an employee," the pleading contained only "blanket statements of . . . knowledge that [the tortfeasor] had a violent disposition," and "the tort was committed in a hotel, not the place of business").

### 9.    Plaintiff fails to state a claim for negligence.

Plaintiff's claim for negligence should be dismissed because it fails to satisfy the notice requirements of Rule 8.  "[T]here are three elements of negligence:  (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 414 (S.D.N.Y. 2023) (internal quotations and citation omitted).  Plaintiff's allegations related to her negligence claim merely recite these elements, without even including separate allegations for the dozen defendants she brings this claim against.  As pleaded, it is impossible to ascertain Plaintiff's theories for the duties owed by Production Defendants, breaches of those duties, or which of Plaintiff's alleged injuries were caused by the alleged breaches.  Because Plaintiff fails to plead her claim in compliance with Rule 8, the Court should dismiss with prejudice.  *See, e.g.*, *Terio v. Michaud*, 2010 WL 6032586, at *7 (S.D.N.Y. Dec. 3, 2010), *R&R adopted*, 2011 WL 868661 (S.D.N.Y. Mar. 10, 2011) (dismissing negligence claim where allegations only recited the legal elements).

### 10.    Plaintiff fails to state a NIED claim.

To state a claim for NIED, a plaintiff must allege "(1) extreme and outrageous conduct, … ([2]) a causal connection between the conduct and the injury, and ([3]) severe emotional distress." *D.J.C.V. v. United States*, 605 F. Supp. 3d 571, 600 (S.D.N.Y. 2022).  Additionally, under New York law, an NIED claim must assert one of three theories:  1) a bystander theory, which alleges defendant's negligence threatened the plaintiff with physical harm and the plaintiff suffered emotional injury from witnessing the death or serious bodily injury of a family member, 2) a direct duty theory, which alleges the plaintiff suffered emotional injury from defendant's breach that endangered plaintiff's own physical safety, or 3) a special circumstances theory, which asserts that there is an especial likelihood of serious mental distress arising from special circumstances.  *Id.*

The allegations relating to her NIED claim do nothing more than—again—group all 30 defendants together and allege in a conclusory fashion that "Defendants created an unreasonable risk of causing emotional distress to Plaintiff." Compl. ¶ 935. Plaintiff fails to identify any extreme and outrageous conduct *by Production Defendants*, to provide sufficient allegations to assert a causal connection, or to assert her NIED claim under one of the three requisite theories.

           **11.**    **Both the NIED and IIED claims must also be dismissed because they are duplicative of Plaintiff's other tort claims.**

Additionally, Plaintiff cannot bring either an NIED or an IIED claim because both are duplicative of her other causes of action. *See Doe v. Uber*, 551 F. Supp. 3d 341, 364 (S.D.N.Y. 2021) ("A NIED claim cannot be asserted if it is essentially duplicative of tort or contract causes of action.") (internal quotation marks and citation omitted); *Wolkstein v. Morgenstern,* 275 A.D.2d 635, 637 (1st Dep't 2000) (dismissing IIED claim, holding that "[g]enerally, a cause of action for infliction of emotional distress is not allowed if essentially duplicative of tort or contract causes of action"). Because Plaintiff's NIED and IIED claims are duplicative of her other claims—namely, the assault/battery claims, negligent hiring, and others that are all based on the same underlying conduct—both claims may also be dismissed on this independent ground.

<u>**CONCLUSION**</u>

For the foregoing reasons, Production Defendants respectfully request that the Court grant this motion to dismiss the claims asserted against them in Plaintiff's Complaint with prejudice pursuant to Rule 8 and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Dated: New York, New York  
       June 23, 2025

                          DAVIS WRIGHT TREMAINE LLP

                          Respectfully Submitted,

                          By: <u>*/s/ Geoffrey S. Brounell*</u>
                              Geoffrey S. Brounell
                              Francesca Reifer

**<u>CERTIFICATE OF COMPLIANCE WITH WORD COUNT LIMITATIONS</u>**

I hereby certify that the word count of this memorandum of law complies with the word limits of Local Civil Rule 7.1(c) and Justice Rakoff's Individual Rules. According to the word-processing system used to prepare this memorandum of law, the total word count for all printed text exclusive of the material omitted under Local Civil Rule 7.1(c) and Justice Rakoff's Individual Rules is 8,607 words.

I certify under penalty of perjury that the foregoing is true and correct.

Dated:     June 23, 2025
            New York, New York

                                                    */s/ Geoffrey S. Brounell*
                                                    Geoffrey S. Brounell