**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

SARA RIVERS,
(formerly known as Sara Stokes)

          *Plaintiff,*

      -against-

SEAN COMBS a/k/a "P. DIDDY, DIDDY, PUFF,
PUFF DADDY, PUFFY, BROTHER LOVE", BAD
BOY ENTERTAINMENT HOLDINGS, INC., HARVE
PIERRE, TRACY WAPLES, ALISON STANLEY,
CHRIS SAINSBURY, DEVYNE STEPHENS,
NORMA AUGENBLICK, DEREK WATKINS (a/k/a
FONZWORTH BENTLEY), TONY DOFAT, MICKEY
CARTER, DERIC ANGELETTIE (a/k/a "D.Dot" and
"MADD RAPPER"), JASON WILEY, BAD BOY
ENTERTAINMENT LLC, PHIL ROBINSON,
SHAWN PEREZ, DADDY'S HOUSE RECORDING
STUDIOS, BAD BOY PRODUCTIONS INC., COMBS
ENTERPRISES, LLC, UMG RECORDINGS, INC.,
JANICE COMBS, JANICE COMBS PUBLISHING
INC., JANICE COMBS PUBLISHING HOLDINGS
INC., SEAN JOHN CLOTHING LLC., PARAMOUNT
GLOBAL, VIACOM, MTV PRODUCTIONS, JACKIE
FRENCH, LOU PEARLMAN (estate of), BUNIM-
MURRAY PRODUCTIONS, TOWNSQUARE MEDIA
GROUP, JOHN AND JANE DOES 1-50, and DOE
ORGANIZATIONS 1-10

          *Defendants*.

---

Case No.: 1:25-cv-01726-JSR

**MEMORANDUM OF LAW
IN SUPPORT OF
DEFENDANT UMG
RECORDINGS, INC.'S
MOTION TO DISMISS THE
COMPLAINT**

**ORAL ARGUMENT
REQUESTED**

**PRYOR CASHMAN LLP**
   Donald S. Zakarin
   William L. Charron
   Nicholas G. Saady
   Nathaniel H. Kazlow
7 Times Square
New York, NY 10036
Tel.: (212) 421-4100
Fax: (212) 798-6307

*Attorneys for UMG Recordings, Inc.*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ..............................................................................................1

RELEVANT FACTS ...............................................................................................................3

STANDARD OF REVIEW ......................................................................................................4

ARGUMENT .............................................................................................................................5

    I.   PLAINTIFF'S 11 CLAIMS AGAINST UMGR ARE TIME-BARRED ...........................5

        a.  Plaintiff's RICO Claim (Claim 1) Is Time-Barred .................................................5

        b.  Plaintiff's Forced Labor Claim (Claim 3) Is Time-Barred .......................................5

        c.  Plaintiff's Right of Publicity and Unjust Enrichment Claims (Claim 9) Are Time-Barred ..................................................................................................................6

        d.  Plaintiff's Claim for Copyright Infringement (Claim 10) is Time-Barred ...................6

        e.  Plaintiff's Breach of Implied Covenant of Good Faith and Fair Dealing Claim (Claim 11) Is Time-Barred.........................................................................................7

        f.  Plaintiff's Fraud Claim (Claim 12) Is Time-Barred ....................................................8

        g.  Plaintiff's Negligent Hiring, Training, Supervision, and Retention (Claim 13), Negligence (Claim 14), and Negligent Infliction of Emotional Distress (Claim 16) Claims Are Time-Barred.........................................................................................8

        h.  Plaintiff's GMVPA Claim (Claim 15) Is Time-Barred and Any Purported Revival Is Preempted ...........................................................................................................9

            i.  The CVA and ASA Occupy the Field of Revival of Sexual Offense Claims..........9

            ii.  The GMVPA Revival Provision Conflicts with the CVA and ASA ...................10

        i.  Plaintiff's Intentional Infliction of Emotional Distress Claim (Claim 17) Is Time-Barred...........................................................................................................10

        j.  No Tolling Doctrine Applies to Save the Time-Barred Claims...................................10

    II. PLAINTFF'S CLAIMS AGAINST UMGR RELY ON IMPROPER GROUP PLEADINGS AND SHOULD BE DISMISSED................................................................11

III. PLAINTIFF FAILS TO STATE ANY CLAIM FOR RELIEF AGAINST UMGR .........13

    a.  Plaintiff Fails to State a RICO Claim Against UMGR .................................................13

        i.   Plaintiff Fails to Allege Two or More Predicate Acts of Racketeering Activity...14

        ii.  Plaintiff Fails to Allege a Continuous Pattern of Racketeering Activity...............14

        iii. Plaintiff Fails to Allege an Enterprise...................................................................15

        iv. Plaintiff Fails to Allege "Operation And Management" of the Enterprise ...........16

        v.   Plaintiff Fails to Allege Loss Causation .................................................................16

    b.  Plaintiff Fails to State a Claim for Forced Labor under TVPRA ...............................17

    c.  Plaintiff's Right of Publicity Claim is Deficient and Plaintiff's Unjust Enrichment Claim is Duplicative ..................................................................................................19

    d.  Plaintiff Fails to State a Claim for Copyright Infringement Against UMGR..............20

    e.  Plaintiff's Implied Covenant Claim Fails ..................................................................21

    f.  Plaintiff's Fraud Claim Fails for Lack of Particularity...............................................21

    g.  Plaintiff's Negligence, Negligent Hiring, Training, Supervision, and Retention, and Negligent Infliction of Emotional Distress Claims Are Insufficiently Pled...............22

    h.  Plaintiff's GMVPA Claim Fails.................................................................................23

    i.  Plaintiff Fails to State a Claim for Intentional Infliction of Emotional Distress .........24

IV. PLAINTIFF SHOULD NOT BE GIVEN LEAVE TO REPLEAD .......................................25

CONCLUSION.................................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*4 K & D Corp. v. Concierge Auctions, LLC*,
   2 F. Supp. 3d 525, 540 (S.D.N.Y. 2014) .............................................................................17

*Abdulaziz v. McKinsey & Co., Inc.*,
   No. 21 CIV. 1219 (LGS), 2021 WL 4340405, at *3 (S.D.N.Y. Sept. 22, 2021) ...................10

*Achtman v. Kirby, McInerney & Squire, LLP*,
   464 F.3d 328, 337 (2d Cir. 2006) ..........................................................................................4

*Adams v. Jenkins*,
   No. 115745/03, 2005 WL 6584554 (Sup. Ct. N.Y. Cnty. Apr. 22, 2005) .............................24

*AJ Energy LLC v. Woori Bank*,
   No. 18-CV-3735 (JMF), 2019 WL 4688629, at *5 (S.D.N.Y. Sept. 26, 2019) .......................4

*Anora v. Oasia Pro. Mgmt. Grp., Ltd.*,
   No. 19-CV-11732 (LJL), 2021 WL 11114539, at *2 (S.D.N.Y. Aug. 31, 2021) ...................18

*Anza v. Ideal Steel Supply Corp.*,
   547 U.S. 451, 464 (2006) ......................................................................................................17

*Ashcroft v. Iqbal*,
   556 U.S. 662, 678 (2009) .................................................................................................4, 16

*Atuahene v. City of Hartford*,
   10 F. App'x 33, 34 (2d Cir. 2001) .........................................................................................12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..............................................................................................................16

*Bellino v. Tallarico*,
   24-CV-0712 (LAK), 2024 WL 1344075, at *1 (S.D.N.Y. Feb. 21, 2024) .......................9, 10

*Bellino v. Tallarico*,
   No. 24-CV-00712, ECF No. 28 (S.D.N.Y. Apr. 26, 2024) ...................................................24

*Bendit v. Canva, Inc.*,
   No. 23-CV-473, 2023 WL 5391413, at *8–9 (S.D.N.Y. Aug. 22, 2023) ..............................19

*Bensky v. Indyke*,
   24-cv-1204 (AS), 2024 WL 3676819, at *10 (S.D.N.Y. Aug. 5, 2024) ................................24

*Calamari v. Panos*,
    16 N.Y.S.3d 824, 827 (2d Dep't 2015)................................................................8

*Callahan v. Credit Suisse (USA), Inc.*,
    No. 10 CV. 4599 BSJ, 2011 WL 4001001, at *7 (S.D.N.Y. Aug. 18, 2011) ...........................7

*Cedar Swamp Holdings, Inc. v. Zaman*,
    487 F. Supp. 2d 444, 450 (S.D.N.Y. 2007).............................................................15

*Cho v. Chu*,
    No. 21-CV-02297 (PGG) (SDA), 2022 WL 2532446, at *3 (S.D.N.Y. May
    12, 2022) ............................................................................................18

*Collins v. Pearson Educ., Inc.*,
    721 F. Supp. 3d 274, 284 (S.D.N.Y. 2024)............................................................12

*Continental Kraft Corp. v. Euro-Asia Dev. Grp., Inc.*,
    No. 97-CV-0619, 1997 WL 642350, at *4 (E.D.N.Y. Sept. 8, 1997) ....................................14

