**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SARA RIVERS (formerly known as Sara Stokes),

                        Plaintiff,

      v.

SEAN COMBS (a/k/a "P. DIDDY, DIDDY, PUFF,
PUFF DADDY, PUFFY, BROTHER LOVE"),
BAD BOY ENTERTAINMENT HOLDINGS,
INC., HARVE PIERRE, TRACY WAPLES,
ALISON STANLEY, CHRIS SAINSBURY,
DEVYNE STEPHENS, MORMA AUGENBLICK,
DEREK WATKINS (a/k/a FONZWORTH
BENTLEY), TONY DOFAT, MICKEY CARTER,
DERIC ANGELETTIE (a/k/a/ "D.Dot" and
"MADD RAPPER"), JASON WILEY, BAD BOY
ENTERTAINMENT LLC, PHIL ROBINSON,
SHAWN PEREZ, DADDY'S HOUSE
RECORDING STUDIO, BAD BOY
PRODUCTIONS INC., COMBS ENTERPRISES,
LLC, UNIVERSAL MUSIC GROUP,
UNIVERSAL MUSIC & VIDEO DISTRIBUTION
CORP., JANICE COMBS, JANICE COMBS
PUBLISHING INC., JANICE COMBS
PUBLISHING HOLDINGS INC., SEAN JOHN
CLOTHING LLC., PARAMOUNT GLOBAL,
VIACOM, MTV PRODUCTIONS, JACKIE
FRENCH, LOU PEARLMAN (estate of), BUNIM-
MURRAY PRODICTIONS, TOWNSQUARE
MEDIA GROUP, JOHN AND JANE DOES 1-50,
and DOE ORGANIZATIONS 1-10,

                        Defendants.

Case No. 25-CV-01726 (JSR)

**Oral Argument Requested**

**MEMORANDUM OF LAW IN SUPPORT OF**
**COMBS DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .......................................................................................... iii

PRELIMINARY STATEMENT ...................................................................................... 1

FACTUAL BACKGROUND............................................................................................ 2

LEGAL STANDARD........................................................................................................ 3

ARGUMENT ...................................................................................................................... 4

I.      NEGLIGENT INTERFERENCE IS NOT A COGNIZABLE CLAIM ............................ 4

II.     ALL CLAIMS ARE TIME-BARRED ......................................................................... 4

        A.      The Applicable Statutes of Limitations Range Is Between 1 and 10 years ........... 4

        B.      All Statutes of Limitation Have Long Since Run as the Alleged Conduct Occurred
                Over Twenty Years Ago ............................................................................... 6

        C.      No Tolling Doctrine Applies to Save the Time-Barred Claims............................. 7

        D.      The GMVL Revival Provision Does Not Revive the
                GMVL Claim Because it Is Preempted ..................................................... 9

III.    SIXTEEN CLAIMS ARE BASED ON IMPROPER GROUP PLEADINGS ................. 10

IV.     PLAINTIFF FAILS TO STATE A RICO CLAIM (COA 1) .......................................... 11

        A.      The Complaint Fails to Plausibly Plead an "Enterprise" ..................................... 12

        B.      The Complaint Fails to Allege a Pattern of Racketeering ..................................... 13

        C.      Plaintiff Lacks RICO Standing ................................................................... 15

V.      PLAINTIFF FAILS TO STATE A TVPRA CLAIM........................................................ 15

VI.     PLAINTIFF FAILS TO STATE A GMVL CLAIM ........................................................ 17

VII.    PLAINTIFF FAILS TO STATE NYSHRL AND NYCHRL CLAIMS ......................... 18

VIII.   PLAINTIFF FAILS TO STATE A RIGHT OF PUBLICITY CLAIM............................ 19

IX.     PLAINTIFF FAILS TO STATE A COPYRIGHT INFRINGEMENT CLAIM .............. 20

X.      PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT .............. 21

XI.     PLAINTIFF FAILS TO STATE A CLAIM FOR FRAUD............................................. 22

XII.    PLAINTIFF FAILS TO STATE CLAIMS FOR TORTIOUS INTERFERENCE .......... 22

XIII.   PLAINTIFF FAILS TO STATE CLAIMS FOR INTENTIONAL TORTS ................... 24

XIV.   PLAINTIFF FAILS TO PLEAD CLAIMS SOUNDING IN NEGLIGENCE................. 25

CONCLUSION.................................................................................................................... 25

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ackerman v. Pink*,
No. 23-CV-6952, 2025 WL 716678 (S.D.N.Y. Mar. 6, 2025) ................................................. 6

*AJ Energy LLC v. Woori Bank*,
No. 18-CV-3735, 2019 WL 4688629 (S.D.N.Y. Sept. 26, 2019) ............................................. 3

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................................. 3

*Atuahene v. City of Hartford*,
10 F. App'x 33 (2d Cir. 2001) ............................................................................................. 10

*Babb v. Capitalsource, Inc.*,
588 F. App'x 66 (2d Cir. 2015) ..................................................................................... 13, 14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................................. 3

*Bellino v. Tallarico*,
No. 24-CV-712, 2024 WL 1344075 (S.D.N.Y. Feb. 21, 2024) .......................................... 9, 18

*Bendit v. Canva, Inc.*,
No. 23-CV-473, 2023 WL 5391413 (S.D.N.Y. Aug. 22, 2023) ............................................ 19

*Bermudez v. City of New York*,
783 F. Supp. 2d 560 (S.D.N.Y. 2011) .................................................................................. 5

*Bigsby v. Barclays Cap. Real Est., Inc.*,
170 F. Supp. 3d 568 (S.D.N.Y. 2016) ................................................................................ 15

*Bistline v. Parker*,
918 F.3d 849 (10th Cir. 2019) ........................................................................................... 17

*BWP Media USA Inc. v. Hollywood Fan Sites, LLC*,
69 F. Supp. 3d 342 (S.D.N.Y. 2014) .................................................................................. 12

*Calamari v. Panos*,
16 N.Y.S.3d 824 (2d Dep't 2015) ........................................................................................ 6

*Catskill Dev., L.L.C. v. Park Place Ent. Corp.*,
547 F.3d 115 (2d Cir. 2008) .............................................................................................. 23

*Cecora v. De La Hoya*,
965 N.Y.S.2d 464 (1st Dep't 2013) .................................................................................... 24

*Cedar Swamp Holdings, Inc. v. Zaman*,
    487 F. Supp. 2d 444 (S.D.N.Y. 2007) ................................................................. 12

*Corrigan v. Town of Brookhaven*,
    No. 22-CV-4688, 2023 WL 7003936 (E.D.N.Y. Oct. 24, 2023) ............................. 5

*Cruz v. FXDirectDealer, LLC*,
    720 F.3d 115 (2d Cir. 2013) ................................................................................. 12

*D. Penguin Bros. v. City Nat. Bank*,
    587 F. App'x 663 (2d Cir. 2014) .......................................................................... 13

*D. Penguin Bros. v. City Nat'l Bank*,
    No. 13-CV-0041, 2014 WL 982859 (S.D.N.Y. Mar. 11, 2014) ............................. 14

*DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.*,
    770 F. Supp. 2d 497 (E.D.N.Y. 2011) ............................................................ 14, 15

*DigitAlb, Sh.a v. Setplex, LLC*,
    284 F. Supp. 3d 547 (S.D.N.Y. 2018) ............................................................ 20, 21

*Doe v. Black*,
    No. 23-CV-6418, 2024 WL 4335453 (S.D.N.Y. Sept. 27, 2024) .......................... 10

*Doe v. Combs*,
    No. 23-CV-10628, 2024 WL 4987044 (S.D.N.Y. Dec. 5, 2024) ........................... 10

*Downtown Music Publ'g LLC v. Peloton Interactive, Inc.*,
    436 F. Supp. 3d 754 (S.D.N.Y. 2020) .................................................................. 23

*Drob Collectibles, LLC v. Leaf Trading Cards, LLC*,
    No. 23-CV-63, 2024 WL 897952 (S.D.N.Y. Feb. 15, 2024) ........................... 19, 20

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*,
    837 F. Supp. 2d 162 (S.D.N.Y. 2011) .................................................................. 22

*Fischer v. Forrest*,
    No. 14-CV-1304, 2017 WL 1063464 (S.D.N.Y. Mar. 21, 2017) ............................. 5

*Geiss v. Weinstein Co. Holdings LLC*,
    383 F. Supp. 3d 156 (S.D.N.Y. 2019) ...................................................................

