IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

SARA RIVERS

             Plaintiff,

- v. -

SEAN COMBS, et al.,

             Defendants.

CIVIL ACTION
Docket No.: 25-cv-1726-JSR

---

**Reply Memorandum of Law in Support of Defendant Arthur Michael Carter IV's (Sued as Mickey Carter) Motion to Dismiss**

Zukerman Gore Brandeis
  & Crossman, LLP
Jeffrey L. Friesen
Eleven Times Square
New York, New York 10036
(212)223-6700
*Attorneys for Defendant Arthur Michael Carter IV (sued as Mickey Carter)*

**Table of Contents**

ARGUMENT ................................................................................................................................. 1

    I.   Mr. Carter Joins in the Reply Arguments made by the Other Moving Defendants ............ 1

    II.  Plaintiff's Intentional Mischaracterization of Mr. Carter's Biography Must Stop ............. 1

    III. No Allegations Connect Mr. Carter To the Alleged Wrongdoing against Plaintiff ............ 4

# Table of Authorities

**Cases**

*Collison v. Wandrd, LLC*, 24-cv-2221 (LJL), 2024 WL 3252933, at *2 (S.D.N.Y. July 1, 2024). 3

*Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991) ................................................... 3

*Morales v. Kavulich & Assocs. P.C.*, No. 16-CV-2134 (ALC)(JLC), 2017 WL 2712948, at *1 (S.D.N.Y. June 15, 2017) ............................................................................................................. 2

*O'Neill v. Flawless Kitty LLC*, 23-CV-5611 (LAK)(JLC), 2024 WL 1542915, at *6 (S.D.N.Y. Apr. 10, 2024) ........................................................................................................................... 2

*Rodriguez v. Commissioner of Social Security*, 23-CV-4554 (JMF)(BCM), 2024 WL 130925, at n.4 (S.D.N.Y. Jan. 10, 2024) ..................................................................................................... 3

Defendant Arthur Michael Carter IV (sued as Mickey Carter) respectfully submits this Reply Memorandum of Law in Support of his motion to dismiss the Complaint, ECF No. 1 ("Compl." or "Complaint"), with prejudice.

## ARGUMENT

### I. Mr. Carter Joins in the Reply Arguments made by the Other Moving Defendants

In Mr. Carter's opening brief, he joined and adopted the numerous legal arguments presented by moving defendants Production Defendants, UMGR and Combs Defendants, to the extent the same causes of action are asserted against Mr. Carter. In her Opposition, Plaintiff then adopted the arguments made in her oppositions to those motions. (Opp. at 3.) Mr. Carter accordingly joins and adopts the arguments made by the other moving defendants in their reply briefs. (ECF Nos. 186, 187, 188.)

### II. Plaintiff's Intentional Mischaracterization of Mr. Carter's Biography Must Stop

In Mr. Carter's opening brief, he showed that (a) the Complaint mischaracterizes his professional and military background by alleging that he was never a lawyer and never served in the military, (b) undersigned counsel promptly informed lead counsel for Plaintiff that these allegations were false in writing after telling New York counsel for Plaintiff on the phone, and (c) Plaintiff's counsel has continued to advocate these positions. The Complaint essentially alleges that Mr. Carter has lied about being a lawyer and serving in the military. Mr. Carter sent simple and uncontroverted proof that these allegations are false to Plaintiff's counsel in writing, *and* presented such proof in Mr. Carter's opening brief. Plaintiff's continued advocating of these allegations must now be considered intentional, it is completely improper, and frankly

1

sanctionable.

While we are reluctant to burden the Court with communications between counsel, we feel the need to do so given that Plaintiff denies they exist. Plaintiff's Opposition says that "Defendant asserts his counsel attempted to make these corrections during a phone call but never did counsel follow up with any documents, materials or written confirmation to the information communicated by telephone." (Opp. at 4.) This is false, and the July 13, 2025 email communication between counsel is attached to the accompanying Declaration of Jeffrey L. Friesen ("Friesen Decl.") as Exhibit A.

