UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SARA RIVERS, | |
| Plaintiff, | |
| -v- | 25-cv-1726 (JSR) |
| SEAN COMBS a/k/a "P. DIDDY, DIDDY, PUFF, PUFF DADDY, PUFFY, BROTHER LOVE," et al., | OPINION |
| Defendants. | |

JED S. RAKOFF, U.S.D.J.:

On August 14, 2025, the Court issued a "bottom-line" Order granting the motions to dismiss filed by various defendants in this action. See ECF No. 195. The Court dismissed plaintiff Sara Rivers' Complaint in its entirety and with prejudice against all defendants except Sean Combs. As to Combs,[1] the Court dismissed with prejudice all of the Complaint's causes of action except Count Fifteen, which arises under the New York City Victims of Gender-Motivated Violence Protection Act ("GMVPA"), N.Y.C. Admin. Code § 10-1104. The Court stayed further proceedings as to Count Fifteen. Finally, the Court denied as moot Rivers' motion for default judgment against Townsquare Media Group and Alison Stanley. See ECF No. 195 at 1-2. This Opinion sets forth the reasons for the Court's decisions.

---

[1] Rivers has named Sean Combs, Janice Combs, and various entities bearing their names as defendants in this action. For the avoidance of confusion, all of this Opinion's subsequent references to "Combs" are references to Sean Combs alone.

I.   Background

    In a Complaint spanning 148 pages and over a thousand paragraphs, Rivers asserts more than twenty causes of action against more than thirty named defendants. See generally ECF No. 1 ("Compl."). All of Rivers' claims arise out of her participation -- more than twenty years ago -- in the reality television show Making the Band 2 ("MTB2"), which aired on defendant MTV's cable network from October 2002 to April 2004. See id. ¶ 83.[2] MTB2 followed rap star Combs as he recruited members of a hip-hop band, called "Da Band," and guided them through the process of recording an album and touring. See id. ¶¶ 84-519. Rivers alleges that all the individuals and entities whom she names as defendants are somehow connected with the making of MTB2 or with Combs. See id. ¶¶ 23-70.

    After this introductory overview, the Complaint's next 400-plus paragraphs primarily consist of somewhat sprawling summaries of MTB2 episodes in which Rivers appeared. See id. ¶¶ 84-519. Here, the Court re-summarizes them only briefly. The Complaint recounts Rivers' participation in several rounds of competitive auditions, her selection as a member of Da Band, the preparations that she and her fellow band members made for the release of their first album, tensions between Combs and band members, and Da Band's tour of some eighteen

---

[2] As it is required to do in evaluating defendants' motions to dismiss, the Court takes all well-pleaded, non-conclusory allegations contained in the Complaint to be true unless they are shown to be "demonstrably false" by materials that are attached to the Complaint, incorporated in it by reference, or integral to it. See, e.g., Bristol-Myers Squibb Secs. Litig., 312 F. Supp. 2d 549, 569 (S.D.N.Y. 2004).

cities. See id. ¶¶ 84-497. In MTB2's final episode, Combs announces that Da Band is to be disbanded and that he is no longer interested in working with Rivers or three of the other band members. See id. ¶¶ 498-519.

Approximately the next two hundred paragraphs of the Complaint provide "behind the scenes" context for Rivers' allegations of unfair or illegal treatment by Combs and other defendants. See id. ¶¶ 520-727. For example, Rivers alleges that she was made to sign various contracts, including general releases for her likeness to appear on television and agreements about recordings featuring Da Band, without being given the opportunity to consult an attorney or other disinterested advisor. See id. ¶¶ 543-547, 551-564. Rivers further alleges that she was not adequately compensated in connection with MTB2. Id. ¶¶ 565, 568. And she alleges that, notwithstanding the commercial success of MTB2 and Da Band's recordings, Combs fostered a hostile work environment and subjected her and her peers to "inhumane treatment." See id. ¶¶ 579-679. Specifically, Rivers alleges that Combs physically threatened band members, stating that he would "eat the face of one person and kill another," id. ¶ 604; yelled at and ridiculed Rivers, id. ¶ 605; encouraged MTB2 participants to fight one another, id. ¶ 611; controlled Rivers' eating and sleeping schedule, id. ¶¶ 631-633; and required her to engage in "uncompensated manual labor," id. ¶ 648. Although Rivers alleges that she complained to Combs, MTV, defendant Bunim-Murray Productions, and other defendants, her complaints allegedly went unanswered. See id. ¶¶ 680-691.

Rivers next alleges that, after MTB2 came to its conclusion, Combs prevented her from making a successful career in the music industry. See id. ¶¶ 692-702. For "several years" after MTB2 finished airing, Rivers alleges, Combs interfered with recording contracts that she was in the process of negotiating. See id. The Complaint mentions three record labels with whom Rivers hoped to work, but it does not specifically allege when Rivers was in the process of negotiating contracts with those labels or why Rivers believes it was Combs' intervention that prevented the contracts from materializing. See id.; see also id. ¶ 696 (alleging only on "information and belief" -- but not stating source of such information or belief -- that Combs directed recording executive not to enter into contract with Rivers).