*Davis v. Blige*,
    505 F.3d 90, 98, 100 (2d Cir. 2007)..................................................................20

*Davis v. YMCA of USA*,
    228 N.Y.S.3d 161 (2025)..............................................................................23

*Doe v. Alsaud*,
    12 F. Supp. 3d 674, 677 (S.D.N.Y. 2014) ............................................................23

*Doe v. Combs*,
    23-CV-10628 (JGLC), 2024 WL 4987044, at *4 (S.D.N.Y. Dec. 5, 2024).............................1, 24

*Drob Collectibles, LLC v. Leaf Trading Cards, LLC*,
    No. 23-CV-63(GHW) (JW), 2024 WL 897952, at *6 (S.D.N.Y. Feb. 15, 2024)..............................20

*Edmondson v. RCI Hosp. Holdings, Inc.*,
    No. 16-CV-2242 (VEC), 2021 WL 4499031, at *3 (S.D.N.Y. Oct. 1, 2021) ...............................6

*FD Prop. Holding, Inc. v. US Traffic Corp.*,
    206 F. Supp. 2d 362, 369 (E.D.N.Y. 2002) ...........................................................15

*FindTheBest.com, Inc. v. Lumen View Tech. LLC*,
    20 F. Supp. 3d 451, 458 (S.D.N.Y. 2014) ...........................................................17

*Forest Park Pictures v. Universal Television Network, Inc.*,
    683 F.3d 424, 429 (2d Cir. 2012).....................................................................4

*Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*,
    139 S. Ct. 881, 887 (2019)..........................................................................20

*Geiss v. Weinstein Co. Holdings LLC*,
    383 F. Supp. 3d 156, 175 (S.D.N.Y. 2019)............................................................11

*Gerstenfeld v. Nitsberg*,
    190 F.R.D. 127 (S.D.N.Y. 1999) .........................................................................14

*Ghartey v. St. John's Queens Hosp.*,
    869 F.2d 160, 162 (2d Cir. 1989).........................................................................4

*Goldfine v. Sichenzia*,
    118 F. Supp. 2d 392, 396–397 (S.D.N.Y. 2000)........................................13, 15, 16

*Heffernan v. HSBC Banks USA*,
    No. 99-CV-07981, 2001 WL 803719, at *5 (E.D.N.Y. Mar. 29, 2001)..................15

*Heinrich v. Dean*,
    655 F. Supp. 3d 184, 189 (S.D.N.Y. 2023)............................................................15

*Hemi Grp., LLC v. City of N.Y., N.Y.*,
    559 U.S. 1, 9 (2010)...........................................................................................17

*Highlands Ins. Co. v. PRG Brokerage, Inc.*,
    No. 01-CV-2272, 2004 WL 35439, at *2 (S.D.N.Y. Jan. 6, 2004) ........................14

*Howard v. Carter*,
    615 F. Supp. 3d 190, 195 (W.D.N.Y. 2022) ..........................................................7

*In re Initial Pub. Offering Secs. Litig.*,
    241 F. Supp. 2d 281, 327 (S.D.N.Y. 2003)............................................................22

*J.L. v. Rockefeller Univ.*,
    No. 950131/2020, 2023 WL 3757389, at *11 (Sup. Ct. N.Y. Cnty. May 25,
    2023) ....................................................................................................................24

*Koch v. Christie's Int'l PLC*,
    699 F.3d 141, 153 (2d Cir. 2012)...........................................................................5

*Kwan v. Schlein*,
    634 F.3d 224, 230 (2d Cir. 2011)...........................................................................7

*Landgraf v. USI Film Prods.*,
    511 U.S. 244, 284 (1994)......................................................................................24

*Lawson v. Rubin*,
    No. 17-CV-6404, 2018 WL 2012869, at *9–10 (E.D.N.Y. Apr. 29, 2018) ...........17

*Levin v. Sarah Lawrence Coll.*,
    747 F. Supp. 3d 645, 669–70 (S.D.N.Y. 2024).....................................................6, 8

*Liu Jo S.P.A. v. Jenner,*
    630 F. Supp. 3d 501, 518 (S.D.N.Y. 2022)...........................................................................21

*Louis v. Niederhoffer,*
    No. 23-CV-6470-LTS, 2023 WL 8777015, at *1 (S.D.N.Y. Dec. 19, 2023).........................24

*Lundy v. Catholic Health Sys. of Long Island Inc.,*
    711 F.3d 106, 119 (2d Cir. 2013).........................................................................................13

*Mahan v. Roc Nation, LLC,*
    No. 14 CIV. 5075 LGS, 2015 WL 1782095, at *4 (S.D.N.Y. Apr. 15, 2015) ........................6

*Manley v. Mazzuca,*
    No. 01-CV-5178 (RJS), 2007 WL 4233013, at *3 (S.D.N.Y. Nov. 30, 2007)......................25

*McCollum v. Baldwin,*
    688 F. Supp. 3d 117, 131 (S.D.N.Y. 2023)..........................................................................22

*In re Merrill Lynch Ltd. P'ships Litig.,*
    154 F.3d 56, 58 (2d Cir.1998)................................................................................................5

*Morgens Waterfall Holdings, L.L.C. v. Donaldson, Lufkin & Jenrette Secs. Corp.,*
    198 F.R.D. 608, 609-610 (S.D.N.Y. 2001) ............................................................................14

*Moss v. Morgan Stanley Inc.,*
    719 F.2d 5, 17 (2d Cir. 1983)................................................................................................13

*Nasik Breeding & Research Farm Ltd. v. Merck & Co.,*
    165 F. Supp. 2d 514, 537 (S.D.N.Y. 2001).....................................................................14, 16

*Overall v. Est. of Klotz,*
    52 F.3d 398, 405 (2d Cir. 1995)...........................................................................................10

*Park v. Skidmore, Owings & Merrill LLP,*
    No. 17-CV-4473 (RJS), 2019 WL 9228987, at *4 (S.D.N.Y. Sept. 30, 2019)........................7

*Parker v. Alexander,*
    24-CV-4813 (LAK), 2025 WL 268436, at *2–3 (S.D.N.Y. Jan. 22, 2025) ......................9, 10

*Petrosurance, Inc. v. National Ass'n of Ins. Comm'rs,*
    888 F. Supp. 2d 491, 507 (S.D.N.Y. 2012)..........................................................................17

*Plusgrade L.P. v. Endava Inc.,*
    No. 21-CV-1530 (MKV), 2023 WL 2402879, at *6 (S.D.N.Y. Mar. 8, 2023) ......................12

*Police Benevolent Ass'n of City of New York, Inc. v. City of New York,*
    40 N.Y.3d 417, 423 (2023) ......................................................................................................9

*Poulard v. Delphin*,
No. 24-3015, 2025 WL 1417664, at *1 (2d Cir. May 16, 2025) ...............................................8

*Redtail Leasing, Inc. v. Belleza*,
No. 95-CV-5191, 1997 WL 603496, at *5 (S.D.N.Y. Sept. 30, 1997)....................................16

*Restis v. Am. Coal. Against Nuclear Iran, Inc.*,
53 F. Supp. 3d 705, 729 (S.D.N.Y. 2014) ...............................................................25

*Rosario v. 288 St. Nick LLC*,
10 Misc. 3d 146(A), at *1 (1st Dep't 2006).............................................................22

*Rosenson v. Mordowitz*,
No. 11-CV-6145, 2012 WL 3631308, at *5 (S.D.N.Y. Aug. 23, 2012)....................................13

*Rotella v. Wood*,
528 U.S. 549, 552 (2000) ...................................................................................5

*SCE Grp. Inc. v. City of New York*,
No. 18-CV-8909 (AT), 2020 WL 1033592, at *3 (S.D.N.Y. Mar. 3, 2020) ...........................12

*Shimkin v. Tompkins, McGuire, Wachenfeld & Barry*,
No. 02 CIV.9731(DLC), 2003 WL 21964959, at *5 (S.D.N.Y. Aug. 19, 2003)....................21

*Smith v. AECOM Tishman*,
No. 21-CV-02915 (PGG) (SDA), 2022 WL 19410315, at *5 (S.D.N.Y. June
1, 2022) ...........................................................................................................18

*Sokola v. Weinstein*,
78 Misc. 3d 842, 847 (Sup. Ct. N.Y. Cnty. 2023...................................................23

*Spirt v. Spirt*,
83 Misc. 3d 1210(A) (N.Y. Sup. Ct. 2024)............................................................6

*Stanley v. City of New York*,
71 Misc. 3d 171, 181 (Sup. Ct. N.Y. Cnty. 2020) ...............................................23

*Stein v. Rockefeller University*,
Case No. 2024-03637, ECF No. 25 (1st Dep't June 3, 2025).........................3, 9, 24

*Tears v. Boston Sci. Corp.*,
344 F. Supp. 3d 500, 514–515 (S.D.N.Y. 2014).....................................................21