*Ghartey v. St. John's Queens Hosp.*,
    869 F.2d 160 (2d Cir. 1989) ................................................................................... 3

*Gilmore v Combs*,
    No. 24-CV-8440, 2025 WL 1425326 (S.D.N.Y. May 16, 2025) ............................. 8

*Hadami, S.A. v. Xerox Corp.*,
    272 F. Supp. 3d 587 (S.D.N.Y. 2017)................................................................. 21

*Holtz v. Wildenstein & Co.*,
    261 A.D.2d 336 (1st Dep't 1999) ...................................................................... 24

*Hughes v. Twenty-First Century Fox, Inc.*,
    304 F. Supp. 3d 429 (S.D.N.Y. 2018)................................................................. 17

*In re Lyman Good Dietary Supp. Lit.*,
    No. 17-cv-8047, 2018 WL 3733949 (S.D.N.Y. Aug. 6, 2018)............................ 24

*JPMorgan Chase Bank, N.A. v. 29-33 Ninth Ave., LLC*,
    710 F. Supp. 3d 259 (S.D.N.Y. 2024)................................................................. 23

*Katz v. Travelers*,
    241 F. Supp. 3d 397 (E.D.N.Y. 2017) ......................................................... 22, 23

*Koch v. Christie's Int'l PLC*,
    699 F.3d 141 (2d Cir. 2012)................................................................................. 4

*Koral v. Saunders*,
    36 F.4th 400  (2d Cir. 2022) ............................................................................... 8

*Kwan v. Schlein*,
    634 F.3d 224 (2d Cir. 2011)............................................................................... 21

*Lee v. City of New York*,
    709 N.Y.S.2d 102 (2nd Dep't 2000)................................................................... 24

*Leonard v. Reinhardt*,
    20 A.D.3d 510 (2d Dep't 2005) .......................................................................... 25

*Levin v. Sarah Lawrence Coll.*,
    747 F. Supp. 3d 645 (S.D.N.Y. 2024)............................................................ 4, 16

*Linens of Europe, Inc. v. Best Mfg., Inc.*,
    No. 03-CV-9612, 2004 WL 2071689 (S.D.N.Y. Sept. 16, 2004)........................ 14

*Lynn v. McCormick*,
    No. 17-CV-1183, 2017 WL 6507112 (S.D.N.Y. Dec. 18, 2017) ........................ 13

*McKenzie v. Artists Rts. Soc'y, Inc.*,
    757 F. Supp. 3d 427 (S.D.N.Y. 2024)................................................................... 4

*McSweeney v. Cohen*,
    No. 24-CV-01503, 2025 WL 966022 (S.D.N.Y. Mar. 31, 2025).......................... 15

*Meyer v. Seidel,*
    89 F.4th 117 (2d Cir. 2023) ................................................................ 6

*Mills v. Polar Molecular Corp.,*
    12 F.3d 1170 (2d Cir. 1993)............................................................... 14

*Moore v. PaineWebber, Inc.,*
    189 F.3d 165 (2d Cir.1999)............................................................... 14

*Muchira v. Al-Rawaf,*
    850 F.3d 605 (4th Cir. 2017) ............................................................ 16

*Murphy v. Morlitz,*
    No. 15-CV-7256, 2017 WL 4221472 (S.D.N.Y. Sept. 21, 2017)........................... 6

*Musiello v. CBS Corp.,*
    518 F. Supp. 3d 782 (S.D.N.Y. 2021)................................................... 18

*New London Assocs., LLC v. Kinetic Soc. LLC,*
    384 F.Supp.3d 392 (S.D.N.Y. 2019).................................................... 21

*O'Rear v. Diaz,*
    No. 24-CV-1669, 2025 WL 283169 (S.D.N.Y. Jan. 23, 2025) ........................... 25

*Ornstein v. New York City Health & Hosps. Corp.,*
    10 N.Y.3d 1 (2008) ........................................................................ 25

*Parker v. Alexander,*
    No. 24-cv-4813, 2025 WL 268436 (S.D.N.Y. Jan. 22, 2025) ....................... 9, 10

*Pasternack v. Lab. Corp. of Am. Holdings,*
    27 N.Y.3d 817 (2016) .................................................................... 25

*PK Music Performance, Inc. v. Timberlake,*
    No. 16-CV-1215, 2018 WL 4759737 (S.D.N.Y. Sept. 30, 2018)........................... 5

*Police Benevolent Ass'n of City of New York, Inc. v. City of New York,*
    40 N.Y.3d 417 (2023) ...................................................................... 9

*Pu v. Charles H. Greenthal Mgmt. Corp.,*
    No. 08-CV-10084, 2010 WL 774335 (S.D.N.Y. Mar. 9, 2010) ........................... 11

*Reich v. Lopez,*
    858 F.3d 55 (2d Cir. 2017)............................................................... 13

*Rossbach v. Montefiore Med. Ctr.,*
    No. 19-CV-5758, 2021 WL 930710 (S.D.N.Y. Mar. 11, 2021) ........................... 18

*Satina v. City of New York*,
    No. 24-CV-1842, 2025 WL 902893 (S.D.N.Y. Mar. 25, 2025) ............................................. 5

*Shainwald v. Pros. for Non-Profits, Inc.*,
    62 Misc. 3d 1221(A) (Sup. Ct., N.Y. Cnty. 2019) ................................................. 25

*Shawe v. Kramer Levin Naftalis & Frankel LLP*,
    167 A.D.3d 481 (1st Dep't 2018) ................................................. 23

*Spirt v. Spirt*,
    No. 160271/2023, 2024 WL 2927656 (Sup. Ct. N.Y. Cnty. 2024) ............................................. 5

*Tesfay v. Hanes Brands Inc.*,
    No. 19-CV-3889, 2019 WL 6879179 (S.D.N.Y. Dec. 17, 2019) ........................................ 19

*Titus v. UMG Recordings, Inc.*,
    No. 23-CV-15, 2023 WL 8039622 (S.D.N.Y. Nov. 20, 2023) ............................................. 6

*United States v. Indelicato*,
    865 F.2d 1370 (2d Cir. 1989) ................................................. 13

*United States v. Shellef*,
    507 F.3d 82 (2d Cir. 2007) ................................................. 13

*Watson v. NY Doe 1*,
    439 F. Supp. 3d 152 (S.D.N.Y. 2020) ................................................. 4

*Yong Wen Mo v. Gee Ming Chan*,
    17 A.D.3d 356 (2d Dep't 2005) ................................................. 6

*Zoe G. v. Frederick F.G.*,
    208 A.D.2d 675 (2d Dep't 1994) ................................................. 8

**Statutes**

17 U.S.C. § 411(a) ................................................. 20

18 U.S.C. § 1961 ................................................. 4

18 U.S.C. § 1589 ................................................. 16, 17

**Rules**

CPLR § 214-g ................................................. 9, 10

CPLR § 214-j ................................................. 9, 10

CPLR § 214(5) ................................................. 6

CPLR § 215(3)................................................................................................................... 5

**Other Authorities**

N.Y.C. Admin. Code § 10-1105(a).................................................................................... 4

Defendants Sean Combs, Bad Boy Entertainment Holdings, Inc., Bad Boy Entertainment LLC, Daddy's House Recording, Inc. (incorrectly sued as Daddy's House Recording Studios), Bad Boy Productions Holdings, Inc. (incorrectly sued as Bad Boy Productions Inc.), CE OpCo, LLC (f/k/a as Combs Enterprises, LLC), Janice Combs, Janice Combs Publishing LLC (incorrectly sued as Janice Combs Publishing Inc.), Janice Combs Publishing Holdings Inc., and Sean John Clothing LLC, Defendants (together, the "Combs Defendants") respectfully submit this Memorandum of Law in Support of their motion to dismiss the Complaint, ECF No. 1 ("Compl." or "Complaint"), with prejudice.

## PRELIMINARY STATEMENT

Seeking to ride a wave of negative publicity against Mr. Combs, Plaintiff Sarah Rivers, a former contestant on three seasons of a reality TV show about the making of a hip hop band in the early 2000's, alleges that Mr. Combs and over thirty other individuals and entities were part of a massive RICO conspiracy to prevent her from realizing fame and fortune. Copying much-publicized pleadings by others, Plaintiff begins her Complaint with a red-font, bolded "Trigger Warning," proclaiming that the document contains "highly graphic" information. But the only "graphic" allegations in this lawsuit are (unproven) allegations about conduct towards *others* that Plaintiff has gratuitously included in her Complaint for shock value. As for the facts alleged about Plaintiff herself, the Complaint tells a non-actionable story about the challenging environment in which Rivers struggled to achieve success in the music industry some 20 years ago.