First, Plaintiff falsely says in her Opposition that Mr. Carter "admits he was not admitted to practice law, then or now, in the State of New York. The representation of Plaintiff on a matter solely related to the State of New York is problematic considering Defendant's admission he has not now or ever been a member of the bar of in New York." (Opp. at 4.) There is no citation for where Mr. Carter "admits" this, because there is none. To the contrary, he has *refuted* it repeatedly: his opening brief states that he has been registered as an attorney in New York since 2002, and even provided a link to the attorney search in the New York State Unified Court System, Attorney Online Services. (ECF No. 178 at 2 n.1.). Undersigned counsel told lead counsel for Plaintiff the same thing, going through the trouble to provide a screenshot of the search results, in an email on July 13, 2025. (Friesen Decl. Ex. A.) Mr. Carter requests that the Court take judicial notice of his attorney information on the New York Unified Court System's website, as other courts have done.[1] A court may "'consider matters of which judicial notice may

---

[1] *See e.g., O'Neill v. Flawless Kitty LLC*, 23-CV-5611 (LAK)(JLC), 2024 WL 1542915, at *6 (S.D.N.Y. Apr. 10, 2024); *Morales v. Kavulich & Assocs. P.C.*, No. 16-CV-2134 (ALC)(JLC), 2017 WL 2712948, at *1 (S.D.N.Y. June 15, 2017).

2

be taken' without converting a Rule 12(b)(6) motion into one for summary judgment."[2] Further, Plaintiff's counsel's continued advocating of this position is a violation of Rule 11.[3]

Second, Plaintiff's Opposition does not even address Mr. Carter's proof that he went to law school and served in the military, except to say (a) Plaintiff's counsel was not advised of these errors in writing (Opp. at 4), and (b) "the Court must take all allegations in Plaintiff's complaint as true." (*Id*.) Plaintiff's counsel was advised in writing (Friesen Decl. Ex. A), and is in receipt of Mr. Carter's opening brief. To the extent that Plaintiff continues to advocate these contentions, she violates Rule 11.

Third, Mr. Carter pointed out in his opening brief that in Plaintiff's memorandum of law in opposition to the Production Defendants' motion to dismiss, filed by Plaintiff on July 23, 2025, Plaintiff says: "Plaintiff asserted the closeness of the enterprise members being so deep that Defendant Carter has been an employee of the Production Defendants since his appearance on the television program." (ECF No. 168, at 7.) Mr. Carter explained that this was *not alleged in the Complaint*, and was also *untrue*, according to the same LinkedIn profile cited in the Complaint itself. In her Opposition, Plaintiff ignores Mr. Carter's opening brief, and doubles down, adding that this point actually underpins Plaintiff's equitable tolling argument with respect to the statute of limitations. Plaintiff's Opposition says:

> Plaintiff's complaint plead that Defendant has maintained employment with one of the Production Defendant entities since his appearance as attorney for Plaintiff on the television show Making the Band. (Opp. at 3.)

---

[2] *Rodriguez v. Commissioner of Social Security*, 23-CV-4554 (JMF)(BCM), 2024 WL 130925, at n.4 (S.D.N.Y. Jan. 10, 2024) (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)).

[3] "Rule 11 provides that where after-acquired evidence demonstrates that a factual contention has no evidentiary support and is not likely to have evidentiary support after a reasonable investigation, a party may not 'later advocat[e]' that contention." *Collison v. Wandrd, LLC*, 24-cv-2221 (LJL), 2024 WL 3252933, at *2 (S.D.N.Y. July 1, 2024).

3

> Defendant still benefits from the RICO scheme to this day as he has held nonstop and continuous employment with one of the Production Defendant entities since his sham appearance as attorney for Plaintiff on the television show Making the Band. (Opp. at 3.)
>
> Plaintiff's complaint alleges Defendant has continued conduct to prevent Plaintiff from redress . . . . Defendant has maintained continuous employment with one of the Production Defendant entities for the past twenty years. (Opp. at 5.)

Mr. Carter is forced to repeat what he said in his opening brief: the only allegation in the Complaint about Mr. Carter's current employment is that he works for Viacom, citing his LinkedIn profile. (Compl. ¶ 45.) As that profile shows, he does not work for Viacom, he works for Paramount. *There are zero allegations in the Complaint about him continuously working for Paramount, or Viacom, or any other defendant.* Finally, as his LinkedIn profile, *cited in the Complaint*, shows, in the intervening two decades Mr. Carter has worked for Time Warner Cable, Fox News, CBS Corporation, and finally, Paramount. Of those, only Paramount is a defendant in this case, and he only started working there in December 2019. Plaintiff simply must stop rewriting her Complaint in briefs, and making demonstrably false accusations.