Rivers then alleges that Combs sexually harassed, assaulted, and falsely imprisoned her. See id. ¶¶ 703-723. At an unspecified point during the filming of MTB2, Rivers alleges, Combs became enraged and slammed a door after she declined to drink a cocktail he had made. See id. ¶¶ 703-708. Rivers also alleges that, at some other unspecified time during filming, Combs cornered her in a studio hallway. See id. ¶¶ 712-722. During this second incident, Rivers alleges that Combs put his face directly in front of hers, "where he could kiss her," and asked her "in a low, sensual voice how she is doing." Id. ¶ 716. He then allegedly "used his left hand to adjust [the] collar of her jacket and then ran his left hand across her breasts, while repeating the phrase if she needs anything to let him know." Id. ¶ 717. Although Rivers alleges that Combs initially "put[] his right arm up to block

[Rivers] from moving," id. ¶ 715, she also alleges that Combs, "realizing [Rivers was] uncomfortable and not consenting to his actions remove[d] his right arm[] that was precluding [Rivers'] movement," id. ¶ 719.

Finally, Rivers alleges that, even though she composed and performed various songs that were broadcast on MTB2 and included on Da Band's album, she did not receive composition rights or compensation for those works. See id. ¶¶ 724-727. She alleges that certain defendants fraudulently induced her to sign over her intellectual property rights and that certain other defendants were thereby unjustly enriched. See id.

Based on these allegations, Rivers asserts eighteen state and/or federal causes of action against various combinations of defendants.[3] The Complaint does not specify which allegations are related to which causes of action, nor does it specify what alleged conduct by each defendant gives rise to the causes of action asserted against that defendant. The causes of action, in brief, are a civil claim under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 ("RICO") (Count One); assault and battery (Count Two); forced labor (Count Three); battery or sexual battery (Count Four); false imprisonment (Count Five); sexual harassment, gender discrimination,

---

[3] On July 26, 2025, Rivers withdrew certain causes of action asserted in the Complaint, namely, Counts Seventeen, Nineteen, Twenty-One, and Twenty-Two against all relevant defendants and Count Fifteen against all defendants other than Combs. See ECF No. 173. Accordingly, the Court does not discuss the withdrawn causes of action.

and hostile work environment in violation of the New York Human Rights
Law, N.Y. Exec. Law § 290 et seq. ("NYSHRL") (Count Six); sexual
harassment, gender discrimination, and hostile work environment in
violation of the New York City Human Rights Law, N.Y.C. Admin. Code
§ 8-101 et seq. ("NYCHRL") (Count Seven); retaliation, in violation
of the New York Human Rights Law, N.Y. Exec. Law § 296 (Count Eight);
violation of the right of publicity and associated unjust enrichment
(Count Nine); copyright infringement (Count Ten); breach of the implied
covenant of good faith and fair dealing (Count Eleven); fraud (Count
Twelve); negligent hiring, training, supervision, and retention (Count
Thirteen); negligence (Count Fourteen); violation of the GMVPA (Count
Fifteen); negligent infliction of emotional distress (Count Sixteen);
tortious interference with prospective contractual or business
relations (Count Eighteen); and negligent interference with
prospective economic advantage (Count Twenty). See Compl. ¶¶ 728-1003.

## II. Procedural History

Rivers commenced this action on February 28, 2025. See Compl.
Beginning on June 23, 2025, six defendants and groups of defendants
moved to dismiss the Complaint as against them. Defendants Bunim-
Murray Productions, Paramount Global, Viacom, and MTV Productions
(collectively the "Production Defendants") moved to dismiss with
prejudice Counts One, Three, Four, and Seventeen through Nineteen. See
ECF No. 130. Defendant UMG Recordings, Inc. moved to dismiss the same
counts, also with prejudice. See ECF No. 132. Defendants Combs; Bad
Boy Entertainment Holdings, Inc.; Bad Boy Entertainment LLC; Daddy's

House Recording, Inc. (sued as Daddy's House Recording Studios); Bad
Boy Productions Holdings, Inc. (sued as Bad Boy Productions, Inc.);
CE OpCo, LLC (sued as Combs Enterprises, LLC); Janice Combs; Janice
Combs Publishing LLC (sued as Janice Combs Publishing Inc.); Janice
Combs Publishing Holdings Inc.; and Sean John Clothing LLC
(collectively the "Combs Defendants") moved to dismiss with prejudice
all the Complaint's causes of action, each of which Rivers asserts
against at least one of the Combs Defendants. See ECF No. 137.
Individual defendants Deric Angelettie, Harve Pierre, and Arthur
Michael Carter IV (sued as Mickey Carter) each moved to dismiss Counts
One, Eleven, Twelve, Fourteen, and Sixteen as against them. See ECF
Nos. 171, 176, 178.

The motions to dismiss were fully briefed on August 12, 2025, see
ECF Nos. 166-68, 183-89, 193-94,[4] and the Court held extensive oral
argument on the motions on August 13, 2025.