*Technomarine SA v. Jacob Time, Inc.*,
905 F. Supp. 2d 482, 487 (S.D.N.Y. 2012).............................................................4

*Tesfay v. Hanes Brands Inc.*,
No. 19-CV-3889, 2019 WL 6879179, at *6 (S.D.N.Y. Dec. 17, 2019) .................................19

*V.E.C. Corp. of Delaware v. Hilliard*,
  896 F. Supp. 2d 253, 259–260 (S.D.N.Y. 2012)....................................................7

*Willard v. UP Fintech Holding Ltd*.,
  527 F. Supp. 3d 609, 625 (S.D.N.Y. 2021).........................................................25

*Xenias v. Roosevelt Hosp*.,
  180 A.D.3d 588, 589 (1st Dep't 2020) ..............................................................22

*Zuhovitzky v. UBS AG CHE 101.329.562*,
  21 Civ. 11124 (KPF), 2023 WL 4584452, at *9 (S.D.N.Y. July 18, 2023) ............17

## **Statutes**

17 U.S.C. § 106............................................................................................................3

17 U.S.C. § 507............................................................................................................6

18 U.S.C. § 1589..............................................................................................3, 17, 18

18 U.S.C. § 1595............................................................................................................5

18 U.S.C. § 1961..........................................................................................................14

18 U.S.C. § 1962(A), (C)-(D)..................................................................................3, 13

C.P.L.R. § 214...............................................................................................................8

Fed. R. Civ. Pro. § 8...............................................................................................12, 13

Fed. R. Civ. Pro. § 9(b)...........................................................................................14, 21

Fed. R. Civ. Pro. § 12(b)(6)......................................................................................4, 5

Fed. R. Civ. Pro. § 19(b)............................................................................................21

N.Y.C. Admin. Code § 10-1103...................................................................................3

Defendant UMG Recordings, Inc. ("UMGR")[1] submits this Memorandum of Law in support of its Motion to Dismiss the Complaint ("Complaint" or "Compl.") filed by Plaintiff Sara Rivers ("Rivers") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

River's Complaint stretches over 1,003 paragraphs (435 of which are irrelevant synopses of individual episodes of "Making The Band 2" ("MTB2")). Yet, UMGR is mentioned in only 11 of the first 727 paragraphs of the Complaint, setting forth the supposed "facts" underlying the Complaint's 22 claims, 11 of which are asserted against UMGR.[2] Aside from Paragraph 58, which identifies UMGR, the remaining 10 paragraphs mentioning UMGR are entirely irrelevant to Rivers' claims. Three paragraphs allege that Rivers was simultaneously employed by UMGR and ten unrelated entities from 2002 to 2004, but never had a contract with UMGR. (Compl. ¶¶22, 344, 631.)[3] Five paragraphs allege that UMGR distributed the album "Too Hot for TV" ("Album") and the "Bad Boys II" soundtrack ("Soundtrack;" collectively the "Recordings"). (Id. ¶¶183, 336, 351, 574, 576.)[4] One paragraph alleges that Rivers attended one meeting in UMGR's building (id. ¶364) and another alleges that MTB2 resurrected Sean Combs' ("Combs") career (id. ¶521).

---

[1] UMGR was substituted for Defendants Universal Music Group and Universal Music & Video Distribution Corp. by stipulation dated May 19, 2025, which was so ordered by this Court on May 21, 2025. (ECF No. 113.)

[2] During the parties' June 6, 2025 conference with the Court, Plaintiff's counsel represented to the Court that Plaintiff was going to file a document dropping certain claims. Despite repeated inquiries from counsel for multiple Defendants (including this firm) and despite local counsel for Plaintiff's promise on June 13 to provide a "firm answer" as soon as "[Ms. Mitchell] lands and can talk," nothing further has been heard from Plaintiff's counsel.

[3] As stated in the accompanying Declaration of Corinne Hanna ("Hanna Decl."), Rivers was never employed by nor had any contract with UMGR. (Hanna Decl. ¶¶4-5.)

[4] Publicly available information and UMGR's Rights Management System confirm that UMGR distributed the Recordings from 2003 to 2005. (Exhibits A and B to Declaration of Carla M. Miller ("Miller Decl.").)

But no facts show that UMGR had anything to do with MTB2. UMGR's sole alleged connection to this case is UMGR's distribution of the Recordings under its 2003-2005 agreement with Bad Boy Records. Instead, the Complaint relies on improper group pleading (using such terms as "RICO Orchestrators"), lumping UMGR together with multiple entities and individuals unrelated to UMGR. But the group pleading is only one of the flaws of this Complaint.

In addition, every claim alleged against UMGR is time-barred.[5] Moreover, all of Rivers' claims against UMGR fail on the merits for multiple other reasons. Rivers' RICO claim (Count I) fails to allege any predicate acts or continuity, or identify an enterprise, as required under the statute. It also fails to allege operation and management of the alleged enterprise or any loss causation. UMGR never employed Rivers, barring her forced labor claim (Count III), and Rivers fails to plead any of the requisite elements for participant liability. Rivers' NY Civil Rights Law claim, combined with an unjust enrichment claim (Count IX), is time-barred, UMGR's distribution of the Recordings was fully authorized, and Rivers did not and does not reside in New York.

Rivers' copyright infringement claim (Count X) is an ownership claim but UMGR is uninvolved in any ownership dispute. As an infringement claim it fails because no registration is alleged and Rivers does not claim to be the sole owner or author of the copyrights at issue. In any event, UMGR ceased distributing the Recordings in 2005, barring both ownership and infringement claims against UMGR. (Miller Decl. ¶¶2-3.)

Having failed to identify any contract with UMGR — and there is none — Rivers' claim for breach of implied covenant (Count XI) is baseless. Rivers' fraud and misrepresentation claim (Count XII) is a group pleading which fails to identify any fraud or misrepresentation by UMGR.

---

[5] As discussed below, Rivers makes a passing attempt to raise a tolling argument. There is no basis for tolling any statute of limitations.

Rivers' negligence claims (Counts XIII, XIV and XVI) are duplicative and fail to identify any duty owed by UMGR to Rivers, nor any duty UMGR breached.

Rivers' New York City Gender-Motivated Violence Protection Act ("GMVPA") claim (Count XV) fails as the GMVPA is not retroactively applicable to any party other than the alleged "perpetrator," as held in *Stein v. Rockefeller University*, Case No. 2024-03637, ECF No. 25 (1st Dep't June 3, 2025), and Combs' alleged conduct cannot be imputed to UMGR.

Finally, Rivers' claim for intentional infliction of emotional distress ("IIED") (Count XVII) fails because nowhere does the Complaint identify any extreme or outrageous conduct by UMGR that caused severe emotional distress to Rivers.

## RELEVANT FACTS

The Complaint pleads no factual basis for the claims against UMGR. Instead, it resorts to improper group pleading, naming UMGR in 11 claims: (1) violation of the Racketeer Influenced and Corrupt Organizations Act under 18 U.S.C. § 1962(A), (C)-(D) ("RICO"); (2) forced labor in violation of 18 U.S.C. §§ 1589 and 1595; (3) violation of the right of publicity under §§ 50 and 51 of the New York Civil Rights Law ("NYCRL") and unjust enrichment; (4) copyright infringement in violation of 17 U.S.C. § 106; (5) breach of the implied covenant of good faith and fair dealing; (6) fraud, intentional misrepresentation, and false promise; (7) negligent hiring, training, supervision, and retention; (8) negligence; (9) violation of the NYC GMVPA, as defined in N.Y.C. Admin. Code § 10-1103 *et seq.*; (10) negligent infliction of emotional distress ("NIED"); and (11) IIED.

All claims in Rivers' sprawling 1,003 paragraph Complaint arise out of her alleged experience on MTB2 from 2002 to 2004. But UMGR had nothing to do with MTB2, nor are any facts pled connecting it to MTB2. UMGR simply distributed the Recordings from 2003 to 2005.

But except for the baseless and time-barred infringement claim, no claim arises from UMGR's distribution of the Recordings. Neither Rivers nor Combs were employed by UMGR (Hanna Decl. ¶¶3-5) and no facts are pled showing UMGR knew of, or had any involvement in, any of the alleged misconduct of Combs nor did it have any duty to Rivers.

Even were every claim not time-barred – and they are – no facts are pled identifying what it is that UMGR supposedly did or failed to do that is actionable nor identifying any duty UMGR owed to Rivers.

## STANDARD OF REVIEW

To survive Rule 12(b)(6) dismissal, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). "A claim has 'facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424, 429 (2d Cir. 2012) (citation omitted.)

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). Nor do "legal conclusions masquerading as factual conclusions." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (internal quotations and citation omitted); *AJ Energy LLC v. Woori Bank*, No. 18-CV-3735 (JMF), 2019 WL 4688629, at *5 (S.D.N.Y. Sept. 26, 2019); *Technomarine SA v. Jacob Time, Inc.*, 905 F. Supp. 2d 482, 487 (S.D.N.Y. 2012) (citation omitted).