In her 1000-plus paragraph, 22-count pleading (which includes over 400 legally irrelevant paragraphs synopsizing each episode of the realty TV show on which Rivers appeared), Plaintiff condemns the conditions on the show, complaining that dozens of Defendants purportedly involved in its production "manufactured drama" by having contestants do such things as: making contestants share "small hotel rooms," walk across the Brooklyn bridge "in the cold New York

1

climate" to purchase cheesecake at an iconic diner, perform classic rap songs (which caused Plaintiff "emotional distress" because she "lack[ed] knowledge of the songs"), and compete with their co-stars with respect to their physical appearances and musical talent. She claims her repeat appearances on the reality TV show constituted "forced labor" even as she concedes she vied for a spot on the show "to have a chance at music stardom" and that she was, in fact, paid for her performances. She accuses Defendants of Copyright Infringement even as she acknowledges she does not own the copyright in any of the works. Plaintiff's factual allegations do not state a single cognizable cause of action. All of the alleged conduct occurred between 2002 and "several years" after 2004–roughly twenty years before this lawsuit was filed. The relevant statutes of limitation range from 1 to 10 years. All have run. And Plaintiff does not plead any sufficient grounds to toll or revive them. However challenging Ms. Rivers' career path may have been, there is no basis to hold every music industry player whose path she crossed liable for it. The Complaint fails to allege any timely or cognizable injuries and should be dismissed with prejudice.

## **FACTUAL BACKGROUND**

Plaintiff's claims originate out of her decision in 2002 to participate in a reality TV show on MTV called *Making the Band* ("MTB"), which documented the formation and promotion of a hip hop band under the direction of music mogul, Sean Combs. After participating in MTB for one season in 2002, Plaintiff opted to return for second and third seasons in 2003 and 2004. *See id.* ¶¶ 84–519, 740. Plaintiff complains that during the filming of this show in 2002 through 2004, she and her co-stars were subject to long hours, unpleasant working conditions, observations on their weight and fitness, and "manufactured drama." *See, e.g.*, *id.* ¶¶ 220, 614–15, 644, 653, 665. Plaintiff's 1003-paragraph pleading includes a litany of complaints about her experience on MTB, including being "forced to learn" the lyrics of two popular rap songs, being "forced . . . to read Russell Simmons [sic] book at night, in the cold outside for several hours," being "forced . . . to . . .

volunteer at a soup kitchen," being forced to walk from Manhattan to Brooklyn "in the cold New York climate" to buy cheesecake, and being encouraged to exercise. *See id.* ¶¶ 219–24, 646–48. Aside from these and similar alleged affronts, Plaintiff alleges that on one undated occasion during the filming of MTB, Mr. Combs brought his face close to Plaintiff's, spoke to her in a sensual voice, "ran his left hand across her breasts," and then promptly withdrew his advance when he "realiz[ed]" Plaintiff was "uncomfortable and not consenting to his actions." *Id.* ¶¶ 716–19. Finally, Plaintiff complains that she was not adequately compensated for her performance of, and contributions to, various musical works which were performed and/or released between 2003 and 2004. *Id.* ¶ 356, 529, 547, 565, 625. Based on the foregoing, Plaintiff asserts twenty-two Causes of Action ("COAs" and each a "COA"), including RICO, human trafficking, violations of a New York City local law prohibiting gender-motivated violence, copyright infringement, multiple torts, and various state employment claims. *See generally* Compl.

## LEGAL STANDARD

A complaint will be dismissed pursuant to FRCP Rule 12(b)(6) where it fails "to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Claims based on mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp.*, 550 U.S. at 555. Although a plaintiff's allegations are presumed to be true, a court "is not required to credit conclusory allegations unsupported by facts, . . . or to suspend common sense in conducting its analysis." *AJ Energy LLC v. Woori Bank*, No. 18-CV-3735, 2019 WL 4688629, at *3 (S.D.N.Y. Sept. 26, 2019), *aff'd,* 829 F. App'x 533 (2d Cir. 2020). A defendant may move to dismiss on the grounds that that "dates in a complaint show that an action is barred by a statute of limitations," and such motion "is properly treated as a Rule 12(b)(6) motion to dismiss." *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989).

3

## ARGUMENT

### I.  NEGLIGENT INTERFERENCE IS NOT A COGNIZABLE CLAIM

Plaintiff's Twentieth COA for negligent interference with prospective economic advantage must be dismissed because it is not a valid cause of action. *See Watson v. NY Doe 1*, 439 F. Supp. 3d 152, 167 (S.D.N.Y. 2020) ("[I]n New York there is no cause of action for negligent interference with prospective economic advantage.").

### II.  ALL CLAIMS ARE TIME-BARRED

#### A.  The Applicable Statutes of Limitations Range Is Between 1 and 10 years

**RICO (COA 1):** The statute of limitations for a civil claim under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"), is four years. *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 148 (2d Cir. 2012). The four-year statute of limitations begins to run when plaintiff sustained her alleged injury or, if such injury was not known at that time, then from such date on which there were "sufficient 'storm warnings' to trigger the duty to inquire." *McKenzie v. Artists Rts. Soc'y, Inc.*, 757 F. Supp. 3d 427, 442–43 (S.D.N.Y. 2024) (quotation marks and citation omitted). Plaintiff does not allege her injury was unknown when incurred.

**Forced Labor (Trafficking Victims Protection Reauthorization Act, "TVPRA") Claim (COA 3):** The "statute of limitations for civil claims under the TVPRA is ten years from the date the cause of action arises." *Levin v. Sarah Lawrence Coll.*, 747 F. Supp. 3d 645, 669–70 (S.D.N.Y. 2024) (cleaned up) (citing 18 U.S.C. § 1595(c)).

**GMVL Claim (COA 15):** The statute of limitations under the Gender-Motivated Violence Protection Law ("GMVL") is seven years after the alleged incident occurred. *See* N.Y.C. Admin. Code § 10-1105(a).

**Employment Claims (COAs 6, 7, 8):** Claims brought under New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law 290 and 296, and New York City Human Rights Law

("NYCHRL"), N.Y. Exec. Law 8-101, "are subject to a three-year statute of limitations." *Satina v. City of New York*, No. 24-CV-1842, 2025 WL 902893, at *3 (S.D.N.Y. Mar. 25, 2025); *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 573–74 (S.D.N.Y. 2011) (collecting cases).

**Right of Publicity / Unjust Enrichment (COA 9):** Plaintiff's Ninth COA for violation of Plaintiff's right of publicity under Sections 50 and 51 of the New York Civil Rights Law and for unjust enrichment is subject to a one-year statute of limitations. *Fischer v. Forrest*, No. 14-CV-1304, 2017 WL 1063464, at *5 (S.D.N.Y. Mar. 21, 2017); *Spirt v. Spirt*, No. 160271/2023, 2024 WL 2927656, at *2 (Sup. Ct. N.Y. Cnty. 2024). "New York law applies the 'single publication rule' to right of publicity claims, under which a cause of action 'accrues on the date the offending material is first published.'" *Fischer*, 2017 WL 1063464, at *5 (citation omitted).

**Copyright Infringement (COA 10):** Plaintiff's Tenth COA for Copyright Infringement is subject to a three-year statute of limitations, accruing from the date "a plaintiff discovers, or with due diligence should have discovered, the relevant infringement." *PK Music Performance, Inc. v. Timberlake*, No. 16-CV-1215, 2018 WL 4759737, at *7 (S.D.N.Y. Sept. 30, 2018).

**Assault & Battery, Battery/Sexual Battery, False Imprisonment, and IIED (COAs 2, 4, 5, and 17):** Intentional torts—including assault, battery, false imprisonment and intentional infliction of emotional distress ("IIED")—are subject to a one-year statute of limitations under New York State law. *See* CPLR § 215(3) (one year limitations period "for assault, battery [and] false imprisonment"); *Corrigan v. Town of Brookhaven*, No. 22-CV-4688, 2023 WL 7003936, at *2 (E.D.N.Y. Oct. 24, 2023) (§ 215(3)'s one-year limitations period applies also to "claims of intentional infliction of emotional distress").

**Breach of Implied Covenant of Good Faith and Fair Dealing (COA 11):** Plaintiff's Eleventh COA for breach of the implied covenant of good faith and fair dealing is subject to a six-

year statute of limitations from the date of the alleged breach. *Titus v. UMG Recordings, Inc.*, No. 23-CV-15, 2023 WL 8039622, at *4 (S.D.N.Y. Nov. 20, 2023) (citing CPLR § 213(2)).