### III.     No Allegations Connect Mr. Carter To the Alleged Wrongdoing against Plaintiff

In his opening brief, Mr. Carter explained that the Complaint contains no allegations to connect alleged conduct *by him* to the alleged wrongdoing of Mr. Combs. The only factual allegations of any conduct whatsoever by Mr. Carter relate to a contract that he allegedly asked Plaintiff to sign, as allegedly depicted on one episode of the television show Making the Band 2 that aired in 2003 – over twenty years ago. And no plausible nexus has been alleged between this alleged conduct and the conspiracy alleged in the Complaint to have resulted in Mr. Combs's alleged abuse of Plaintiff.

In her Opposition, Plaintiff actually makes the following circular, conclusory argument:

"Defendant knew about the wrongdoings of the coconspirator Defendants because he was a member of the RICO enterprise." (Opp. at 4.) But zero conduct of Mr. Carter is alleged to have taken place after the single television episode was filmed, sometime before September 2003, before Mr. Combs is even alleged to have abused Plaintiff. In her Opposition, Plaintiff says that Mr. Carter has had "continuous employment with one of the Production Defendant entities for the past twenty years" (Opp. at 5), but as set forth above, that is *not* alleged in the Complaint, and it is demonstrably false.

Plaintiff further states in her Opposition: "Plaintiff plead [*sic*] serious conduct of wrongdoing including Defendant falsely asserting he was a lawyer on behalf of Plaintiff and Plaintiff's group 'Da Band' and represented Plaintiff, on television none the less, during a contract signing with other Defendants . . . . Plaintiff plead [*sic*] she had never consulted, retained or hired Defendant and only met Defendant minutes before filming began." (Opp. at 3.) *None of this is alleged in the Complaint.* The allegations about what happened on the subject television episode are contained in paragraphs 306-322 of the Complaint, and the story set forth in Plaintiff's Opposition is simply not alleged there. Nor are those allegations contained in the two paragraphs in the "Behind the Scenes of MTB2" section of the Complaint that mention Mr. Carter. (Compl. ¶¶ 556-557.) More striking, when it suits her, Plaintiff says in her Opposition that Mr. Carter *was* her lawyer, and that she *did* allege that in her Complaint: "Defendant cannot summarily advance there was no contractual relationship with Plaintiff given the allegations made in Plaintiff's complaint. Plaintiff has plead that Defendant was on television representing her as legal counsel which would inherently imply that a contract must exist between the parties . . . ." (Opp. at 5.) And even if these allegations were made in the Complaint, they would not come close to providing the necessary nexus to the later alleged wrongdoing by Mr. Combs.

5

Mr. Carter also pointed out that no contract was alleged between him and Plaintiff, which is fatal to the good faith and fair dealing claim. As noted above, in her Opposition Plaintiff seems to be saying that there was a contract between them for her engagement of his services as an attorney (when she's not saying that he wasn't an attorney, or her attorney). This contract is *not* alleged in the Complaint. The only contract alleged that involves Mr. Carter is the recording contract Plaintiff alleges he asked her to sign, as her lawyer. As far as can be gleaned from the Complaint, it appears that Plaintiff alleges that she "believes this contract was a record deal with Defendants Diddy and BBE." (Compl. ¶ 554.)

Finally, all claims against Mr. Carter are time-barred. There are no allegations in the Complaint to conceivably support an equitable tolling argument *as to Mr. Carter* because zero conduct of his has been alleged after September 2003. Again, the "continuous employment" assertion made in the Opposition is not alleged in the Complaint, and is not true.

Mr. Carter respectfully requests that all claims against him be dismissed with prejudice, without leave to amend.

Dated: New York, New York
August 7, 2025

Respectfully Submitted,

Zukerman Gore Brandeis
   & Crossman, LLP

By: __/s/ *Jeffrey L. Friesen*_____
    Jeffrey L. Friesen
    Eleven Times Square
New York, New York 10036
(212) 223-6700

*Attorneys for Defendant*
   *Arthur Michael Carter IV*
   *(sued as Mickey Carter)*

## **CERTIFICATION OF COMPLIANCE**

I hereby certify that the word count of this memorandum of law complies with the word count limits of Local Rule 7.1(c) of the Joint Rules of the United States District Courts for the Southern and Eastern Districts of New York and Judge Rakoff's Individual Rules. According to the word-processing system used to prepare this memorandum of law and excluding the parts of the document exempted by Rule 7.1 and Judge Rakoff's Individual Rules, the document contains 1,811 words.

Dated:  August 7, 2025

By:  */s/ Jeffrey L. Friesen*
Jeffrey L. Friesen

*Attorneys for Defendant*
  *Arthur Michael Carter IV*
  *(sued as Mickey Carter)*