Separately, on August 5, 2025, Rivers moved for default judgment
against defendants Townsquare Media Group and Alison Stanley. See ECF
No. 182. On August 7, 2025, Townsquare Media Group appeared and opposed
the motion for default judgment, see ECF Nos. 191-92, and the Court
held oral argument on that motion on August 13, 2025, as well.

---

[4] Notably, Rivers' opposition papers fail to cite hardly any legal
authorities -- neither statutes nor caselaw. See generally ECF Nos.
166-68, 183-85. "Under the adversary system, it is counsel's
responsibility to explain why [her] points have legal merit; the Court
does not serve as counsel's law clerk." Fed. Ins. Co. v. County of
Westchester, 921 F. Supp. 1136, 1139 (S.D.N.Y. 1996).

III. Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

"Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise th[at] affirmative defense in a pre-answer motion to dismiss" under Rule 12(b)(6). Ghartey v. St. John's Queens Hosp., 869 F.2d 160, 162 (2d Cir. 1989). In deciding a motion to dismiss that includes a statute of limitations defense, the Court may not generally consider matters outside the pleadings. See id. (citing Fed. R. Civ. P. 12(b); Gordon v. Nat'l Youth Work All., 675 F.2d 356, 360 & n.3 (D.C. Cir. 1982)).

Where the Court grants a motion to dismiss under Rule 12(b)(6), "leave to amend the complaint should be refused only if there is no basis for concluding that plaintiff can state a claim and thus permitting an amendment would be futile." 5B Fed. Prac. & Proc. Civ. § 1357 (4th ed. 2025); see also, e.g., Porat v. Lincoln Towers Cmty. Ass'n, 464 F.3d 274, 276 (2d Cir. 2006); Cruz v. Gomez, 202 F.3d 593, 597-98 (2d Cir. 2000).

IV.  Analysis

Here, all the defendants that have moved to dismiss argue that all the relevant statutes of limitations have run because, according to the Complaint itself, the underlying events giving rise to the causes of action occurred at least ten -- and frequently more than twenty -- years ago. In response, Rivers invokes a hodgepodge of tolling doctrines and, in the alternative, argues that certain conduct alleged in the Complaint is ongoing. The Court agrees with defendants that the allegations in the Complaint establish that all but one of the relevant limitations periods have certainly run and that no tolling doctrine applies (or could apply). Hence, the Court dismisses with prejudice all the causes of action asserted against all defendants, except for Count Fifteen. As to that count, which asserts a claim under the GMVPA solely against Combs, there is an open legal question as to whether a recent amendment to the GMVPA reviving certain time-barred claims is preempted by New York state law. Because that question is the subject of two appeals presently pending in the United States Court of Appeals for the Second Circuit, the Court reserves judgment as to whether dismissal of Count Fifteen should be with or without prejudice, but stays all further proceedings until the Second Circuit issues its ruling.

A.   Statutes of Limitations

Each of the Complaint's causes of action is subject to a limitations period of between one and ten years.

A civil claim under RICO (Count One) must be brought within four years of the alleged injury or, in the case of an unknown injury, within four years of the triggering of a plaintiff's "duty to inquire." See, e.g., McKenzie v. Artists Rts. Soc'y, Inc., 757 F. Supp. 3d 427, 442-43 (S.D.N.Y. 2024).

Claims for intentional torts under New York law, including assault and battery (Count Two), battery or sexual battery (Count Four), false imprisonment (Count Five), and violation of the right of publicity (Count Nine), must be brought within one year. See N.Y. CPLR § 215(3). Claims for negligent tortious conduct under New York law (Counts Thirteen, Fourteen, Sixteen, and Twenty) must be brought within three years. See id. § 214(5). Claims for tortious interference with contractual, business, or economic relations or advantage under New York law (Counts Eighteen and Twenty) must also be brought within three years. See id. § 214(4); see also, e.g., Gym Door Repairs, Inc. v. Young Equip. Sales, Inc., 331 F. Supp. 3d 221, 239 (S.D.N.Y. 2018).

A claim for forced labor under the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1595 (Count Three), must be brought within ten years after the cause of action arises or within ten years after an alleged minor victim reaches the age of eighteen. See id. § 1595(c)(1)-(2).

Claims under the NYSHRL (Counts Six and Eight) and NYCHRL (Count Seven) must be brought within three years of the alleged wrongful conduct. See, e.g., Bermudez v. City of New York, 783 F. Supp. 2d 560, 573-74 (S.D.N.Y. 2011).

Claims of copyright infringement (Count Ten) are subject to a three-year statute of limitations, accruing from the date a plaintiff discovers or, with the exercise of due diligence, should have discovered the alleged infringement. See, e.g., PK Music Performance, Inc. v. Timberlake, No. 16 Civ. 1215, 2018 WL 4759737, at *7 (S.D.N.Y. Sept. 30, 2018).

Claims for breach of the implied covenant of good faith and fair dealing (Count Eleven) must be brought within six years of the alleged breach. See N.Y. CPLR § 213(2).

Finally, claims based upon fraud (Count Twelve) must be brought within either six years after the cause of action accrues or two years after the plaintiff discovers or, with the exercise of reasonable diligence, could have discovered the alleged fraud. See id. § 213(8).