"Where the dates in a complaint show that an action is barred by a statute of limitations," a defendant may move for pre-answer dismissal on those grounds. *Ghartey v. St. John's Queens*

*Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989).  "Such a motion is properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted."  *Id.*

## ARGUMENT

## I.    PLAINTIFF'S 11 CLAIMS AGAINST UMGR ARE TIME-BARRED

Rivers' First, Third, and Ninth through Seventeenth Causes of Action ("Claims") against UMGR are based on events occurring between 2002 and 2004.  (*See generally* Compl. ¶¶72-727.) The claims are thus time-barred.

### a.  Plaintiff's RICO Claim (Claim 1) Is Time-Barred

Plaintiff's RICO claim is subject to a four-year statute of limitations which begins to run when the plaintiff "discovers or reasonably should have discovered the RICO injury."  *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 58 (2d Cir.1998); *Rotella v. Wood*, 528 U.S. 549, 552 (2000).  The RICO statute of limitations runs even where the full extent of the RICO scheme is not discovered until a later date, so long as there were "storm warnings" that should have prompted an inquiry.  *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 153 (2d Cir. 2012).

The Complaint alleges Rivers' knowledge of all facts giving rise to her alleged RICO claim over twenty years ago.  Moreover, there is not a single fact pled supporting Rivers' conclusory claim that "within ten (10) years preceding the filing of this action, Defendants have knowingly, willfully, and unlawfully participated in a pattern of racketeering activity that continues possibly to this day" (Compl. ¶765).  Indeed, the Complaint fails to identify any conduct by UMGR since 2005 (when it ceased distributing the Recordings).  Rivers' RICO claim is time-barred and should be dismissed.

### b.  Plaintiff's Forced Labor Claim (Claim 3) Is Time-Barred

UMGR never employed Rivers, barring her claim for forced labor under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §§ 1589 and 1595.  The claim

involves events from 2002 to 2004. (*See* Compl. ¶¶72-727, 797-804).  The "statute of limitations for civil claims under the TVPRA is ten years from the date the cause of action arises."  *Levin v. Sarah Lawrence Coll.*, 747 F. Supp. 3d 645, 669–70 (S.D.N.Y. 2024) (cleaned up) (citing 18 U.S.C. § 1595(c)).  Thus, the Claim was time-barred by no later than 2014.[6]

### c.  Plaintiff's Right of Publicity and Unjust Enrichment Claims (Claim 9) Are Time-Barred

Rivers' NYCRL and duplicative unjust enrichment claim (*see* Compl. ¶¶842-848) again involve events between 2002 and 2004 (*see id.* ¶¶72-727).  The NYCRL has a one-year statute of limitations.  *Edmondson v. RCI Hosp. Holdings, Inc.*, No. 16-CV-2242 (VEC), 2021 WL 4499031, at *3 (S.D.N.Y. Oct. 1, 2021).  *See also Spirt v. Spirt*, 83 Misc. 3d 1210(A) (N.Y. Sup. Ct. 2024) ("when a cause of action for unjust enrichment is based upon the same facts as . . . another cause of action, the unjust-enrichment claim is subject to the same statute of limitations as [that] cause of action") (citing *Bandler v. DeYonker*, 174 A.D.3d 461, 462 (1st Dep't 2019)).  The claims are thus time-barred.

### d.  Plaintiff's Claim for Copyright Infringement (Claim 10) Is Time-Barred

Rivers' copyright infringement claim is an inadequately pled declaratory judgment claim for ownership of an interest in the copyright in songs Rivers claims to have co-written (*see* Compl. ¶¶849-862).  Ownership claims have an absolute three-year statute of limitations (and infringement claims have a rolling three-year statute of limitations).  17 U.S.C. § 507(b).  Rivers admits she conveyed her ownership rights over twenty years ago.  As such, any ownership or infringement claim is time-barred.  *Mahan v. Roc Nation, LLC*, No. 14 CIV 5075 LGS, 2015 WL 1782095, at

---

[6] As detailed below, Plaintiff's attempt to toll the statute of limitations for its TVPRA and other claims based on "Defendants' continuous threats, erratic behavior, coercion and interference with Plaintiff's music career" (Compl. ¶804) is conclusory, pleading no facts, and utterly untrue as to UMGR.

\*4 (S.D.N.Y. Apr. 15, 2015), *aff'd*, 634 F. App'x 329 (2d Cir. 2016) (quoting *Gary Friedrich Enters., LLC v. Marvel Characters, Inc.*, 716 F.3d 302, 317 (2d Cir. 2013)); *Howard v. Carter*, 615 F. Supp. 3d 190, 195 (W.D.N.Y. 2022); *Kwan v. Schlein*, 634 F.3d 224, 230 (2d Cir. 2011) ("Where . . . the ownership claim is time-barred, and ownership is the dispositive issue, any attendant infringement claims must fail.").

Had Rivers pled an infringement claim, the claim accrues when the copyright holder discovers, or with due diligence should have discovered, the infringement. *Park v. Skidmore, Owings & Merrill LLP,* No. 17-CV-4473 (RJS), 2019 WL 9228987, at \*4 (S.D.N.Y. Sept. 30, 2019). UMGR has nothing to do with the ownership claim; since its distribution was authorized, it did not infringe and, any infringement claim against it is, in any event, time-barred.

Rivers admits being aware of the exploitation of the songs she claims to have co-written over twenty years ago. (Compl. ¶¶572, 575.) While she claims she lacks copies of the agreements she entered into (none of which are with UMGR) (*id.* ¶¶562, 673), the Copyright Office maintains an on-line database of all registered works, including the works claimed by Rivers. *See Park*, 2019 WL 9228987, at \*4 (taking judicial notice of copyright registration and dismissing infringement claim as untimely under discovery rule).

### e. Plaintiff's Breach of Implied Covenant of Good Faith and Fair Dealing Claim (Claim 11) Is Time-Barred

Rivers has not identified any contract with UMGR (there is none). As such, her claim for breach of the implied covenant of good faith and fair dealing (*see* Compl. ¶¶863-78) is baseless as against UMGR and time-barred because such claims have a six-year statute of limitations and accrue at the time of the breach, which would have been 2002-2004. (*See id.* ¶¶72-727.) *V.E.C. Corp. of Delaware v. Hilliard*, 896 F. Supp. 2d 253, 259–60 (S.D.N.Y. 2012) (citing CPLR §

213(2)); *Callahan v. Credit Suisse (USA), Inc.*, No. 10 CV. 4599 BSJ, 2011 WL 4001001, at *7 (S.D.N.Y. Aug. 18, 2011).

### f.   Plaintiff's Fraud Claim (Claim 12) Is Time-Barred

The Complaint fails to identify any duty owed by UMGR to Rivers nor a single misrepresentation or omission made by UMGR.  Further, Rivers' claim for fraud, intentional misrepresentation, and false promise (*see* Compl. ¶¶879-92) is time-barred.  Fraud claims "must be commenced within 'the greater of six years from the date the cause of action accrued or two years from the time the plaintiff . . . could with reasonable diligence have discovered it.'"  *Poulard v. Delphin*, No. 24-3015, 2025 WL 1417664, at *1 (2d Cir. May 16, 2025) (quoting CPLR § 213(8)).

Rivers has the burden of pleading and proving that the alleged fraud could not have been discovered during the two-year period before commencing the action.  *Id.*  Yet here, the Complaint describes information known to Rivers for decades, refuting any claim that Rivers did not know or could not have known of her claims twenty years ago, including alleged misrepresentations regarding "facts relative to payments to Plaintiff" and "promises in verbally [sic] to Plaintiff" that were aired on the show.  (Compl. ¶881.)

### g.   Plaintiff's Negligent Hiring, Training, Supervision, and Retention (Claim 13), Negligence (Claim 14), and Negligent Infliction of Emotional Distress (Claim 16) Claims Are Time-Barred

Combs was not UMGR's employee.  In any event, Rivers' claims for negligent hiring (*see id.* ¶¶893-904), negligence (*see id.* ¶¶905-13), and NIED (*see id.* ¶¶934-38) arise out of alleged conduct occurring between 2002 and 2004 (*see id.* ¶¶72-727) and are therefore time-barred by the three-year statutes of limitations.  CPLR § 214(5); *Levin*, 747 F. Supp. 3d at 659 (dismissing negligence and NIED claims as time-barred); *Calamari v. Panos*, 16 N.Y.S.3d 824, 827 (2d Dep't 2015).