**Fraud/Intentional Misrepresentation/False Promise (COA 12):** "Under New York law, for a claim based upon fraud, the time within which the action must be commenced shall be the greater of six years from the date the cause of action accrued or two years from the time the plaintiff discovered the fraud, or could with reasonable diligence have discovered it." *Meyer v. Seidel*, 89 F.4th 117, 131 (2d Cir. 2023) (quotations marks omitted) (citing CPLR § 213(8)). Plaintiff does not allege that she "discovered" a purported fraud at a later date.

**Negligence Claims (COAs 13, 14, 16, and 20):** The statute of limitations for claims sounding in negligence is three years. *See* CPLR § 214(5); *Calamari v. Panos*, 16 N.Y.S.3d 824, 827 (2d Dep't 2015) (three year statute of limitations for negligent hiring/supervision); *Yong Wen Mo v. Gee Ming Chan*, 17 A.D.3d 356, 358 (2d Dep't 2005) (three-year statute of limitations for negligent infliction of emotional harm).

**Tortious Interference Claims (COAs 18, 19, 21, and 22):** The statute of limitations for tortious interference claims is three years. *Ackerman v. Pink*, No. 23-CV-6952, 2025 WL 716678, at *14 (S.D.N.Y. Mar. 6, 2025) (citation omitted); *Murphy v. Morlitz*, No. 15-CV-7256, 2017 WL 4221472, at *8 (S.D.N.Y. Sept. 21, 2017) (citation omitted), *aff'd*, 751 F. App'x 28 (2d Cir. 2018).

## B.    All Statutes of Limitation Have Long Since Run as The Alleged Conduct Occurred Over Twenty Years Ago

Each and every applicable statute of limitation ran years ago. All of the conduct giving rise to Plaintiff's claims is alleged to have occurred between 2002 and 2004, during the time Plaintiff appeared on MTB, with the immaterial exception of Plaintiff's COAs for tortious interference against Mr. Combs which are premised on conduct alleged to have occurred "several years after" 2004. *See* Compl. ¶¶ 331 ("Too Hot for TV" album released on September 30, 2003), 349 (Bad

Boys II soundtrack released on July 15, 2003), 534–68 (alleged forced contract signing took place in or about June 2002), 740 (Plaintiff participated in the show from 2002–2004); ¶¶ 498–519, 676–77, 692 (alleging interference "several years" after the 2004 breakup of "Da Band"). Thus, Plaintiff's claims for assault & battery, battery/sexual battery, false imprisonment, right of publicity/unjust enrichment, and IIED (COAs 2, 4, 5, 9, and 17) expired in 2005. Plaintiff's employment, copyright infringement, tortious interference and negligence claims (COAs 6–8, 10, 13–14, 16, 18–22) expired in 2007. Plaintiff's claims for breach of the implied covenant of good faith and fair dealing and fraud/intentional misrepresentation (COAs 11, and 12) expired in 2010. Plaintiff's TVPRA claim (COA 3) expired no later than 2014. Plaintiff's RICO claim (COA 1) expired in 2008. And Plaintiff's GMVL claim (COA 15) expired in 2011.

With respect to the tortious interference claims (COAs 18, 19, 21, and 22), Plaintiff alleges that Mr. Combs "interfered with [her] music career for several years after he dismantled Plaintiff's group," which occurred in or around 2004. *Id.* ¶¶ 498–519, 676–77, 692. Even favorably construing "several years" to mean between three and five years, that would mean the latest alleged conduct occurred is 2009, rendering the tortious interference claims time-barred as of 2012, more than twelve years before this lawsuit was filed.

### C.    No Tolling Doctrine Applies to Save the Time-Barred Claims

Plaintiff concedes the statutes of limitations have run on her Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Eleventh, and Twelfth COAs, but argues that "Defendants should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon by Plaintiff." Compl. ¶¶ 804, 816, 823, 828, 833, 841, 848, 878, 892. Plaintiff's claims of duress are premised on the conclusory allegation, which she repeats nearly verbatim nine times, that "Defendants' continuous threats, coercion and interference with her career prevented Plaintiff from asserting her rights within the statutorily proscribed period," and thus all thirty-two

Defendants "should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff." *Id.* ¶¶ 804, 816, 823, 828, 833, 841, 848, 878, 892. While it is unclear whether Plaintiff is invoking the tolling doctrine of equitable estoppel or duress, her attempt fails under either theory.

   To trigger the doctrine of equitable estoppel a plaintiff must show that that "the defendant made an actual misrepresentation . . . , that the plaintiff relied on the misrepresentation and that the reliance caused plaintiff to delay bringing timely action." *Koral v. Saunders*, 36 F.4th 400, 410 (2d Cir. 2022). The Complaint contains no allegations that any Combs Defendant made misrepresentations of fact that Plaintiff relied upon which caused her to delay bringing suit. Thus, equitable tolling is not applicable. *See Gilmore v Combs*, No. 24-CV-8440, 2025 WL 1425326, at *3–4 (S.D.N.Y. May 16, 2025) (no equitable estoppel where Plaintiff did not identify communications with defendants that caused a delay in filing).

   Plaintiff's generalized allegations of duress also do not save her time-barred claims. Although "duress" is a potential basis for tolling, Plaintiff's allegations do not come close to pleading it. Duress cannot toll a limitations period absent "a course of conduct involving threats or force that continued without interruption" against the plaintiff from the time of the alleged incident until the time the action was brought. *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 175 (S.D.N.Y. 2019); *see Zoe G. v. Frederick F.G.*, 208 A.D.2d 675, 675 (2d Dep't 1994). Plaintiff's vague and conclusory allegations of threat of force fail to toll the limitations periods. *See Gilmore*, 2025 WL 1425326, at *4 (rejecting duress tolling argument where plaintiff did not identify "specific instances that would constitute ongoing duress"). Further, general psychological stress, like Plaintiff's alleged fear of speaking out, Compl. ¶ 636, does not provide a basis for tolling. *See Gilmore*, 2025 WL 1425326, at *4 ("[T]olling is not available for 'general claims of

8

psychological stress, even when allegedly caused by defendant.'") (quoting *Adams v. Jenkins*, No.

115745/03, 2005 WL 6584554 (Sup. Ct. N.Y. Cnty. Apr. 22, 2005)).

### D.    The GMVL Revival Provision Does Not Revive the GMVL Claim Because it Is Preempted

Plaintiff's GMVL claim is not saved by a 2022 amendment to the GMVL which purports

to revive expired GMVL claims for a two-year period running from March 1, 2023 through March

1, 2025 ("GMVL Revival Provision"), Compl. ¶ 17, because—as Judge Kaplan has held twice—

that New York City local law is preempted by New York State law which provides a conflicting,

"comprehensive and detailed regulatory scheme" under the New York Child Victims Act, C.P.L.R.

§ 214-g ("CVA"), and the Adult Survivors Act, C.P.L.R. § 214-j ("ASA") for the revival of

previously time-barred sexual assault claims. *See Parker v. Alexander*, No. 24-CV-4813, 2025 WL

268436, at *2–4 (S.D.N.Y. Jan. 22, 2025) (holding GMVL's revival window is preempted by the

CVA and ASA); *Bellino v. Tallarico*, No. 24-CV-0712, 2024 WL 1344075, at *1 (S.D.N.Y. Feb.

21, 2024) (same). "Local laws may be . . . preempted by state law either because the legislature

has occupied the relevant field of regulation," *i.e.*, field preemption, "or because the local law

conflicts with state law," *i.e.*, conflict preemption. *Police Benevolent Ass'n of City of New York,

Inc. v. City of New York,* 40 N.Y.3d 417, 423 (2023). As Judge Kaplan explained in *Parker*, both

doctrines apply here.

*(1) Field Preemption:* Together, the CVA and ASA cover revival of "every civil claim or

cause of action" for misconduct tied to a sexual offense under the New York Penal Code §§ 130

*et seq.* CPLR § 214-g; *see* CPLR § 214-j. "The CVA and ASA therefore occupy the field of revival

of civil claims arising from violations of state sexual offense penal statutes, preempting local laws

like the [GMVL] Revival Amendment to the extent that they purport to revive the same category

of claims." *Parker*, 2025 WL 268436, at *2.