It is important to remember the many positive purposes served by statutes of limitations. They "promote justice by preventing surprises through plaintiffs' revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." CTS Corp. v. Waldburger, 573 U.S. 1, 8-9 (2014) (quoting R.R. Telegraphers v. Ry. Express Agency, Inc., 321 U.S. 342, 348-49 (1944)) (alterations adopted). Indeed, the "primary purpose of a limitations period is fairness to a defendant," who is entitled to a "reasonable expectation" that he will not be haled into court to face claims that a plaintiff did not timely pursue. Duffy v. Horton Mem'l Hosp., 66 N.Y.2d 473, 476-77 (1985). Moreover, "[t]here is also the

need to protect the judicial system from the burden of adjudicating stale and groundless claims." Id.

Prior to oral argument on the motions to dismiss, the parties appeared to agree that all of Rivers' causes of action would be time-barred unless the relevant statutes of limitation were somehow tolled. See ECF No. 130 ("Prod. Defs. MTD") at 7-13; ECF No. 132 ("UMG MTD") at 5-11; ECF No. 137 ("Combs Defs. MTD") at 4-10; ECF No. 171 ("Angelettie MTD") at 13-14; ECF No. 176 ("Pierre MTD") at 1-2; ECF No. 178 ("Carter MTD") at 4-6; ECF No. 166 at 3-5; ECF No. 167 at 2-4; ECF No. 168 at 3-6; ECF No. 185 at 7-9. At oral argument, however, Rivers' counsel contended that tolling was unnecessary as to Rivers' RICO, publicity, and copyright infringement claims because Rivers is purportedly suffering an ongoing injury from defendants' alleged conduct. See Transcript of Oral Argument, August 13, 2025 ("Tr."), at 11. For the reasons set forth below, the Court holds that no tolling doctrine applies (or could apply) and that the Complaint does not (and could not) plead any ongoing injury.

     1.   Equitable Doctrines

The Complaint and Rivers' opposition papers invoke several equitable doctrines that could toll the running of the statutes of limitations: equitable tolling, equitable estoppel, and duress tolling. In support of these arguments, Rivers proffers a declaration in which she states, in relevant part, that she "did not file [her] claims earlier due to enduring duress" on the part of Combs; that she "experienced psychological trauma, including repressed memories, and

only recognized the extent" of her injuries after reading the complaint in another civil lawsuit filed against Combs; and that she delayed filing the Complaint because Combs "blacklist[ed her] from the music industry." ECF No. 184-1 ¶¶ 13, 15, 16. To the extent that Rivers' declaration purports to supplement the Complaint, the Court may not consider it in assessing the sufficiency of her claims under Rule 12(b)(6). See 5B Fed. Prac. & Proc. Civ. § 1357 (4th ed. 2025). The Court may, however, consider Rivers' declaration in determining whether to exercise any discretion it may have to equitably toll any of the statutes of limitations. Cf. Clark v. Hanley, 89 F.4th 78, 90-91 (2d Cir. 2023). But even taking Rivers' declaration into account for that limited purpose, none of her equitable arguments has merit.

First, equitable tolling permits a plaintiff to avoid the effect of a statute of limitations "if despite all due diligence [s]he is unable to obtain vital information bearing on the existence of h[er] claim." Sejin Precision Indus. Co., Ltd. v. Citibank, 235 F. Supp. 3d 542, 553 (S.D.N.Y. 2016). However, equitable tolling is categorically unavailable as to causes of action that arise under New York law. See id. (citing Jang Hoi Choi v. Beautri Realty Corp., 135 A.D.3d 451, 452 (1st Dep't 2016)). Hence, equitable tolling cannot save Counts Two, Four, Five, Six, Seven, Eight, Nine, Eleven, Twelve, Thirteen, Fourteen, Fifteen, Sixteen, Eighteen, or Twenty. As to Rivers' three causes of action that arise under federal law, the Complaint does not contain specific allegations showing that Rivers was unable to obtain vital information establishing the existence of any alleged RICO

enterprise, TVPA violation, or copyright infringement. See Compl. ¶¶ 729-786 (RICO); 798-804 (TVPA); 850-862 (copyright). To the extent that Rivers contends that relevant information was unavailable to her until another of Combs' alleged victims filed suit, see, e.g., ECF No. 166 at 3-4; Tr. at 13-14, that does not establish that Rivers could not have obtained the necessary information by the exercise of her own due diligence. Instead, the fact that a similarly situated individual was able to obtain information that Rivers claims was unavailable shows that Rivers could have obtained that information as well. See ECF No. 187 at 4-5.