### h. Plaintiff's GMVPA Claim (Claim 15) Is Time-Barred and Any Purported Revival Is Preempted

Rivers' GMVPA claim is based on conduct alleged to have occurred between 2002 and 2004. (*See* Compl. ¶¶72-727.)  The GMVPA has a seven year statute of limitations, barring such claims by 2011.  Rivers cannot rely on the GMVPA's 2022 amendment ("2022 Amendment") to revive her expired GMVPA claim because the 2022 Amendment is preempted by New York State law, which provides a conflicting, "comprehensive and detailed regulatory scheme" under the New York Child Victims Act, C.P.L.R. § 214-g ("CVA"), and the Adult Survivors Act, C.P.L.R. § 214-j ("ASA").  *Parker v. Alexander*, 24-CV-4813 (LAK), 2025 WL 268436, at *2–3 (S.D.N.Y. Jan. 22, 2025) (holding GMVPA's revival window is preempted by the CVA and ASA); *Bellino v. Tallarico*, 24-CV-0712 (LAK), 2024 WL 1344075, at *1 (S.D.N.Y. Feb. 21, 2024) (same).

"Local laws may be . . . preempted by state law either because the legislature has occupied the relevant field of regulation," *i.e.*, field preemption, "or because the local law conflicts with state law," *i.e.*, conflict preemption.  *Police Benevolent Ass'n of City of New York, Inc. v. City of New York*, 40 N.Y.3d 417, 423 (2023).[7]

#### i. The CVA and ASA Occupy the Field of Revival of Sexual Offense Claims

The CVA and ASA constitute comprehensive schemes because they "apply to all civil claims by child and adult victims" of "conduct constituting sexual offenses" and do so "notwithstanding" any limitations period "to the contrary." *Parker*, 2025 WL 268436, at *2 (internal citations omitted).  Further, the CVA and ASA are "detailed": they "provide exact time frames during which claims may be brought." *Id.*  Moreover, the ASA was passed four months

---

[7] The preemption question presented in Motion is currently before the Second Circuit in two separate appeals, *Parker v. Alexander*, No. 25-487 (2d Cir.) and *Doe v. Black*, 25-564 (2d Cir.). Regardless, as discussed below, as held in *Stein, supra,* the 2022 Amendment is not retroactive as to "enablers."

after the 2022 Amendment was enacted, confirming the legislature's intent to preempt local New York City law, as "the state easily could have carved the [GMVPA] out of the ambit of the ASA" yet "opted not to do so." *Id.*, at *3.

### ii.  The GMVPA Revival Provision Conflicts with the CVA and ASA

The 2022 Amendment conflicts with the revival windows of the CVA and the ASA, which control "[n]otwithstanding any provision of law which imposes a period of limitation to the contrary." *Id.* (quoting CPLR § 214-j).  Therefore, as Judge Kaplan has twice held, the CVA and ASA preempt the 2022 Amendment, thereby warranting dismissal of Rivers' GMVPA claim. *See id.*, at *2–3; *Bellino*, 2024 WL 1344075, at *1.

### i.  Plaintiff's Intentional Infliction of Emotional Distress Claim (Claim 17) Is Time-Barred

While there is not a single fact pled showing any action engaged in by UMGR, Rivers' IIED claim (*see* Compl. ¶¶939-44) is time-barred because Rivers' IIED claim, which occurred between 2002-2004 (*see id.* ¶¶72-727), has a one-year statute of limitations, which begins to run when damage is first sustained. *Abdulaziz v. McKinsey & Co., Inc.*, No. 21 CIV. 1219 (LGS), 2021 WL 4340405, at *3 (S.D.N.Y. Sept. 22, 2021) (citing CPLR § 215(3)).

### j.  No Tolling Doctrine Applies to Save the Time-Barred Claims

Rivers vaguely argues, without factual basis, that the statute of limitations for her Third Claim (Compl. ¶804), Ninth Claim (*id.* ¶848), Eleventh Claim (*id.* ¶878), and Twelfth Claim (*id.* ¶892) should be tolled due to "Defendants' continuous threats, erratic behavior, coercion and interference with Plaintiff's music career."  But not a single fact is pled showing any such action by UMGR because there was none, nor are any facts pled showing such conduct after 2004.

For tolling to apply because of duress, "the tortious conduct must continue uninterrupted." *Overall v. Est. of Klotz*, 52 F.3d 398, 405 (2d Cir. 1995).  Rivers pleads no facts showing any

alleged "coercion" since 2004. Indeed, the only "threats" Rivers references were allegedly made by Combs during the filming of MTB2 in 2002 to 2004 (Compl. ¶¶604-07), and she admits that "all Defendants may not have directly threatened coerced, forced or violently threatened [her]." (*Id.* ¶749.) The Complaint does not even suggest that UMGR made or ratified (or even knew of) any threats that would have impeded Rivers from asserting any claim for more than two decades. *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 175 (S.D.N.Y. 2019) (tolling based on duress did not apply where plaintiffs did not allege course of conduct involving threats or force that continued without interruption).[8]

## II. PLAINTIFF'S CLAIMS AGAINST UMGR RELY ON IMPROPER GROUP PLEADINGS AND SHOULD BE DISMISSED

As noted, out of over 700 "Factual Allegations" paragraphs, only 11 even mention UMGR. And none connect UMGR to any claims. At most, the Complaint alleges that UMGR distributed the Recordings (Compl. ¶¶183, 336, 351) and offers the irrelevant (and factually baseless) assertion that the Album did not go "platinum" because UMGR undershipped the Album, causing lost sales (*id.* ¶¶574, 576), as to which there is no claim. The Complaint does not and cannot link UMGR to MTB2 as UMGR was not involved in MTB2. Rivers speculates that UMGR (and three other Defendants) supposedly offered Combs the MTB2 franchise to rehabilitate his image following a 2001 trial, but UMGR had nothing to do with MTB2. (*Id.* ¶521.)[9]

---

[8] Nor can Plaintiff rely on an equitable estoppel theory based on an alleged fear of retaliation, which requires, *inter alia*, "threats or intimidation against [Plaintiff] by each defendant that [Plaintiff] seeks to estop." *Geiss*, 383 F. Supp. 3d at 174–75.

[9] The Complaint alleges that "Defendants BM, MTV, Viacom, Paramount and Diddy made approximately $30 million from the MTB2 television program" (Compl. ¶577) and that "Defendants Diddy, BBE, SJC, BBEH, Janice, JCP, and JCPH made approximately $50 million from the musical act "Da Band" (*Id.* ¶578). UMGR is not mentioned.

As noted above, without basis in fact or logic, Rivers asserts she was simultaneously an employee of UMGR and more than ten other Defendants between 2002 to 2004.  (*Id.* ¶¶22, 631.) She was never a UMGR employee.  (Hanna Decl. ¶¶4-5.)  And while Rivers names UMGR as a defendant in her unjust enrichment and copyright infringement claims, she designates a subsection of her "Factual Allegations" to these claims yet does not even mention UMGR, only Combs, BBE, Janice, JCP, and JCPH.  (*See* Compl. ¶¶724-27.)  In fact, Rivers identifies UMGR by name in only five of the 11 Claims she asserts against UMGR — RICO (*id.* ¶¶730-31, 744-47, 759, 763), Forced Labor (*id.* ¶799), Right of Publicity/Unjust Enrichment (*id.* ¶843), Negligence (*id.* ¶911), and GMVPA (*id.* ¶¶925, 932) but does so only in conclusory fashion, pleading no plausible facts to support UMGR's involvement in (let alone liability for) other Defendants' alleged misconduct. Rivers' other six Claims against UMGR — Copyright Infringement, Breach of Implied Covenant of Good Faith, Fraud, Negligent Hiring, NIED, and IIED — refer only to "Defendants" collectively and do not specify **any** acts or omissions by UMGR.

These group pleading allegations directed at "Defendants" violate FRCP Rule 8(a)(2).  *See, e.g.*, *Collins v. Pearson Educ., Inc.*, 721 F. Supp. 3d 274, 284 (S.D.N.Y. 2024) (explaining that Rule 8 "requires factual allegations that are sufficient to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'") (citation omitted); *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001); *SCE Grp. Inc. v. City of New York*, No. 18-CV-8909 (AT), 2020 WL 1033592, at *3 (S.D.N.Y. Mar. 3, 2020).

Rivers pleads no facts connecting UMGR to the alleged conduct of Combs, his associates or entities, or the parties involved in the production and airing of MTB2.  The allegations directed to "Defendants" are conclusory, lack any factual basis, and violate Rule 8.  *Plusgrade L.P. v. Endava Inc.*, No. 21-CV-1530 (MKV), 2023 WL 2402879, at *6 (S.D.N.Y. Mar. 8, 2023) (holding

that "the use of group pleading in the Amended Complaint precludes each of the thirteen defendants from knowing what conduct it is alleged to have performed and, thus, against which allegations it must defend").  In further violation of Rule 8, the Complaint does not identify a single act or omission of UMGR that would support a claim against it, nor does it plead any facts explaining how any of the alleged misconduct of other Defendants is related to or in furtherance of UMGR's business (beyond supposedly benefiting the unspecified, alleged "RICO enterprise"). The Complaint should be dismissed as against UMGR.