*(2) Conflict Preemption:* The CVA and ASA prohibited previously time-barred GMVL claims to be brought except between August 14, 2019 and August 14, 2021 for claims as to minors, CPLR § 214-g, and between November 24, 2022 and November 24, 2023 for claims as to adults, CPLR § 214-j, whereas the GMVL Revival Provision explicitly allowed the revival of previously time-barred GMVL claims between March 1, 2023 and March 1, 2025, N.Y.C. Admin. § 10-1105(a). Thus, the GMVL's Revival Provision stands in direct conflict with the ASA's and CVA's mandates that their revival periods control "[n]otwithstanding any provision of law which imposes a period of limitation to the contrary." *Parker*, 2025 WL 268436, at *2 (quoting CPLR § 214-j).[1]

## III.    SIXTEEN CLAIMS ARE BASED ON IMPROPER GROUP PLEADINGS

Seven of the COAs (COAs 1, 11, 12, 14, 16, and 17) are asserted against all thirty-two Defendants while nine other COAs (COAs 3, 4, 5, 6, 7, 8, 9, 10, and 13) are brought against three to twelve Defendants. In each of these COAs, the Complaint does not even attempt to parse out what each Defendant supposedly did with respect to the alleged conduct spanning multiple years. Such group pleading is manifestly improper. *See, e.g.*, *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [Plaintiff's] complaint failed to satisfy [Rule 8's pleading] standard."). In COAs 3, 4, 5, 6, 7, 8, 9, 10, and 13, the problem with such pleadings is compounded by the fact Plaintiff asserts those COAs against "BBE" and "Bad Boy Records," but

---

[1]    The Combs Defendants acknowledge Judge Jessica G. L. Clarke rejected the argument that the CVA preempts the GMVL. *See Doe v. Black*, No. 23-CV-6418, 2024 WL 4335453, at *3–7 (S.D.N.Y. Sept. 27, 2024); *Doe v. Combs*, No. 23-CV-10628, 2024 WL 4987044, at *2 (S.D.N.Y. Dec. 5, 2024). Judge Clarke's decisions did not address how the GMVL Revival Provision could be given effect when it is inconsistent with the CVA and ASA. Moreover, Judge Clarke minimized the scope of the CVA by comparing it to other regulatory schemes she said were more comprehensive, but those comparator schemes are simply "more *complex[]*," not more comprehensive. *Parker*, 2025 WL 268436, at *4.

fails to adequately define each term. In one place, Plaintiff defines "BBE" as Bad Boys Entertainment Holdings, Inc., but elsewhere she defines it as Bad Boy Entertainment LLC. Compl. at 2. Likewise, the Complaint defines Bay Boy Productions Inc. as "Bad Boy Records" on page two but then in paragraph 22 states that "Bad Boy Records" means a collection of seven different Defendants. *Id.* ¶ 22.[2] Accordingly, in those nine COAs, it is entirely unclear against which of the two "BBE" entities and which of the seven "Bad Boy Records" entities Plaintiff is alleging misconduct. Moreover, Bad Boy Entertainment LLC and Janice Combs Publishing LLC did not even exist until March 13, 2014, at least ten years following the conduct underlying Plaintiff's claims. *See* Declaration of Erica A. Wolff dated June 23, 2025, Exs. A–B. There can be no serious dispute, therefore, that these entities must be dismissed.

## IV.     PLAINTIFF FAILS TO STATE A RICO CLAIM (COA 1)

In her First COA, Plaintiff asserts a RICO claim against all ten of the Combs Defendants together with twenty-two other Defendants. The Complaint does not come close to pleading the requisite elements of RICO. To state a cause of action under RICO, a plaintiff must plead: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a pattern (4) of racketeering activity (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an enterprise (7) the activities of which affect interstate or foreign commerce." *Pu v. Charles H. Greenthal Mgmt. Corp.*, No. 08-CV-10084, 2010 WL 774335, at *3 (S.D.N.Y. Mar. 9, 2010) (citation omitted). A RICO plaintiff must also establish standing to sue, which is available only to a "'person injured in [her] business or property by' a RICO violation." *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 170 (S.D.N.Y. 2019) (citation omitted). "The phrase 'business

---

[2]      Namely: "Bad Boy Entertainment LLC, Bad Boy Records LLC, Bad Boy Entertainment Holdings LLC, Bad Boy Productions Holdings Inc., Combs Enterprises LLC, Sean John Clothing, Janice Combs Publishing."

or property' excludes both 'personal injuries suffered' and 'the economic consequence of personal injuries.'" *Id.* (citations omitted). The Complaint fails to plead the existence of a RICO "enterprise," a "pattern of racketeering," and Plaintiff's standing to sue.

### A.    The Complaint Fails to Plausibly Plead an "Enterprise"

First, to establish an "enterprise" via "association-in-fact," plaintiff must allege "hierarchy, organization, and activities" sufficient to show that the "members functioned as a unit." *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 360 (S.D.N.Y. 2014) (ciation and quotation marks omitted). The mere "conclusory naming of a string of entities does not adequately allege an enterprise." *Id.* Here, Plaintiff conclusorily alleges that *all* 32 Defendants constitute an enterprise, Compl. ¶¶ 763–64. There are literally *no* RICO allegations as to Defendants Bad Boy Productions Holdings, Inc., and Combs Enterprises, LLC at all. As for the other Combs Defendants, the Complaint makes vague allegations about their supporting or marketing MTB in unspecified ways (generally in improper group pleadings), but does not provide a coherent explanation of the structure of the alleged "enterprise" or how the members functioned as a unit. *See, e.g., id.* ¶¶ 756, 759, 763; *see also id.* ¶ 739 ("The RICO Enterprise . . . was "structured by various agreements, deals, contracts, and non-contractual relationships between the Defendants, by which Defendants assumed different roles in . . . participating in the acts necessary to carry out the directives of the Enterprise."). These allegations fail to plead that any of the Combs Defendants participated in a "hierarchy, organization, and activities" from which to conclude that the RICO Defendants were part of a group that "functioned as a unit." *See Cedar Swamp Holdings, Inc. v. Zaman*, 487 F. Supp. 2d 444, 451 (S.D.N.Y. 2007) (holding that "simply group[ing] together all of the individuals and entities involved in the racketeering act and call[ing] them an enterprise" constitutes no more than an "ad hoc collection of entities and individuals").

Second, the Complaint fails to allege the members of the alleged "enterprise" share a

common, legally sufficient "purpose." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 121 (2d Cir. 2013). Plaintiff alleges the enterprise's "purpose" is "to use deception, coercion, force, and the threat of violence to enrich [Defendants] at the expense of individuals like the Plaintiff." Compl. ¶ 749. Plaintiff impermissibly conflates an enterprise's "purpose" with the alleged "pattern of racketeering." *See Lynn v. McCormick*, No. 17-CV-1183, 2017 WL 6507112, at *5 (S.D.N.Y. Dec. 18, 2017) (finding no enterprise when the alleged purpose is to "engag[e] in the fraudulent activity that forms the basis of the asserted pattern of racketeering activity"), *aff'd*, 760 F. App'x 51 (2d Cir. 2019). Furthermore, the purpose of "enrich[ing] Defendants" is insufficient because advancing self-interest cannot serve as a "purpose" as a matter of law. *See D. Penguin Bros. v. City Nat. Bank*, 587 F. App'x 663, 668 (2d Cir. 2014) (no "enterprise" alleged without allegations defendants "acted 'on behalf of the enterprise as opposed to on behalf of [themselves] in their individual capacities, to advance their individual self-interests'"). Without any discernable "structure" or "purpose," the SAC fails to allege a RICO "enterprise."

### B.  The Complaint Fails to Allege a Pattern of Racketeering

A "pattern of racketeering" requires two or more "predicate acts," *Reich v. Lopez*, 858 F.3d 55, 59 (2d Cir. 2017), which must be related. *Id.* at 60 (quoting *United States v. Indelicato*, 865 F.2d 1370, 1383 (2d Cir. 1989)). The Complaint fails to plead any "predicate act" let alone plead any with the requisite particularly required by Rule 9(b).

Plaintiff relies on fundamentally flawed allegations of mail and wire fraud, 18 U.S.C. §§ 1341, 1343, as the alleged "racketeering activity." Compl. ¶¶ 774–83. To adequately plead mail or wire fraud as "predicate acts," the Complaint must plead "(1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) the use of the mails or wires to further the scheme," *United States v. Shellef*, 507 F.3d 82, 107 (2d Cir. 2007), and must do so in accordance with the heightened pleading standard under Fed. R. Civ. P. 9(b). *Babb v. Capitalsource, Inc.*, 588 F. App'x

66, 68 (2d Cir. 2015). A plaintiff must also "identify the purpose of the mailing [or wire communication] within the defendant's fraudulent scheme." *Id.* (quoting *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 173 (2d Cir.1999) (alteration in original)).