Second, the doctrine of equitable estoppel applies where a plaintiff "is prevented from filing an action within the applicable statute of limitations due to his or her reasonable reliance on deception, fraud[,] or misrepresentations by the defendant." Putter v. N. Shore Univ. Hosp., 7 N.Y.3d 548, 552 (2006). In New York, a plaintiff invoking equitable estoppel must "establish that subsequent and specific actions by defendants somehow kept them from timely bringing suit." Zumpano v. Quinn, 6 N.Y.3d 666, 674 (2006). Here, the Complaint is entirely lacking in allegations concerning any "subsequent and specific" statement that any defendant purportedly made. Indeed, the Complaint concedes that Rivers "never heard" from certain defendants after the final episode of MTB2 was taped. See Compl. ¶ 679. In attempting to invoke equitable estoppel, Rivers' opposition papers merely repeat boilerplate statements that defendants' "fraud and concealment" prevented her from discovering her

claims. E.g., ECF No. 166 at 4; ECF No. 167 at 3; ECF No. 168 at 4. But Rivers does not identify any allegedly fraudulent statement with specificity, explain why she reasonably relied on any such statement, or indicate why such reasonable reliance prevented her from bringing this action in the more than twenty years since the events described in the Complaint allegedly transpired.

Third, Rivers invokes the doctrine of duress tolling as to Counts Three, Four, Five, Six, Seven, Eight, Nine, Eleven, and Twelve, asserting as to each of these causes of action that "Defendants' continuous threats, coercion and interference with Plaintiff's career prevented Plaintiff from asserting her rights" and that, on this basis, "Defendants should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff." Compl. ¶¶ 804, 816, 823, 828, 833, 841, 848, 878, 892.

Duress tolling requires a plaintiff to plead (1) "threats or force by the defendant" and (2) "the submission of the plaintiff's free will to those threats." Gilmore v. Combs, No. 24 Civ. 8440, 2025 WL 1425326, at *4 (S.D.N.Y. May 16, 2025) (quoting Overall v. Estate of Klotz, 52 F.3d 398, 404 (2d Cir. 1995)). "Both elements of duress must continue in order for a duress-based tort to persist as a continuous wrong." Id. (cleaned up). The Complaint's few non-conclusory allegations of duress refer to alleged wrongdoing only on the part of Combs. See Tr. at 26. And as to Combs, neither in the Complaint nor in her declaration does Rivers specifically allege that Combs employed any threats or force, much less the continuous threats

or force that would warrant duress tolling.[5] Nor was Rivers' counsel able to identify any such allegations at oral argument. See id. at 5-9. While Rivers does allege that she experienced a general fear of retaliation preventing her from speaking out against Combs, see, e.g., Compl. ¶ 1001, "general claims of psychological stress" cannot give rise to duress tolling, "even when allegedly caused by [a] defendant," see, e.g., Gilmore, 2025 WL 1425326, at *4 (citing Adams v. Jenkins, Index No. 115745/03, 2005 WL 6584554, at *1 (N.Y. Sup. Ct. Apr. 22, 2005)). Applying these principles, a court in this District recently held that an alleged "culture of intimidation" created by "Combs and his associates" did not "rise to the level of duress," especially where plaintiff pleaded only "vague allegations." Gilmore, 2025 WL 1425326, at *4. The same reasoning applies here with at least equal force.

2.    Delayed Discovery

As to Rivers' civil RICO, copyright, and fraud claims (Counts One, Ten, and Twelve, respectively), she separately argues that because she could not have discovered her injuries until 2023, when another of Combs' alleged victims filed suit, her claims did not accrue until then. See ECF No. 166 at 3-5; ECF No. 167 at 2-4; ECF No. 168 at 4-5; see also Compl. ¶¶ 1-7 (describing related litigation against Combs

---

[5] Rivers argues in her opposition papers that the Complaint "alleged several instances of duress," e.g., ECF No. 166 at 3, but that argument is self-defeating. The fact that Rivers can point, at most, to isolated "instances" and not an ongoing pattern of duress means that duress tolling is categorically unavailable to her.

but not pleading that such litigation put Rivers on notice of any specific claims). Rivers is correct that the statutes of limitations for these claims may begin to run only after a plaintiff discovers or, with the exercise of due diligence, could have discovered the existence of her claim. See McKenzie, 757 F. Supp. 3d at 442-43 (civil RICO); PK Music Performance, 2018 WL 4759737, at *7 (copyright infringement); N.Y. CPLR § 213(8) (fraud). But, as the Court observed above, Rivers' reasoning is self-defeating because the existence of related litigation against Combs shows that Rivers could have discovered her alleged injuries earlier if she had exercised due diligence.

### 3.   Ongoing Conduct

The Complaint and Rivers' opposition papers assert only equitable doctrines and delayed discovery as reasons that the Court should toll the relevant statutes of limitations. But at oral argument, Rivers' counsel contended for the first time that certain limitations periods had not, in fact, run because the RICO enterprise, violation of Rivers' right of publicity, and copyright infringement alleged in the Complaint are inflicting ongoing injuries on Rivers. See, e.g., Tr. at 5, 10-12, 27-29. Of course, arguments "raised for the first time at oral argument" are generally deemed waived. Tamar v. Mind C.T.I., Ltd., 723 F. Supp. 2d 546, 555 (S.D.N.Y. 2010) (collecting cases). But even assuming, arguendo, that Rivers' novel assertions of ongoing injury were not waived, cf. Sweetwater Estates, Ltd. v. Carpenter, No. 16 Civ. 1578, 2018 WL 1175158, at *5 (E.D.N.Y. 2018), they are meritless. The Complaint contains only passing and conclusory references to

ongoing conduct. <u>See, e.g.</u>, Compl. ¶ 765 (alleging "a pattern of racketeering activity that continues possibly to this day"); ¶ 771 (similar). And even to the minimal extent that the Complaint might support a theory of ongoing <u>conduct</u>, it does not contain allegations of ongoing <u>injury</u> to Rivers. As to her RICO claim, Rivers does not allege that any alleged acts of mail or wire fraud are continuing to injure her. <u>See id.</u> ¶¶ 774-783. Nor does she proffer any non-conclusory allegations that defendants' alleged violations of her right of publicity or defendants' alleged infringement of her copyright continue to harm her today. <u>See id.</u> ¶¶ 842-862.