## III.     PLAINTIFF FAILS TO STATE ANY CLAIM FOR RELIEF AGAINST UMGR

### a.  Plaintiff Fails to State a RICO Claim Against UMGR

Courts "look[] with particular scrutiny at [c]ivil RICO claims to ensure that the Statute is used for the purposes intended by Congress." *Goldfine v. Sichenzia*, 118 F. Supp. 2d 392, 396–97 (S.D.N.Y. 2000).  "Civil RICO is an unusually potent weapon – the litigation equivalent of a thermonuclear device."  167 F.R.D. 649, 655 (S.D.N.Y. 1996), *aff'd*, 113 F.3d 1229 (2d Cir. 1997); *accord Rosenson v. Mordowitz*, No. 11-CV-6145, 2012 WL 3631308, at *5 (S.D.N.Y. Aug. 23, 2012).

As discussed below, a civil RICO claim requires that each defendant: (1) committed two or more predicate acts of "racketeering activity," (2) constituting a "pattern," (3) through an "enterprise," (4) which each defendant directed the operation and management of, (5) causing property loss for the Plaintiff.  *Lundy v. Catholic Health Sys. of Long Island Inc*., 711 F.3d 106, 119 (2d Cir. 2013); *Moss v. Morgan Stanley Inc*., 719 F.2d 5, 17 (2d Cir. 1983) (citing 18 U.S.C. § 1962(a)-(c)).  Plaintiff's RICO claim fails to satisfy **any** of these requirements.[10]  Instead, the

---

[10] UMGR notes that Rivers broadly characterizes her RICO claim as being pleaded under 18 U.S.C. § 1962(a), (c) and (d), but provides absolutely no basis for any claim under 1962(a) or 1962(d) and simply inserts them in the title for her First Cause of Action.  Nor is any claim under 1962(c) viable or plausible, for reasons stated herein.

Complaint only contains "bald contentions, unsupported characterizations, and legal conclusions and not well-pleaded allegations" which do "not suffice to defeat a motion to dismiss." *Highlands Ins. Co. v. PRG Brokerage, Inc*., No. 01-CV-2272, 2004 WL 35439, at *2 (S.D.N.Y. Jan. 6, 2004).

### i.  *Plaintiff Fails to Allege Two or More Predicate Acts of Racketeering Activity*

"A RICO claim must charge each named defendant with the commission of two or more predicate acts of racketeering activity." 18 U.S.C. § 1961(5); *Continental Kraft Corp. v. Euro-Asia Dev. Grp., Inc.*, No. 97-CV-0619, 1997 WL 642350, at *4 (E.D.N.Y. Sept. 8, 1997).

Because Rivers invokes alleged mail and wire fraud as predicate acts (Compl. ¶¶774-782), she must satisfy the heightened pleading requirement of Rule 9(b), which applies "with particular force in RICO actions." *E.g.*, *Nasik Breeding & Research Farm Ltd. v. Merck & Co.*, 165 F. Supp. 2d 514, 537 (S.D.N.Y. 2001). As here, "where multiple defendants are accused of mail or wire fraud, plaintiffs must plead fraud with particularity as to each defendant." *Id.*; *accord Morgens Waterfall Holdings, L.L.C. v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 198 F.R.D. 608, 609–10 (S.D.N.Y. 2001). Therefore, Plaintiff must specifically allege the circumstances of the fraud. *See, e.g.*, *id.*; *Highlands*, 2004 WL 35439, at *2–4.

The Complaint does not identify two or more acts of mail and/or wire fraud by UMGR. The Complaint does not even identify any mail or wires sent by UMGR, nor identify their content, when they were sent or to whom they were sent, in violation of Rule 9(b). In the absence of any predicate acts, the Complaint also fails to plead that UMGR had the requisite scienter. *Gerstenfeld v. Nitsberg*, 190 F.R.D. 127 (S.D.N.Y. 1999) (dismissing RICO claims because complaint failed to allege facts giving rise to a strong inference of fraudulent intent).

### ii.  *Plaintiff Fails to Allege a Continuous Pattern of Racketeering Activity*

RICO defines a "pattern of racketeering" as at least two predicate acts occurring within ten years of each other. 18 U.S.C. § 1961(5). "Simply alleging two predicate acts without more is not

sufficient to establish a pattern, which requires that a plaintiff must show both that the acts are related and continuous." *FD Prop. Holding, Inc. v. US Traffic Corp.*, 206 F. Supp. 2d 362, 369 (E.D.N.Y. 2002) (citing *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989)).

Here, the non-existent predicate acts are not "related and continuous." Plaintiff pleads only the conclusory assertions that Combs had a "business relationship[] with . . . UMGR . . . [that] allowed for a distribution platform for all [Combs'] business endeavors" (Compl. ¶730) and that UMGR allegedly had a partnership with, and provided and authorized unidentified resources to, Combs and his entities to promote MTB2 (*id.* ¶763). These conclusory assertions are not facts and are false. They do not support a RICO claim.

### iii.   Plaintiff Fails to Allege an Enterprise

"The heart of any civil RICO claim is the enterprise. There can be no RICO violation without one." *Heinrich v. Dean*, 655 F. Supp. 3d 184, 189 (S.D.N.Y. 2023). Plaintiff must allege that the association-in-fact enterprise exists separate and apart from the alleged pattern, with its own "hierarchy, organization, and activities." *Heffernan v. HSBC Banks USA*, No. 99-CV-07981, 2001 WL 803719, at *5 (E.D.N.Y. Mar. 29, 2001).

The Complaint does not identify any alleged "RICO enterprise." Plaintiff merely strings together a list of Defendants and conclusorily alleges that they are an enterprise, as UMGR was part of "[t]he RICO orchestrators association" with myriad other Defendants. (Compl. ¶731). This group pleading, bereft of facts, is insufficient and requires dismissal. *Cedar Swamp Holdings, Inc. v. Zaman*, 487 F. Supp. 2d 444, 450 (S.D.N.Y. 2007) ("[M]erely stringing together a list of defendants and labeling them an enterprise is insufficient."); *accord Goldfine*, 118 F. Supp. 2d at 401 ("There is no allegation . . . of what activity, if any, the alleged enterprise even engage in *other than* the alleged predicate acts . . . Additionally, Plaintiffs fail to allege any chain of command of the enterprise, or how, if at all, the alleged 'members' functioned as an integrated group or directed

the affairs of the alleged enterprise apart from the predicate acts themselves."); *Nasik*, 165 F. Supp. 2d at 539 ("[The plaintiff] has simply 'strung together all of the defendants in this action and labeled the resulting group an association-in-fact enterprise.'").

The Complaint does not allege that or how UMGR fits within a hierarchy or command structure of the alleged enterprise.  Nor does it allege that any enterprise exists and was engaged in continuous conduct that is separate and apart from the specific alleged predicate acts.  Instead, Rivers nonsensically alleges that UMGR's alleged distribution of the Recordings somehow gives rise to a RICO claim.  It does not.  *See, e.g.*, *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 544, 555.

### iv.  *Plaintiff Fails to Allege "Operation And Management" of the Enterprise*

The Complaint fails to allege how UMGR had "'some part in directing' the 'operation or management' of the enterprise itself."  *See, e.g.*, *Goldfine*, 118 F. Supp. 2d at 402–03.  "'As interpreted by courts in this district and others, the 'operation and management' test . . . is a very difficult test to satisfy.' . . . In addition, the mere fact that a defendant may have *aided* in the alleged scheme to defraud, *even if that aid was intentional*, does not give rise to liability under § 1962(c)." *Id.*; *accord Redtail Leasing, Inc. v. Belleza*, No. 95-CV-5191, 1997 WL 603496, at *5 (S.D.N.Y. Sept. 30, 1997).

The Complaint lacks any factual allegations showing UMGR's involvement in a non-existent RICO enterprise, nor any allegation showing that UMGR operated or managed the enterprise.  The alleged misconduct is attributed to Combs, his associates, and those running MTB2, not UMGR, which had nothing to do with MTB2.

### v.  *Plaintiff Fails to Allege Loss Causation*

A RICO claim requires allegation and proof that the alleged RICO violation was (1) the but-for, or transactional, cause of the plaintiff's loss, and (2) the proximate cause of the loss.  *E.g.*,

*Petrosurance, Inc. v. National Ass'n of Ins. Comm'rs*, 888 F. Supp. 2d 491, 507 (S.D.N.Y. 2012) (dismissing RICO claims because plaintiff "falters under both types of causation"), *aff'd*, 514 F. App'x 51 (2d Cir. 2013); *accord FindTheBest.com, Inc. v. Lumen View Tech. LLC*, 20 F. Supp. 3d 451, 458 (S.D.N.Y. 2014); *4 K & D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 540 (S.D.N.Y. 2014). "[C]ivil RICO's direct relation requirement is rigorous and requires dismissal where substantial intervening factors attenuate the causal connection between defendant's conduct *Zuhovitzky v. UBS AG CHE 101.329.562*, 2023 WL 4584452, at *9 (S.D.N.Y. July 18, 2023) (citations omitted); *see also Lawson v. Rubin*, No. 17-CV-6404, 2018 WL 2012869, at *9-10 (E.D.N.Y. Apr. 29, 2018).