The Complaint does not identify any specific fraudulent statements made in connection with any specific mailing or wire communication tied to any alleged fraudulent scheme, when such statements were made, and who made them. Instead, Plaintiff relies on speculation, vague conclusions, and improper group pleadings. *See, e.g.*, Compl. ¶ 569 (Plaintiff "believes Defendants BM, MTV, Diddy and BBE . . . and made false promises of stardom to Plaintiff"); *id.* ¶ 738 ("Defendants . . . deceiv[ed] individuals such as Plaintiff under false pretenses"); *id.* ¶ 778 ("Defendants . . . distribute[d] misleading advertisements to various states."). Such allegations fall far short of the minimum pleading requirements under Rule 9(b). *See, e.g.*, *DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 770 F. Supp. 2d 497, 526 (E.D.N.Y. 2011) ("[P]laintiffs have failed to identify which defendants caused each allegedly fraudulent statement to be spoken, written, or mailed; what the content of the allegedly fraudulent misrepresentation was; or when the communication was made"); *D. Penguin Bros. v. City Nat'l Bank*, No. 13-CV-0041, 2014 WL 982859, at *6 (S.D.N.Y. Mar. 11, 2014) (same), *aff'd*, 587 F. App'x 663 (2d Cir. 2014).

Finally, the Complaint alleges a hodgepodge of miscellaneous purported misdeeds, including allegations of pressuring Plaintiff to sign contracts, failing to pay Plaintiff royalties, unpleasant conditions on a reality television show, crude remarks or yelling, and interfering with Plaintiff's career as a musician. *See, e.g.*, Compl. ¶¶ 564, 357, 565, 396, 605, 692. To the extent Plaintiff intends to base her RICO claim on these allegations, such vague allegations unconnected to the elements of any identifiable criminal statute cannot state a RICO "predicate act." *See, e.g.*, *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993) ("[B]roken promises . . . cannot

serve as predicate acts"); *Linens of Europe, Inc. v. Best Mfg., Inc.*, No. 03-CV-9612, 2004 WL 2071689, at *15 (S.D.N.Y. Sept. 16, 2004) ("[I]ntimidation and harassment . . . do not even qualify as predicate acts."); *McSweeney v. Cohen*, No. 24-CV-01503, 2025 WL 966022, at *41 (S.D.N.Y. Mar. 31, 2025) (observing that civil rights and employment law violations do not constitute "racketeering activity" and dismissing RICO claim arising out of *Real Housewives* TV show).

### C.    Plaintiff Lacks RICO Standing

To confer standing to sue, the alleged RICO "predicate act" must be both the "but for" and proximate cause of an alleged injury to "business or property." *Geiss*, 383 F. Supp. 3d at 171 (no RICO standing for financial injuries allegedly caused by "blacklisting" because "[b]lacklisting . . . is not a RICO violation"); *DeSilva.*, 770 F. Supp. 2d at 524 (no RICO standing for alleged "wage theft" caused "simply [by] the retention of plaintiffs' wages"). The only purported injury "to business or property" alleged in the Complaint is the alleged non-payment for services and/or composition credit Plaintiff claims resulted from "Unjust Enrichment of Defendants by Breach of Contract and/or Copyright Infringement." Compl. ¶ 724. The Complaint alleges no causal connection between these injuries and any purported RICO "predicate act." Plaintiff alleges Defendants' failure to pay amounts owed to her under various contracts caused injury to Plaintiff's business or property. Compl. ¶¶ 356–57, 568, 724–25. This alleged chain of causation is fatal to Plaintiff's claim because a breach of contract is not a RICO "predicate act." *See, e.g.*, *Bigsby v. Barclays Cap. Real Est., Inc.*, 170 F. Supp. 3d 568, 577 (S.D.N.Y. 2016) (plaintiff's "allegations 'are nothing more than breach of contract claims, and therefore do not constitute predicate acts'") (citation omitted). Because there is no alleged injury to "business or property" caused by a RICO "predicate act," Rivers lacks RICO standing.

## V.    PLAINTIFF FAILS TO STATE A TVPRA CLAIM

In her Third COA, Plaintiff asserts a claim of forced labor under the TVPRA, 18 U.S.C. §

1589, against "Diddy, BBE, Bad Boy Records, UMG, BM, MTV, Viacom and Paramount." Compl. ¶¶ 797–804. The conduct alleged in the Complaint does not state a violation of the TVPRA. "Section 1589 was passed to implement the Thirteenth Amendment against slavery or involuntary servitude." *Muchira v. Al-Rawaf*, 850 F.3d 605, 617 (4th Cir. 2017) (citation and quotation marks and citation omitted). Typically "'forced labor' situations involve circumstances such as squalid or otherwise intolerable living conditions, extreme isolation . . . , threats of inflicting harm." *Id.* at 618–19 (citation and quotation marks omitted). Thus, under Section 1589, a plaintiff may bring a cause of action against "[w]hoever knowingly provides or obtains the labor or services of a person by . . . means of force, threats of force, physical restraint, or threats of physical restraint . . . [or] by means of serious harm or threats [thereof]." § 1589(a). The TVPRA also permits a cause of action against those who knowingly benefited from participating in such violation. *See* § 1589(b); *Levin.*, 747 F. Supp. 3d at 679.

The facts alleged in the Complaint do not align with any cognizable theory of forced labor. First, neither Plaintiff's appearance on MTB nor her related musical performances were "forced." Plaintiff—a willing and repeat contestant on a reality TV show—alleges the following in support of her forced labor claim: (1) sharing a "dirty, nasty, small" hotel room chosen "for the exclusive purpose of manufacturing drama," Compl. ¶¶ 641–644; (2) being "forced" to read a book by Russell Simmons, *id.* ¶ 646; (3) being "forced" to learn the lyrics of two rap songs, *id.* ¶ 647; and (4) performing "manual labor," including "wash[ing] cars, volunteer[ing] at a soup kitchen and . . . walk[ing] to Brooklyn to get . . . a cheesecake" *id.* ¶ 648. There are no facts alleged demonstrating that any (let alone all) of the Defendants named in this COA used force, physical restraint, serious harm, or threats thereof against Plaintiff or that any such conduct was the reason Plaintiff appeared on reality TV. The most plausible inference to be drawn from the facts alleged is that Plaintiff

appeared on MTB because she believed doing so would give her a "chance at music stardom," not because she was confronted with force, physical restraint, or threats thereof. *Id.* ¶¶ 80–83.

Second, by her own admission, Plaintiff was compensated for her performances on MTB. According to the Complaint, Plaintiff and her co-stars each received $5,000 for every concert they performed as well, at least "a couple hundred" dollar per week in cash. *Id.* ¶¶ 568, 668. In "one month of filming Season 3, Plaintiff" performed approximately twenty times, meaning she made $100,000 in just one month. *Id.* ¶ 667. On top of these payments, Plaintiff also alleges that in Season 3, she received an additional payment of $25,000. *Id.* ¶¶ 560–61.

Plaintiff does not plead any Combs Defendant perpetrated forced labor or knowingly benefitted from it. *See* §§ 1589(a)–(b); *Bistline v. Parker*, 918 F.3d 849, 871 (10th Cir. 2019).

## VI.   PLAINTIFF FAILS TO STATE A GMVL CLAIM

Plaintiff's GMVL claim (COA 15) – which is asserted against all thirty-two Defendants – fails because the Complaint does not allege a gender-motivated crime of violence. To state a GMVL claim, a plaintiff must allege facts showing: (1) an "act [that] constitutes a misdemeanor or felony against the plaintiff; (2) presenting a serious risk of physical injury; (3) that was perpetrated because of plaintiff's gender; (4) in part because of animus against plaintiff's gender; and [(5)] resulted in injury." *Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 455 (S.D.N.Y. 2018). Plaintiff fails to plead the requisite elements.