    4.   Leave to Amend

For the foregoing reasons, the Court concludes that Rivers' causes of action other than Count Fifteen are time-barred, some by more than two decades.

The Court turns, then, to the question of whether Rivers should be given leave to amend the Complaint. Although leave to amend a pleading should be "freely" given "when justice so requires," Fed. R. Civ. P. 15(a)(2), amendment may properly be denied where it would be, among other things, futile or unduly prejudicial to an opposing party, 6 Fed. Prac. & Proc. Civ. § 1487 (3d ed. 2025).

Here, granting leave to amend would be both futile and unduly prejudicial. First, neither the Complaint's allegations nor Rivers' counsel's representations at oral argument provide any basis for the Court to plausibly infer that Rivers could amend the Complaint to allege that any of her causes of action accrued within the relevant

limitations periods. See, e.g., Tr. at 9-10. This is not, in the Court's view, a close question: the vast majority of the conduct alleged in the Complaint took place over twenty years ago, whereas the most generous limitations period applicable to any of Rivers' claims is ten years. At oral argument, Rivers' counsel could not point to any specific allegations she might include in an amended pleading that would fall within any relevant limitations period.

Second, there is no basis for the Court to plausibly conclude that Rivers could amend the Complaint so as to warrant the tolling of any statute of limitations. For instance, to the extent Rivers might amend the Complaint to plead that the duress allegedly inflicted on her led her to stop pursuing a career in music some fifteen years ago, the statutes of limitations would still have begun to run at that point. See Tr. at 16-18.[6] Similarly, to the extent Rivers might amend the Complaint to plead that other litigation against Combs put her on notice of certain of her claims, at oral argument Rivers' counsel was unable to identify any fact alleged in any other lawsuit against Combs that gave Rivers notice of any of her claims. See Tr. at 19.

Third, even if amendment were not futile, it would be burdensome and prejudicial. As the moving defendants point out, Rivers' extensive Complaint is a "shotgun pleading that is neither clear nor concise,"

---

[6] Moreover, at oral argument Rivers' counsel was unable to identify any act of duress allegedly committed by any defendant other than Combs. See Tr. at 26-27, 36-37. For that reason alone, it would be futile to amend the Complaint to invoke duress tolling as to any of the other defendants.

thereby requiring defendants and the Court to "parse out which facts apply to which claim." See, e.g. Long Island Anesthesiologists PLLC v. United Healthcare Ins. Co. of N.Y., Inc., No. 22 Civ. 4040, 2025 WL 1031093, at *3 (E.D.N.Y. Apr. 7, 2025) (cleaned up); Prod. Defs. MTD at 13-14; UMG MTD at 11-13; Combs Defs. MTD at 10-11. The moving defendants have already expended substantial resources in responding to Rivers' Complaint, and in light of Rivers' inability to identify specific allegations she might plead to cure the Complaint's numerous deficiencies, granting leave to amend would merely consume further resources without changing the result. Moreover, to the extent that Rivers' opposition papers constitute "a plea to permit an amendment where her 1,003 paragraph Complaint has not pled" that any of her causes of action are timely, see ECF No. 186 at 1, granting leave to amend would reward Rivers' litigation behavior to date.

Thus, the Court dismisses all of the Complaint's causes of action except Count Fifteen, to which the Court now turns.

B.    GMVPA Claim against Combs

Count Fifteen asserts a claim under the GMVPA solely against Combs. The New York City Council initially enacted the GMVPA in 2000. The City Council acted in the wake of a decision by the United States Supreme Court that declared unconstitutional a provision of the Violence Against Women Act ("VAWA"), a federal statute that had created a civil remedy for gender-motivated crimes. See United States v. Morrison, 529 U.S. 598 (2000); Baldwin v. TMPL Lexington LLC, No. 23 Civ. 9899, 2024 WL 3862150, at *11 (S.D.N.Y. Aug. 19, 2024) (surveying

statutory history). The City Council enacted verbatim certain provisions of VAWA that the Supreme Court had invalidated on grounds not here relevant. Baldwin, 2024 WL 3862150, at *11.

As relevant here, the GMVPA authorizes "any person claiming to be injured by a party who commits, directs, enables, participates in, or conspires in the commission of a crime of violence motivated by gender" to bring a civil action for damages, injunctive relief, and other remedies. N.Y.C. Admin. Code § 10-1104. Borrowing verbatim from an invalidated provision of VAWA, the GMVPA defines "crime of violence" to mean "an act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law or that would constitute a misdemeanor or felony against property as defined in state or federal law if the conduct presents a serious risk of physical injury to another." Id. § 10-1103.