Rivers pleads no connection between any conduct of UMGR and any loss she incurred, failing to plausibly allege that she suffered any loss "by reason of" any of the alleged acts or omissions of UMGR. *Zuhovitzky*, 2023 WL 4584452, at *9. Had she so pled, the independent and intervening acts of other defendants (*e.g.*, Combs) sever the already non-existent causal link to UMGR. *Id.*, at *7 (finding that plaintiff's theory of harm rested on independent actions of third parties, which was "plainly insufficient to establish proximate causation"). *See also Lawson*, 2018 WL 2012869, at *9–10; *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 464 (2006) (finding no proximate cause because of "attenuated relationship" between the alleged RICO acts and plaintiff's purported injury); *Hemi Grp., LLC v. City of N.Y., N.Y.*, 559 U.S. 1, 9 (2010) (dismissing RICO claims where "causal theory [was] far [too] attenuated").

Plaintiff's RICO claim against UMGR should be dismissed.

### b. Plaintiff Fails to State a Claim for Forced Labor under TVPRA

18 U.S.C. § 1589(a) and (b) provide two separate claims, one for perpetrators of forced labor and the other for participants.

The Complaint pleads no facts suggesting UMGR was a perpetrator and because UMGR never "obtain[ed] the labor or services of" Rivers, it could not be. *Smith v. AECOM Tishman*, No. 21-CV-02915 (PGG) (SDA), 2022 WL 19410315, at \*5 (S.D.N.Y. June 1, 2022).

As for participant liability, Rivers fails to satisfy any requisite element of 18 U.S.C. § 1589(b).  Plaintiff must plead that UMGR: (1) participated in a labor trafficking venture; (2) knowingly benefited, financially or by receiving anything of value, from its participation in that venture; and (3) knew or was in reckless disregard of the fact that the venture has engaged in labor trafficking.  *Anora v. Oasia Pro. Mgmt. Grp., Ltd*., No. 19-CV-11732 (LJL), 2021 WL 11114539, at \*2 (S.D.N.Y. Aug. 31, 2021).

Rivers does not plead any plausible facts showing that a labor trafficking venture involved UMGR.  *Cho v. Chu*, No. 21-CV-02297 (PGG) (SDA), 2022 WL 2532446, at \*3 (S.D.N.Y. May 12, 2022), *report and recommendation adopted*, No. 21-CV-2297 (PGG) (SDA), 2022 WL 4463823 (S.D.N.Y. Sept. 26, 2022).  Rivers was a participant on a reality competition television show and was free to leave at any time.  *See Smith*, 2022 WL 19410315, at \*5 ("Plaintiff's claim under the TVPA is frivolous . . . [n]one of these [statutory] elements is present here.  Plaintiff was not forced by Defendants to work.").

Second, as to the alleged "benefit" or "value" supposedly obtained, the only allegation which mentions UMGR — that UMGR "knowingly benefited from the forced labor and the trafficking activities conducted by Defendant Diddy" (Compl. ¶799) — is purely conclusory.  *Cho,* 2022 WL 2532446, at \*2 (dismissing Section 1589(b) claim because "Plaintiff does not plead sufficient factual material to move her allegations about any benefit or value received by any of the Entity Defendants beyond speculation").

The Complaint also pleads no facts showing that UMGR had any specific knowledge of Combs' alleged interactions with Rivers, let alone any labor trafficking.

As such, Rivers' trafficking claim against UMGR should be dismissed.

### c. Plaintiff's Right of Publicity Claim is Deficient and Plaintiff's Unjust Enrichment Claim is Duplicative

Rivers' right of publicity claim under NYCRL §§ 50 and 51 and for unjust enrichment, in addition to being time-barred and improperly group pled, fails for four additional reasons.

First, the Complaint does not identify any use of Rivers' voice, likeness or image for advertising purposes between 2002 and 2004, as is required. *Bendit v. Canva, Inc.*, No. 23-CV-473, 2023 WL 5391413, at *8–9 (S.D.N.Y. Aug. 22, 2023). Rivers alleges only a conclusion, not any facts. (Compl. ¶844.) Bare, conclusory assertions warrant dismissal. *Tesfay v. Hanes Brands Inc.,* No. 19-CV-3889, 2019 WL 6879179, at *6 (S.D.N.Y. Dec. 17, 2019) (dismissing right of publicity claim where complaint "contains the conclusory allegation that [defendant] 'has been using Plaintiff's image, likeness, and picture for advertising or trade purposes.'").

Second, the Complaint does not allege any published advertisements in the State of New York, as is required to state a right of publicity claim under the NYCRL. *Id.*

Third, the Complaint alleges that Combs "required Plaintiff to perform at and attend numerous promotional events and interviews as part of MTB's group 'Da Band'" including "parties which were under contract between" Combs, other Defendants, "and/or UMG." (Compl. ¶843.) Rivers does not claim she did not agree to this (or it was not contractually required). Instead, she seems to complain she was not adequately paid. This is a time-barred contract claim, not a NYCRL claim. Rivers' admission that she was required "to sign a general release for her likeness to appear on television" (*id.* ¶543) confirms she has no NYCRL claim.

Fourth, as Rivers alleges that she "was a resident of the State of Michigan" at "[a]ll relevant times herein," including the time of any alleged violations (*id.* ¶22), she has no NYCRL claim. *Drob*, 2024 WL 897952, at *6 (citation omitted).

Rivers' unjust enrichment claim is duplicative of her NYCRL claim and should be dismissed. *Drob Collectibles, LLC v. Leaf Trading Cards, LLC*, No. 23-CV-63(GHW) (JW), 2024 WL 897952, at *6 (S.D.N.Y. Feb. 15, 2024) (citations omitted), *report and recommendation adopted*, No. 1:23-CV-00063-GHW-JW, 2024 WL 895315 (S.D.N.Y. Mar. 1, 2024).

### d. Plaintiff Fails to State a Claim for Copyright Infringement Against UMGR

Rivers' copyright infringement claim by UMGR fails as against UMGR because, in addition to being time-barred and improperly group-pled, Rivers neither alleges that she has any valid copyright registration for the songs on the Recordings nor demonstrates that she is the sole owner of the copyrights at issue such that UMGR's distribution of the Recordings was not licensed by an owner. Rivers' claim is not really an infringement claim but an inadequately pled claim to declare her ownership of an interest in the songs, which she admits conveying decades ago.

Section 411(a) of the Copyright Act makes clear that "no civil action for infringement of the copyright in any United States work shall be instituted until [preregistration or] registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a); *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 887 (2019). And the law is clear that a copyright co-owner cannot be liable for infringement and may use or license the work to third parties, who are thereby "immunize[d] . . . from a charge of copyright infringement." *Davis v. Blige*, 505 F.3d 90, 98, 100 (2d Cir. 2007).

Rivers does not allege that her interest in any songs is registered. On the contrary, she claims she "has no access to her copyright information nor does she have any other information related to her works because of the interference by Defendants Janice, JCP and JCPH" (not

UMGR) (Compl. ¶562) and that "she was fraudulently induced to sign over her copyright ownership" to those Defendants (again, not UMGR). (*Id.* ¶726.)[11] Rivers also does not claim that the other owners did not authorize UMGR to distribute the Recordings. In any event, UMGR has not distributed the Recordings since 2005. (Miller Decl. ¶¶2-3.)

### e. Plaintiff's Implied Covenant Claim Fails

Rivers' breach of implied covenant claim against UMGR fails because there is no contract between Rivers and UMGR. *See Liu Jo S.P.A. v. Jenner*, 630 F. Supp. 3d 501, 518 (S.D.N.Y. 2022). Rivers alleges that she entered into four contracts with the following Defendants: (1) BM (Compl. ¶¶543-47); (2) BM and MTV (*id.* ¶552); (3) Combs and BBE (*id.* ¶554); and (4) Janice, JCP, and JCPH (*id.* ¶¶558-61).[12] She does not identify any contract with UMGR and there is none. Without a contract, there can be no implied covenant breach.

### f. Plaintiff's Fraud Claim Fails for Lack of Particularity

Rivers' fraud claim should be dismissed as against UMGR because, in addition to its other flaws noted above, she "fails to allege [fraud as to UMGR] with the requisite particularity" to satisfy Rule 9(b). *See Tears v. Boston Sci. Corp.*, 344 F. Supp. 3d 500, 514–15 (S.D.N.Y. 2014). Rivers has not identified any misrepresentation or omission made by UMGR, nor pleaded scienter.

Instead, Rivers falls back on group pleadings, offering "Defendants represented to Plaintiff that certain facts relative to payments to Plaintiff were true in each of the contracts above listed" and that "Defendants made multiple promises in verbally [sic] to Plaintiff which were captured

---

[11] Rivers' claim is to recover her alleged ownership interest, which she admits conveying. UMGR is not even a proper party on this claim. And all other owners are indispensable parties to such a declaratory judgment claim. *See, e.g.*, *Shimkin v. Tompkins, McGuire, Wachenfeld & Barry*, No. 02 CIV.9731(DLC), 2003 WL 21964959, at *5 (S.D.N.Y. Aug. 19, 2003); FRCP 19(b).