Read in the light most favorable to Plaintiff, the Complaint offers two allegations in support of Plaintiff's GMVL claim. First, Plaintiff alleges Combs allegedly "stare[d] down Plaintiff for several minutes" and then slammed a door after she declined to drink a cocktail he had made her (and from which he had  "drank . . . first."). Compl. ¶¶ 704–707. Second, Plaintiff alleges Combs cornered Plaintiff in a hallway, "put[] his right arm up to block Plaintiff from moving," "ran his

17

left hand across her breasts," and then removed his arms and left the hallway once he "realiz[ed] Plaintiff [wa]s uncomfortable and not consenting to his actions." *Id.* ¶¶ 715–19. These allegations are insufficient to support a GMVL claim. First, neither interaction involves misdemeanor or felony conduct or presents a serious risk of physical injury. *See Rossbach v. Montefiore Med. Ctr.*, No. 19-CV-5758, 2021 WL 930710, at *11 (S.D.N.Y. Mar. 11, 2021) (allegations that Plaintiff was "groped" and subjected to "unwanted physical contact" insufficient to establish serious risk of injury); *see also Bellino*, 2024 WL 1344075, at *1 (allegations that the defendant engaged in forcible kissing and touching of breasts, buttocks, and genitals were insufficient to establish serious risk of injury).

Second, Plaintiff fails to plead the gender-motivated conduct and gender animus. "Generally, the animus element requires the plaintiff to present extrinsic evidence of the defendant's expressed hatred toward women as a group or allege specific actions and statements by the perpetrator during the commission of the alleged crime of violence." *Rossbach*, 2021 WL 930710, at *10 (quotation marks and citation omitted). The Complaint does not allege any conduct by any Defendant towards Plaintiff that shows any Defendant was motivated by hatred towards women. Plaintiff merely asserts Defendants "were motivated by Plaintiff's gender." Compl. ¶ 918.

## VII. PLAINTIFF FAILS TO STATE NYSHRL AND NYCHRL CLAIMS

Plaintiff's Sixth, Seventh, and Eighth COAs against Combs, "BBE," and "Bad Boy Records" for sexual harassment, gender discrimination, and hostile work environment under the NYSHRL and NYCHRL and retaliation under the NYSHRL fail because, among other things, Plaintiff cannot establish an employment relationship with any of these Defendants. "An essential element of a claim under the NYSHRL or NYCHRL is the existence of an 'employer-employee relationship.'" *Musiello v. CBS Corp.*, 518 F. Supp. 3d 782, 789 (S.D.N.Y. 2021) (citation omitted).

The Complaint contains no credible allegations supporting the existence of an employer-employee relationship with any of the Defendants named in these COAs. Indeed, Plaintiff states conclusorily that "[a]t all relevant times" she "met the definition of an 'employee' of Defendant Bad Boy and related entities." Compl. ¶ 22. Plaintiff fails to define both "Bad Boy"—there are at least three Defendants with "Bad Boy" in their name—and the entities she believes are related to it. Later in the Complaint, Plaintiff asserts repeatedly that she was "an employee for Defendants Diddy, MTV, BM, BBE, and UMG." *Id.* ¶¶ 744–47. These threadbare allegations are insufficient.

## VIII.   PLAINTIFF FAILS TO STATE A RIGHT OF PUBLICITY CLAIM

Plaintiff's Ninth COA against Combs, "BBE, Bad Boy Records, UMG, BM, MTV, Viacom, Paramount, Janice, JCP, JCPH, [and] King" for violations of her right of publicity under Sections 50 and 51 of the New York Civil Rights Law and for unjust enrichment is insufficiently pled for at least five reasons. First, Plaintiff fails to identify how, where, or when the Defendants named in this COA used her voice, likeness or image for advertising purposes. *Bendit v. Canva, Inc.,* No. 23-CV-473, 2023 WL 5391413, at *8–9 (S.D.N.Y. Aug. 22, 2023). The Complaint merely recites the boilerplate elements of right of publicity claim, *see* Compl. ¶¶ 844–47, which warrants dismissal. *Tesfay v. Hanes Brands Inc.,* No. 19-CV-3889, 2019 WL 6879179, at *6 (S.D.N.Y. Dec. 17, 2019). Second, there are no allegations that any of the Defendants named in this COA made or published advertisements in the State of New York, as is required. *Id.* Third, unjust enrichment is duplicative of Plaintiff's New York Civil Rights Law claim and must be dismissed. *Drob Collectibles, LLC v. Leaf Trading Cards, LLC*, No. 23-CV-63, 2024 WL 897952, at *6 (S.D.N.Y. Feb. 15, 2024) (citations omitted), *report and recommendation adopted*, 2024 WL 895315 (S.D.N.Y. Mar. 1, 2024). Fourth, Plaintiff alleges that at "all relevant times" she "was a resident of the State of Michigan." Compl. ¶ 22. It is "absolutely and indisputably the case that an

individual who does not reside in New York cannot bring a claim under New York's Right of Publicity Law." *Drob*, 2024 WL 897952, at \*6 (citation omitted).

## IX.    PLAINTIFF FAILS TO STATE A COPYRIGHT INFRINGEMENT CLAIM

Plaintiff asserts a claim for Copyright Infringement pursuant to 17 U.S.C. § 106 against Combs, "BBE, Bad Boy Records, UMG, BM, MTV, Viacom, Paramount, Janice Combs, JCP, and JCPH" alleging that all of these Defendants purportedly infringed her copyright on compositions on the album "Too Hot for TV," the song "Why" on the Bad Boys II Soundtrack and two theme songs for the television show MTB2 (COA 10). Compl. ¶¶ 849–62. Plaintiff fails to state this claim.

To state a claim for Copyright Infringement, a plaintiff must plead: "(1) the specific original works are the subject of the copyright claim; (2) that plaintiff owns the copyrights in those works; (3) that the copyrights were registered in accordance with 17 U.S.C. § 411; and (4) the acts by which and the time period during which the defendant infringed the copyright." *DigitAlb, Sh.a v. Setplex, LLC*, 284 F. Supp. 3d 547, 554 (S.D.N.Y. 2018) (citation omitted). *See also* 17 U.S.C. § 411(a).  First, Plaintiff fails to allege that she registered her copyright, nor does she allege she is exempt from that obligation, *see generally* Complaint, rendering her claim deficient on its face. 17 U.S.C. § 411(a) ("[N]o civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."); *see also DigitAlb*, 284 F. Supp. 3d at 555. Second, Plaintiff fails to plausibly allege she actually owns the copyright in any of the works. Though she conclusorily alleges she owns "the exclusive rights to reproduce" those works, Compl. ¶ 851, she pleads no facts to support that conclusion and, to the contrary, the facts she does plead contradict it: she alleges that has no information whatsoever about the copyright of any work in which she was involved, and further alleges Janice Combs Publishing LLC and Janice Combs Publishing

Holdings Inc. "held or holds the publishing copyright of Plaintiff." Compl. ¶¶ 60–61, 345–46, 562, 673, 675, 724–25.[3] Third, even if Plaintiff demonstrated her exclusive ownership of each work and even if she registered her copyright, this claim would still fail because the Complaint does not allege "the acts by which and the time period during which [each] defendant infringed the copyright." *DigitAlb*, 284 F. Supp. 3d at 554. Plaintiff Copyright claim rests on the sort of "vague and conclusory" allegations that courts routinely dismiss. *New London Assocs., LLC v. Kinetic Soc. LLC*, 384 F.Supp.3d 392, 410 (S.D.N.Y. 2019).

## X.    PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT

For her Eleventh COA, Plaintiff asserts a claim for breach of the implied covenant of good faith and fair dealing against all thirty-two Defendants. In order state a claim for breach of the duty of good faith and fair dealing, a plaintiff must identify a binding contract and plead facts demonstrating defendant's interference with plaintiff's right "to receive the fruits of the contract." *See Hadami, S.A. v. Xerox Corp.*, 272 F. Supp. 3d 587, 598 (S.D.N.Y. 2017) (internal citations omitted). "Because the duties imposed by the implied covenant of good faith and fair dealing arise as a result of the formation of a contractual relationship between the parties, a claim for breach of the implied covenant of good faith and fair dealing must be dismissed when there is no valid and enforceable contract between the parties." *Id.* Plaintiff fails to make any nonconclusory allegations regarding the existence of any contract with any of the Combs Defendants. Instead, she obliquely references agreements entered with various entities, some of which—like "BBE" (as described *supra*) are defined inconsistently to include different entities—without pleading any material terms

---

[3]    While Plaintiff alleges she "wrote" and "composed" some of the compositions, Compl. ¶¶ 342–43, she does not (and cannot) allege that she did so exclusively. Accordingly, her claim fails as a matter of law as "co-authors cannot sue one another for copyright infringement." *Kwan v. Schlein*, 634 F.3d 224, 229 (2d Cir. 2011).