1.   GMVPA Revival Provision

The GMVPA initially provided a limitations period of seven years from the commission of an alleged crime of violence, subject to certain exceptions not relevant here. See id. § 10-1105(a). However, on January 9, 2022, the City Council amended the GMVPA to create a so-called "revival window" for certain time-barred claims. See N.Y.C. L.L. 2022/021 (Jan. 9, 2022). Specifically, the City Council enacted that "[n]otwithstanding any provision of law that imposes a period of limitation to the contrary, any civil claim or cause of action brought under this chapter that is barred because the applicable period of limitation has expired is hereby revived and may be commenced not

21

earlier than six months after, and not later than two years and six months after, September 1, 2022." N.Y.C. Admin. Code § 10-1105(a) (the "Revival Provision"). Rivers filed suit on February 28, 2025, the last day the revival window remained open. See Compl.

While it thus might appear that Rivers' GMVPA claim against Combs is not time-barred, there is an open question as to whether the Revival Provision was preempted, under the New York Constitution, by the New York State legislature's subsequent enactment of the Adult Survivors Act, N.Y. CPLR § 214-j. Signed into law on May 24, 2022, the Adult Survivors Act created a one-year revival window, from November 24, 2022, to November 24, 2023, for "every civil claim or cause of action brought by any party alleging intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense" under state law that was "committed against such person who was eighteen years of age or older." Id.

Two courts in this District have recently issued detailed and thoughtful opinions concerning the relationship between the Revival Provision and state law. One court concluded that the Revival Provision is not preempted by state law, reasoning that the New York legislature did not intend to "occupy the field" of statutes of limitations for claims of sexual misconduct, that state law does not provide a "comprehensive and detailed" regulatory scheme in that area, and that there is no direct conflict between the Revival Provision and state law. Doe v. Black, No. 23 Civ. 6418, 2024 WL 4335453, at *1-7 (S.D.N.Y.

Sept. 27, 2024). Four months later, another court reached the opposite conclusion, holding that the New York legislature did occupy the field by enacting multiple statutes governing the revival of civil actions involving sexual offenses and that there is a direct conflict between the revival windows established under the GMVPA and the Adult Survivors Act. Parker v. Alexander, 779 F. Supp. 3d 361, 365-70 (S.D.N.Y. 2025). Appeals in both cases have been docketed in the United States Court of Appeals for the Second Circuit, and briefing is either underway or complete. See Parker v. Alexander, No. 25-487 (2d Cir. Feb. 28, 2025); Doe v. Black, No. 25-564 (2d Cir. Mar. 11, 2025). Pending the Second Circuit's resolution of those appeals, other courts in this District have stayed cases presenting related questions. E.g., Doe v. Alexander, No. 25 Civ. 1631, 2025 WL 1384786, at *2 (S.D.N.Y. Apr. 25, 2025); Doe v. Daddy's House Recordings Inc., No. 24 Civ. 7778, 2025 WL 1425732, at *2 (S.D.N.Y. May 16, 2025); Doe v. Combs, No. 24 Civ. 9852, 2025 WL 1425751 (S.D.N.Y. May 16, 2025).

This Court, likewise, concludes that the parties to Count Fifteen "stand to benefit from gaining clarity on the scope of the [GMVPA]" and that ruling on what this Court considers to be a close question arising under the New York Constitution "risks ruling at odds with the Second Circuit's decision and delaying resolution of the action further." See Doe v. Alexander, 2025 WL 1384786, at *1.

Accordingly, the Court stays further proceedings as to Count Fifteen until the Second Circuit determines whether the Revival Provision is preempted by the Adult Survivors Act.

2.    Elements of a GMVPA Claim

Another reason for the stay is that the other grounds for dismissal raised by Combs would at that point need further refinement from both sides. But the Court takes this opportunity to clarify the elements of a claim under the GMVPA. As relevant here, Rivers must plead that (1) Combs engaged in conduct constituting a crime of violence as defined in the GMVPA; (2) Combs engaged in the alleged conduct <u>because of</u> Rivers' gender; (3) Combs engaged in the alleged conduct in part because of <u>animus against</u> Rivers' gender; and (4) injury resulted therefrom. <u>See</u> N.Y.C. Admin. Code § 10-1104; <u>Baldwin</u>, 2024 WL 3862150, at *12. As to Combs' alleged touching of Rivers' breast, the Court concludes that Rivers has adequately pleaded the first, second, and fourth of these elements and that (in the event the Second Circuit holds that the Revival Provision is not preempted) granting leave to amend the Complaint as to the third element would not be futile.[7]

The first element has been the source of some confusion among courts in this District. Several courts have held that the alleged conduct must both constitute a misdemeanor or felony and present a serious risk of physical injury. <u>See, e.g.</u>, <u>Hughes v. Twenty-First Century Fox, Inc.</u>, 304 F. Supp. 3d 429, 455 (S.D.N.Y. 2018). However,