[12] Plaintiff's objection that she never received any executed contract with "BBE, MTV, JCP or UMG" (Compl. ¶344) is nonsensical because she does not even plead the existence of any contract with UMGR.

and aired on the television show MTB2." (Compl. ¶881.)  But none of these allegations pertain to UMGR.  Because Rivers' Complaint lacks the "who, what, when, where, and how" required to plead fraud with particularity, this claim should be dismissed as against UMGR.  *See In re Initial Pub. Offering Secs. Litig.*, 241 F. Supp. 2d 281, 327 (S.D.N.Y. 2003).

### g.  Plaintiff's Negligence, Negligent Hiring, Training, Supervision, and Retention, and Negligent Infliction of Emotional Distress Claims Are Insufficiently Pled

Rivers' negligence-related claims should be dismissed as against UMGR because, in addition to being time-barred and improperly group-pled, Rivers fails to explain how UMGR specifically owed any duty to her or breached that duty, as is required to state a negligence or NIED claim.  *McCollum v. Baldwin*, 688 F. Supp. 3d 117, 131 (S.D.N.Y. 2023).

First, Rivers fails to allege any duty because there is no "special relationship" between UMGR and her, and New York law does not otherwise impose upon persons the duty to protect others from injuries caused by third parties, such as Combs here.  *Id.*  Further, as set forth *supra*, UMGR was never Rivers' or Combs' employer.  (Hanna Decl. ¶¶4-5.)

Second, Rivers fails to allege the requisite foreseeability to show there was a breach of any nonexistent duty of UMGR to her.  She pleads no facts to infer, let alone establish, that UMGR had any knowledge of or could have foreseen the alleged physical harm or severe emotional distress that Rivers claims she suffered.  Rivers therefore also fails to identify with specificity any negligent act, omission, or extreme and outrageous conduct by UMGR.  *Rosario v. 288 St. Nick LLC*, 10 Misc. 3d 146(A), at *1 (1st Dep't 2006) (per curiam); *Xenias v. Roosevelt Hosp.*, 180 A.D.3d 588, 589 (1st Dep't 2020) (affirming dismissal of NIED claim where plaintiff failed to show defendants breached a duty of care, caused plaintiff to fear for her safety, or engaged in extreme and outrageous conduct).  Plaintiff's NIED claim is also duplicative of her other tort

claims and should be dismissed for that reason too.  *Stanley v. City of New York*, 71 Misc. 3d 171, 181 (Sup. Ct. N.Y. Cnty. 2020).

Rivers' negligent hiring, training, supervision, and retention claim against UMGR requires "(1) the existence of an employee-employer relationship; [and] (2) 'that the employer knew or should have known of the employee's propensity for the conduct which caused the injury.'" *Sokola v. Weinstein*, 78 Misc. 3d 842, 847 (Sup. Ct. N.Y. Cnty. 2023), *appeal withdrawn*, 219 A.D.3d 1185, (1st Dep't 2023).  Rivers does not plead that Combs was employed by UMGR, nor can she, as he was not.  (Hanna Decl. ¶3.)

Further, even if Combs had been a UMGR employee, UMGR could not be held "liable under the doctrine of *respondeat superior* for the tortious actions of [Defendants]," such as Combs' alleged gender-motivated violence, as Rivers claims.  (*See* Compl. ¶911.)  *Doe v. Alsaud*, 12 F. Supp. 3d 674, 677 (S.D.N.Y. 2014) (dismissing *respondeat superior* claim against employer, collecting cases and noting that "[n]o decision in New York has been cited to date in which the doctrine of *respondeat superior* was held to apply to sexual assault").  Rivers' negligent hiring claim is so baseless that it underscores why her duplicative negligence claim should be dismissed. *See, e.g.*, *Davis v. YMCA of USA*, 228 N.Y.S.3d 161 (2025).

### h.  Plaintiff's GMVPA Claim Fails

Rivers' GMVPA claim should be dismissed with prejudice as against UMGR because, in addition to being time-barred and improperly group pled, the 2022 Amendment does not operate retroactively to make alleged "enablers" of gender-motivated violence liable for individuals' pre-2022 conduct and Rivers offers no basis to impute Combs' alleged personal misconduct to UMGR.

Rivers alleges — without elaboration — that UMGR somehow "enabled [Combs'] commission of the crimes of violence motivated by gender" (Compl. ¶925) and "facilitated the trafficking and assault of Plaintiff by actively maintaining and employing [Combs] in a position

of power and authority" (*id.* ¶932). However, consistent with several prior New York court decisions, the First Department, Appellate Division in June 2025 affirmed that the 2022 Amendment is not retroactively applicable to any party other than the alleged "perpetrator" of gender-motivated violence. *Stein v. Rockefeller University*, Case No. 2024-03637, ECF No. 25 (1st Dep't June 3, 2025). Alleged "enablers," such as UMGR, are not liable for conduct that occurred prior to the 2022 Amendment. *See Stein, supra*; *Doe v. Combs*, 23-CV-10628 (JGLC), 2024 WL 4987044, at *4 (S.D.N.Y. Dec. 5, 2024); *Bensky v. Indyke*, 24-cv-1204 (AS), 2024 WL 3676819, at *10 (S.D.N.Y. Aug. 5, 2024); *J.L. v. Rockefeller Univ.*, No. 950131/2020, 2023 WL 3757389, at *11 (Sup. Ct. N.Y. Cnty. May 25, 2023); *Louis v. Niederhoffer,* No. 23-CV-6470-LTS, 2023 WL 8777015, at *1 (S.D.N.Y. Dec. 19, 2023); *Bellino v. Tallarico*, No. 24-CV-00712, ECF No. 28, at 2 (S.D.N.Y. Apr. 26, 2024) (holding that amendment was futile because the GMVPA "does not even purport to be retroactive").

As *Stein* held, the GMVPA evinces no intent for retroactive application, let alone the requisite "clear" expression of such intent. *Landgraf v. USI Film Prods.*, 511 U.S. 244, 284 (1994). Federal and state court decisions confirm this conclusion. *See, e.g.*, *J.L.*, 2023 WL 3757389, at *6; *Niederhoffer*, 2023 WL 8777015, at *2; *Adams v. Jenkins,* No. 115745/03, 2005 WL 6584554 (Sup. Ct. N.Y. Cnty. Apr. 22, 2005) (same).

Accordingly, even if the Complaint pled any facts connecting UMGR to Combs' alleged touching of Plaintiff's breasts (Compl. ¶717) at some point "[d]uring filming of MTB2" between 2002 and 2004 (*id.* ¶703) — and it does not — the 2022 Amendment cannot be retroactively applied to UMGR.

### i. Plaintiff Fails to State a Claim for Intentional Infliction of Emotional Distress

Rivers' IIED claim should be dismissed as against UMGR because, in addition to being time-barred and improperly group-pled, Rivers offers only conclusory allegations and fails to

explain how UMGR engaged in extreme and outrageous conduct with the intent to cause Rivers severe emotional distress. *Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 729 (S.D.N.Y. 2014).

## IV.    PLAINTIFF SHOULD NOT BE GIVEN LEAVE TO REPLEAD

Rivers should not be granted leave to amend because it would be futile. *Willard v. UP Fintech Holding Ltd.*, 527 F. Supp. 3d 609, 625 (S.D.N.Y. 2021) (citations omitted); *Manley v. Mazzuca*, No. 01-CV-5178 (RJS), 2007 WL 4233013, at *3 (S.D.N.Y. Nov. 30, 2007).  For reasons stated herein, Rivers cannot plead any further facts to remedy the legal deficiencies with her Complaint.  Each claim against UMGR is time-barred and fails as a matter of law.

## <u>CONCLUSION</u>

For the foregoing reasons, UMGR respectfully requests that Rivers' claims against UMGR be dismissed with prejudice, and that the Court award UMGR such other further relief as deemed just and proper.

Dated:  New York, New York
            June 23, 2025

PRYOR CASHMAN LLP

By: _____
        Donald S. Zakarin
        William L. Charron
        Nicholas G. Saady
        Nathaniel H. Kazlow
7 Times Square
New York, New York 10036
(212) 421-4100
dzakarin@pryorcashman.com

*Attorneys for UMG Recordings, Inc.*

**CERTIFICATION OF COMPLIANCE**

I hereby certify that the word count of this memorandum of law complies with the word count limits of Local Rule 7.1(c) of the Joint Rules of the United States District Courts for the Southern and Eastern Districts of New York and Judge Rakoff's Individual Rules. According to the word-processing system used to prepare this memorandum of law and excluding the parts of the document exempted by Rule 7.1 and Judge Rakoff's Individual Rules, this document contains 7,946 words.

Dated:  June 23, 2025

By: _____

Nicholas G. Saady

*Attorneys for UMG Recordings, Inc.*