(even at a high level). Compl. ¶¶ 225, 864–71. Indeed, in pleading the Eleventh COA, the Complaint alleges: "Plaintiff entered several contracts with Defendants, at least four," and Defendants breached those contracts by not "pay[ing] Plaintiff as agreed." Compl. ¶¶ 864–71. Even putting aside that Plaintiff fails to identify the parties to each of the four alleged contracts, the Complaint does not identify what was "agreed" to under any of the purported agreements and thus completely fails to allege how any Combs Defendant deprived Plaintiff of any benefit to which she was contractually entitled. Accordingly, Plaintiff's Eleventh COA must be dismissed.

## XI.  PLAINTIFF FAILS TO STATE A CLAIM FOR FRAUD

Plaintiff's Twelfth COA for fraud/intentional misrepresentation/false promise as against all thirty-two Defendants is insufficiently pled. "Claims of fraud must be pleaded with particularity pursuant to Rule 9(b)" and therefore must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 197 (S.D.N.Y. 2011) (citation omitted). Plaintiff does not come close to meeting this heighted standard. The Complaint relies exclusively on vague statements such as "Defendants represented to Plaintiff that certain facts relative to payments to Plaintiff were true," but "were false," and "Defendants knew that their representations were false when they were made." Compl. ¶¶ 881–83. Such allegations plainly fail to satisfy the particularity requirement of Rule 9(b).

## XII.  PLAINTIFF FAILS TO STATE CLAIMS FOR TORTIOUS INTERFERENCE

Plaintiff's Eighteenth, Nineteenth, Twenty-First, and Twenty-Second COAs assert duplicative claims for tortious interference with contract and tortious interference with prospective business relations against Combs. *See* Compl. ¶¶ 945–66, 976–1003; *Katz v. Travelers*, 241 F.

22

Supp. 3d 397, 404 (E.D.N.Y. 2017) ("Tortious interference with a business relationship is sometimes called 'tortious interference with prospective economic advantage'; no matter the term used, the elements are the same.") (citation omitted). These claims are facially deficient. To state a claim for tortious interference with contract, a plaintiff must allege "(1) the existence of a valid contract between a third party and plaintiff, (2) that defendant had knowledge of that contract, (3) that defendant intentionally procured a breach, and (4) damages." *Id.* (citation and quotation marks omitted). Plaintiff fails to allege the existence of a valid contract between herself and a third party. *See generally* Compl. Thus, her claim for tortious interference with contract cannot stand. *Id*.

To state a claim for tortious interference with business relations, a plaintiff must allege that she (1) "had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." *Catskill Dev., L.L.C. v. Park Place Ent. Corp.*, 547 F.3d 115, 132 (2d Cir. 2008), *cert. denied*, 556 U.S. 1166 (2009). "[I]n order to satisfy the third element of tortious interference with business relations, the defendant's conduct must amount to a crime or an independent tort." *JPMorgan Chase Bank, N.A. v. 29-33 Ninth Ave., LLC*, 710 F. Supp. 3d 259, 280 (S.D.N.Y. 2024) (citation omitted). Plaintiff does not allege facts sufficient to infer she would have entered into business deals but for Combs' interference. *See Downtown Music Publ'g LLC v. Peloton Interactive, Inc.*, 436 F. Supp. 3d 754, 766–77 (S.D.N.Y. 2020) (dismissing tortious interference claim because plaintiff "insufficiently alleged that it would have entered into" agreements but for defendant's conduct); *Shawe v. Kramer Levin Naftalis & Frankel LLP*, 167 A.D.3d 481, 483 (1st Dep't 2018) (affirming dismissal where complaint contained only "conclusory allegations about a potential relationship"), *appeal dismissed*, 125 N.E.3d 150 (N.Y. 2019). Nor does the Complaint plead that Combs' alleged interference with any

such relationship amounted to a crime or independent tort. To the contrary, Plaintiff merely states that he called prospective record labels and music industry executives and told them not to hire her. *See* Compl. ¶¶ 694–700.

## XIII.  PLAINTIFF FAILS TO STATE CLAIMS FOR INTENTIONAL TORTS

The Fifth COA for false imprisonment should be dismissed for failure to state a claim. To state a claim for false imprisonment, a plaintiff must show that: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Lee v. City of New York*, 709 N.Y.S.2d 102, 103 (2nd Dep't 2000). The only allegation potentially related to false imprisonment is the allegation that  Combs cornered Plaintiff in a hallway and put "his right arm up to block Plaintiff from moving" before "realizing Plaintiff . . . [did] not consent[] to his actions" and "remov[ing] his right arm[]." Compl. ¶¶ 712–19. This allegation fails to support an inference that Plaintiff was confined as "there is nothing in the complaint suggesting that defendant did anything to lead her to believe that she could not leave." *Cecora v. De La Hoya*, 965 N.Y.S.2d 464, 465 (1st Dep't 2013). Accordingly, Plaintiff fails to plead false imprisonment.

Plaintiff fails to state a claim for battery (COA 2) because she does not allege Combs intended to make "offensive" bodily contact "without the plaintiff's consent." *In re Lyman Good Dietary Supp. Lit.*, No. 17-cv-8047, 2018 WL 3733949, at *5 (S.D.N.Y. Aug. 6, 2018). In the lone instance in which Combs allegedly made contact with Plaintiff's body, he immediately ceased contact when he realized she did not consent. Compl. ¶¶ 712–19. For similar reasons, Rivers also fails to state a claim for assault (COA 2) because the facts alleged do not give rise to a plausible inference that Combs placed Plaintiff in "imminent apprehension of harmful contact." *Holtz v. Wildenstein & Co.*, 261 A.D.2d 336, 336 (1st Dep't 1999).

Plaintiff's Fourth and Seventeenth COAs for battery/sexual battery and IIED, respectively, are duplicative of each other and of Plaintiff's Second COA for assault and battery. *See O'Rear v. Diaz*, No. 24-CV-1669, 2025 WL 283169, at *4 (S.D.N.Y. Jan. 23, 2025); *Leonard v. Reinhardt*, 20 A.D.3d 510, 510 (2d Dep't 2005).

## XIV.  PLAINTIFF FAILS TO PLEAD CLAIMS SOUNDING IN NEGLIGENCE

Plaintiff's COAs for negligent hiring, negligence, and negligent infliction of emotional distress ("NIED") should be dismissed because the Complaint fails to explain how each Defendant named in these COAs owed Plaintiff a duty or how any Defendant breached any such duty. Claims sounding in negligence require the pleading of a duty and a breach of that duty. *See Pasternack v. Lab. Corp. of Am. Holdings*, 27 N.Y.3d 817, 825 (2016); *Ornstein v. New York City Health & Hosps. Corp.*, 10 N.Y.3d 1, 6 (2008). And a claim for negligent hiring, retention, or supervision carries an additional requirement that "the employer was on notice of the relevant tortious propensities of the wrongdoing employee." *Shainwald v. Pros. for Non-Profits, Inc*., 62 Misc. 3d 1221(A), at *4 (Sup. Ct., N.Y. Cnty. 2019) (quoting *Gomez v. City of New York*, 304 A.D.2d 374, 374 (1st Dep't 2003)). The Complaint fails to plead those essential elements.

## CONCLUSION

For the foregoing reasons, the Combs Defendants respectfully request the Court dismiss the Complaint in its entirety with prejudice.

Dated: June 23, 2025
        New York, New York

Respectfully submitted,

SHER TREMONTE LLP

*/s/    Erica A. Wolff*
Erica A. Wolff
Michael Tremonte
Michael Bass
Benjamin J. Shack Sackler
90 Broad Street, 23rd Floor
New York, NY 10004
(212) 202-2600
ewolff@shertremonte.com
mtremonte@shertremonte.com
mbass@shertremonte.com
bshacksackler@shertremonte.com

*Attorneys for Combs Defendants*

## <u>CERTIFICATION OF COMPLIANCE</u>

I hereby certify that the word count of this memorandum of law complies with the word count limits of Local Rule 7.1(c) of the Joint Rules of the United States District Courts for the Southern and Eastern Districts of New York and Judge Rakoff's Individual Rules. According to the word-processing system used to prepare this memorandum of law and excluding the parts of the document exempted by Rule 7.1, this document contains 8,386 words and 25 pages.

Dated: June 23, 2025
         New York, New York

                                        Respectfully submitted,

                                        SHER TREMONTE LLP

                              By:    */s/ Erica A. Wolff*
                                        Erica A. Wolff