---

[7] As to the other episode on which Rivers bases her GMVPA claim -- the incident in which Combs allegedly slammed a door after Rivers refused to drink a cocktail he had made -- there is simply no basis for the Court to conclude that Rivers has pled (or could amend the Complaint to plead) any of the elements of a GMVPA claim grounded on this allegation. <u>See</u> Compl. ¶¶ 703-708; Tr. at 42-43.

as a learned opinion by Judge Engelmayer of this District has recently demonstrated, the GMVPA requires a plaintiff to plead a serious risk of physical injury only where the alleged conduct constitutes a "misdemeanor or felony against property." Baldwin, 2024 WL 3862150, at *11-12 (citing N.Y.C. Admin. Code § 10-1103) (emphasis added). This Court agrees. The GMVPA's definition of a "crime of violence" contains two phrases separated by the word "or" -- that is, the GMVPA defines a crime of violence as an act or acts that either "would constitute a misdemeanor or felony against the person" or "would constitute a misdemeanor or felony against property . . . if the conduct presents a serious risk of physical injury to another." See N.Y.C. Admin. Code § 10-1103. The reference to a serious risk of physical injury clearly modifies only the portion of the definition referring to crimes against property. As the court in Baldwin demonstrates, this construction is the only grammatically proper reading of the GMVPA; moreover, it is consistent with how courts throughout the Nation have interpreted the identical language of VAWA before the Supreme Court struck down that statute. See Baldwin, 2024 WL 3862150, at *11 (collecting cases).

With this understanding of the first element of a GMVPA claim in mind, the Court concludes that the Complaint adequately alleges that Combs engaged in conduct constituting at least a misdemeanor against the person under New York law. See Compl. ¶¶ 717 (alleging that Combs "ran his left hand across [Rivers'] breasts"), 921 (listing

potentially relevant provisions of New York penal law).[8] The Court also concludes that the Complaint adequately pleads the second element of a GMVPA claim because Rivers alleges that Combs' conduct was "motivated by Plaintiff's gender." See Compl. ¶ 918. The Complaint further establishes the fourth element of a GMVPA claim because Rivers alleges that Combs' conduct caused her physical, psychological, and emotional injury. See id. ¶ 933.

As presently pled, however, the Complaint has not adequately alleged the remaining (third) element of a GMVPA claim. Specifically, Rivers has not pled that Combs engaged in the alleged conduct, at least in part, out of animus toward her gender. "Generally, the animus element requires the plaintiff to present 'extrinsic evidence of the defendant's expressed hatred toward women as a group' or allege specific 'actions and statements by the perpetrator during the commission of the alleged crime of violence.'" Rossbach v. Montefiore Med. Ctr., No. 19 Civ. 5758, 2021 WL 930710, at *10 (S.D.N.Y. Mar. 11, 2021) (quoting Breest v. Haggis, 180 A.D.3d 83, 92-93 (1st Dep't 2019)). As to this element, the Complaint cites the First Department's holding that rape and sexual assault are per se "due, at least in part, to an animus based on the victim's gender" because "[m]alice or

---

[8] The Court reserves judgment as to which particular provision or provisions of New York law the alleged conduct may have violated. The Court notes, however, that several (but not all) of the provisions that Rivers cites require proof of elements nowhere mentioned in the Complaint. For instance, the crime of sexual misconduct requires oral, vaginal, or anal sexual contact, see N.Y. Penal Law § 130.20, but the Complaint contains no allegations of such conduct on Combs' part.

ill will based on gender is apparent from the alleged commission of the act itself" and "[a]nimus inheres where consent is absent." See Compl. ¶¶ 19, 919; Breest, 180 A.D.3d at 94. But the allegations in Breest concerned sexual misconduct that was far more serious than that alleged in the Complaint here. Rivers "does not allege that she was raped by [Combs], and she points to no authority indicating that the requisite animus element may be inferred in [GMVPA] cases not premised on rape." See Rossbach, 2021 WL 930710, at *11. Moreover, unlike the plaintiff in Breest, Rivers admits that Combs ceased his alleged conduct upon "realizing [Rivers was] uncomfortable and not consenting." Compl. ¶ 719. Nevertheless, because the Complaint repeatedly alleges that Combs treated women, including Rivers, in a derogatory, intimidating, or threatening manner, the Court cannot conclude that granting to leave to amend would be futile. See Fed. R. Civ. P. 15(a)(2); 5B Fed. Prac. & Proc. Civ. § 1357.

V.   Conclusion

For the foregoing reasons, the Court reconfirms its Order of August 14, 2025; dismisses the Complaint in its entirety and with prejudice against all defendants other than Combs; dismisses with prejudice all causes of action against Combs other than Count Fifteen; and stays further proceedings as to Count Fifteen pending the judgment of the United States Court of Appeals for the Second Circuit as to whether the Revival Provision is preempted by the Adult Survivors Act. Because all of Rivers' claims against Townsquare Media Group and

Stanley are dismissed with prejudice, the Court denies as moot Rivers'

motion for default judgment against those defendants.

Dated:    New York, NY
          August 19, 2025                    _____
                                             JED S. RAKOFF, U.S.D.J.